**EXHIBIT C**

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C    RECEIVED NYSCEF: 10/06/2021
Pg 2 of 31

FILED: ERIE COUNTY CLERK 10/05/2021 09:17 AM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 23
RECEIVED NYSCEF: 10/04/2021

At a term of the Supreme Court of the State
of New York, held in and for the County of
Erie at the Erie County Hall, Buffalo, New
York on the 25 day of August, 2021.

PRESENT:   Honorable Paul B. Wojtaszek, J.S.C.
           Justice Presiding

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ERIE

---

EGATE-95, LLC,

                                    Petitioner,        **ORDER AND JUDGMENT**

     vs.                                               Index No. 805964/2021

FITNESS INTERNATIONAL, LLC,

                                    Respondent.

---

EGATE-95, LLC having petitioned this Court pursuant to Real Property Actions and

Proceedings Law Section 711(1), for an Order awarding possession of the commercial premises

located at 5089 Transit Road, Clarence, New York and which is more particularly described in

the Petition ("Premises"), and upon the Notice of Petition dated May 6, 2021 (NYSCEF Doc No

8) and the Verified Petition with Exhibits, dated May 6, 2021 (NYSCEF Doc Nos 1-7), and

Respondent Fitness International, LLC having answered the Petition by its Verified Answer with

Affirmative Defenses and Counterclaims dated June 2, 2021 (NYSCEF Doc No 12), and the

Petitioner having replied to Respondent's counterclaims by its Verified Reply dated June 2, 2021

(NYSCEF Doc No 13),  and

     This proceeding having come on to be heard via Microsoft TEAMS on August 25, 2021,

Phillips Lytle, LLP (Tristan D. Hujer, Esq., David J. McNamara, Esq., William V. Rossi, Esq, of

counsel) on behalf of Petitioner, and Klehr, Harrison, Harvey Branzburg, LLP (A. Grant Phelan, Esq., Mary Ellen O'Laughlin, Esq., of counsel) together with Magavern Magavern Grimm, LLP (Richard A. Grimm, III, Esq. of counsel) on behalf of Respondent, and due deliberation being had thereon, and for the reasons stated in the Court's oral decision on the record, attached as Exhibit A and incorporated herein, it is,

ORDERED and ADJUDGED, that the Petition of EGATE-95, LLC seeking possession of the Premises, shall be and is, hereby denied, without prejudice to EGATE-95, LLC's right to commence a plenary action for monetary damages, and it is further,

ORDERED, that the counterclaims brought by Fitness International, LLC, shall survive the denial of the Petition and may be prosecuted either in this proceeding or severed and maintained in any plenary action commenced by EGATE-95, LLC.

10/1/2021

_Paul B. Wojtaszek_
Hon. Paul B. Wojtaszek, J.S.C.

ENTERED:

s\20268.0001\983773.docx

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 4 of 31

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE : VIRTUAL PROCEEDINGS : PART 16

_____

EGATE-95, LLC,

                    Petitioner,

          -vs-                     INDEX NO. 805964/2021

FITNESS INTERNATIONAL, LLC,

                    Respondent.

_____

                                   25 Delaware Avenue
                                   Buffalo, New York
                                   August 25, 2021

B e f o r e:
                    HONORABLE PAUL B. WOJTASZEK
                    Supreme Court Justice


A p p e a r a n c e s:

                    PHILLIPS LYTLE LLP
                    BY: TRISTAN D. HUJER, ESQ.,
                        DAVID J. McNAMARA, ESQ.,
                        WILLIAM V. ROSSI, ESQ.,
                    Appearing for the Petitioner via Teams.

                    KLEHR HARRISON HARVEY BRANZBURG LLP
                    BY: A. GRANT PHELAN, ESQ.,
                        MARY ELLEN O'LAUGHLIN, ESQ.,
                    Appearing for the Respondent via Teams.

                    MAGAVERN MAGAVERN GRIMM LLP
                    BY: RICHARD A. GRIMM III, ESQ.,
                    Appearing for the Respondent via Teams.


P r e s e n t:

                    MARK CHAIT, via Teams
                    ERIC RECOON, via Teams


                    Kerry A. Meegan, CSR, NYRCR
                    Official Supreme Court Reporter

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
RECEIVED NYSCEF: 10/06/2021
Pg 5 of 31

2

1          THE CLERK:  This is the matter of Egate-95,

2     LLC versus Fitness International, LLC, Index Number

3     805964 of 2021.  Please state your appearances for the

4     record.

5          MR. HUJER:  Good afternoon, Your Honor.

6     Tristan Hujer from Phillips Lytle for the petitioner,

7     Egate-95, LLC.  I'm also with my partner David

8     McNamara, associate William Rossi; and Mark Chait from

9     Benderson Development Company, LLC is also present by

10    video, and I see that Eric Recoon, also from Benderson

11    Development, LLC, is present, I think just maybe with

12    his camera off or maybe by phone.  And Benderson, I

13    should add, is managing agent for the Egate property.

14    Thank you for your time today.

15         MR. PHELAN:  Good afternoon, Your Honor.

16    Grant Phelan on behalf of the respondent, Fitness

17    International, LLC.  With me is Richard Grimm and Mary

18    Ellen O'Laughlin.

19         THE COURT:  Good afternoon, counselors.  We

20    have had an extensive conversation relative to the

21    parameters of today's proceeding and we discussed the

22    authority for this summary proceeding, and there is

23    disagreement between and among counsel as to their

24    respective positions and rights today.

25         Mr. Hujer, you believe that since there has

3

1        been no motion, a timely motion to either dismiss the

2        petition or for leave to either supplement or amend

3        their papers, that you have met your burden and that

4        you're entitled to the relief requested, which is

5        possession of the premises that are in dispute.

6                    MR. HUJER:  That's right, Your Honor.

7                    THE COURT:  Mr. Phelan, you have argued that

8        the lease itself and the pandemic entitles your client,

9        and you've cited another section of the RPAPL

10       Section 761, which gives your client the right to

11       redemption upon payment of the monies that are

12       outstanding, if they are in fact outstanding, and

13       therefore, you have asked that the Court not rule on

14       the merits of the summary proceeding and give you an

15       opportunity to further brief the issues in dispute and

16       move for summary judgment.  Is that somewhat accurate?

17                    MR. PHELAN:  That is, Your Honor.  As you

18       know, we have also asserted seven counterclaims, which

19       I think also need to be addressed.  I don't know

20       that -- I don't recall seeing an answer to those.  I

21       don't know if the landlord has filed a response, but

22       obviously we believe, based upon some of the arguments

23       that we made off the record and which you alluded to,

24       that our client had a right to abate rent during a

25       discreet period of time last year.  We continued to pay

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 7 of 31

4

1    rent from September 1st, 2020, through the current term

2    and in fact are current and have paid for the month of

3    August 2021.  We believe that the Court's time is

4    better spent deciding what are extremely complicated

5    nuanced arguments on cross-motions for summary

6    judgments.

7              THE COURT:  All right.  So let me start with

8    you, Mr. Hujer.  We did -- well, first of all, is there

9    a response in opposition to the counterclaims?

10              MR. HUJER:  Yes, Judge.  We filed a reply to

11    the counterclaims, verified on June 2nd of this year.

12              THE COURT:  All right.

13              MR. HUJER:  And it's Number 13 on the docket.

14              THE COURT:  I'm looking at it right now.

15    Verified Reply to Counterclaims?

16              MR. HUJER:  That's right.

17              THE COURT:  Okay.  Mr. Phelan, do you

18    acknowledge receipt of that?

19              MR. PHELAN:  You know, Judge, if Mr. Hujer

20    says that he filed it, I don't recall receiving it, but

21    it is quite possible that either my colleague

22    Ms. O'Laughlin or Mr. Grimm received it, and I don't

23    recall seeing it or receiving it, but I'm not gonna

24    question his representation to the Court.

25              THE COURT:  Okay.  Well, I can tell you that

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 10/06/2021

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 8 of 31

5

```
1    it is e-filed.

2              MR. PHELAN:  Okay.

3              THE COURT:  And it is on the document list

4    under this index number.

5              So with that, Mr. Hujer, you oppose the

6    request of Mr. Phelan with respect to how we proceed

7    today?

8              MR. HUJER:  I do.

9              THE COURT:  And you in our off-the-record

10   conversation have cited several cases.  Do you -- well,

11   among the cases you cited are some New York Supreme

12   Court cases, one from New York City which you said

13   involved a gym or a fitness club similar to the

14   respondent in this case.  It was an Equinox gym in New

15   York City.  And then you said a case from California,

16   also cited the case.  Do you have any appellate level

17   decisions or Court of Appeals?  You also cited a Court

18   of Appeals case.

19             MR. HUJER:  I did.  The Court of Appeals case

20   was the Kel Kim Corp case.  It's 70 N.Y.2d 900.  It's

21   from 1987.  It stands to bar the impossibility and

22   force majeure arguments that are being made.

23             THE COURT:  And that's, of course, more

24   recent than the Benderson case Mr. Phelan cited, 1974

25   from the Fourth Department.
```

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM

NYSCEF DOC. NO. 28

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 9 of 31

INDEX NO. 805964/2021

RECEIVED NYSCEF: 10/06/2021

6

1        MR. HUJER:  That is.  I'll add as well that

2    the Yellowstone case from the Court of Appeals also

3    supercedes this Fourth Department case.  I may -- Will

4    Rossi, I may need you to get the full cite, but I see

5    21 N.Y.2d.  The pincite is 637.

6        THE COURT:  And then you have also argued

7    that what you have set forth today entitles your client

8    to the relief requested and possession of the disputed

9    premises.

10        MR. HUJER:  That's right.  And I need to just

11    finish my answer, if the Court would allow me, to the

12    appellate level case question.

13        THE COURT:  Yeah, go ahead.

14        MR. HUJER:  Okay.  The -- in the COVID

15    context, the Second Circuit has also -- let me just

16    double-check on this.  Well, I wanted to say the Second

17    Circuit.  The Southern District in the Gap case has,

18    but these cases also, including the Gap case from the

19    Southern District, rely on cases, among them Kel Kim.

20        THE COURT:  So you believe that you have

21    cited appropriate authority that's binding on this

22    Court which compels me to grant your relief and deny

23    the request for any continuance or any further papers

24    from respondent.

25        MR. HUJER:  I think to give you -- I want to

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 10 of 31

7

1    say yes.  I think, Judge, to give you an intellectually

2    honest answer here, when we're dealing with trial court

3    decisions, they are -- we're aware they're a coequal

4    court with you, whether it's State Court or Federal

5    Court, Your Honor, but I have to tell you when we're

6    looking at close to ten decisions here that uniformly

7    are in favor of the landlord in this situation, Judge,

8    you would be the first, to my knowledge, to deviate

9    from that law.  You would be the first to deviate as a

10   matter of law and the first to deviate based on this

11   contract.

12          Egate has relied on a number of contract

13   provisions that preclude the arguments that are being

14   made by LA.  The reps and warranties claim Mr. Phelan

15   discussed off the record is still inapplicable and

16   irrelevant.  I mean, these are general warranties and

17   reps about the authority to enter into the contract

18   that warranties and reps that as of the delivery date

19   of the premises, which was back in 2011, that certain

20   conditions were as they were.  There's no warranty and

21   rep that the landlord would prevent a pandemic.

22          THE COURT:  Anything else?

23          MR. HUJER:  Judge, and unless you have

24   further questions, I think that we've succinctly and

25   kind of fully stated our position off the record.  I'm

Kerry A. Meegan, CSR, NYRCR
Official Supreme Court Reporter

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM

NYSCEF DOC. NO. 28

INDEX NO. 805964/2021

RECEIVED NYSCEF: 10/06/2021

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 11 of 31

8

1    happy to go through it again if the Court would like or

2    if you have any questions, but to summarize, there is a

3    breach of this lease.  The lease is terminated.  It's

4    not coming back.  There was no motion for summary

5    judgment, there was no motion for a Yellowstone

6    injunction, and LA has consented to your jurisdiction.

7    There is absolutely no reason under the law or in

8    equity to allow this proceeding to be drawn out any

9    further simply to reach the same result that we are

10   seeking here today.  We are respectfully seeking an

11   order from Your Honor to recover the possession of the

12   premises inclusive of Egate's reasonable attorney's

13   fees and costs on this proceeding without prejudice to

14   its rights to seek damages separately.

15          THE COURT:  All right.  And the breach goes

16   back to April of last year, 2020?

17          MR. HUJER:  That's right.

18          THE COURT:  And you've also argued that

19   Section 761 of the Real Property Actions and

20   Proceedings Law is not applicable here relative to any

21   rights of redemption.

22          MR. HUJER:  That's right.  And I would draw

23   the Court's attention to the Yellowstone decision that

24   I mentioned.  I mean, without a Yellowstone injunction,

25   there's nothing further to do here.

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
RECEIVED NYSCEF: 10/06/2021

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 12 of 31

9

1          MR. ROSSI:  Your Honor, if I may, this is

2     Will Rossi.  Tristan referenced briefly, asked me if I

3     could jump in and give the citation for the Yellowstone

4     case.

5          THE COURT:  Yes.

6          MR. ROSSI:  It's 21 N.Y.2d 630.  And I do

7     agree that that is the proper procedure for, you know,

8     gaining additional time to cure a right -- to cure a

9     breach of a commercial lease, and there are countless

10    decisions citing the Yellowstone decision for that

11    being the proper relief in the event you want to cure a

12    monetary default under a commercial lease.  Thanks.

13         THE COURT:  And that has not been done.

14         MR. ROSSI:  That's correct.

15         MR. HUJER:  That's right.

16         THE COURT:  Mr. Phelan.

17         MR. PHELAN:  Thank you, Your Honor.  First of

18    all, Your Honor, what I will do is, I won't make

19    general representations or references or statements

20    about what I think the lease says because what I think

21    the lease says or what any of the counsel on this

22    hearing thinks the lease said really is immaterial.

23    What I will do is actually point you to Section 2.2 of

24    the lease, which begins, landlord's representations,

25    warranties and covenants.  And it says, in

10

1        consideration for tenant entering into this lease.  So

2        we know that the landlord was making these

3        representations as an inducement.  And, in fact, the

4        very next clause says, and as inducement for tenant to

5        lease the premises, landlord makes the following

6        representations, warranties and covenants in addition

7        to such other representations, warranties and covenants

8        as may be contained elsewhere in the lease.  So that's

9        the introductory clause.  Now, do we think these are

10       material?  Well, actually, the parties agree, because

11       the very next sentence says, each of which is material

12       and is being relied upon by the tenant.  So we

13       understand by the very first sentence of 2.2 that these

14       are important promises being made by the landlord to

15       the tenants.

16            Now, Mr. Hujer said that these were only

17       applicable at the beginning of the lease, but how do we

18       know that's not the case?  Well, it says, all of such

19       representations, warranties and covenants shall survive

20       the execution and the delivery of the lease by tenant

21       and landlord.  So clearly the parties have now

22       evidenced an intention by the plain language of the

23       lease to abide by these promises and that they will

24       continue through the entire term of the lease, which

25       Mr. Hujer has reminded you is thirty-three years.

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 14 of 31

11

1          Then it says, just so that we're clear,

2     landlord shall indemnify defendant, hold harmless

3     tenant from and against any and all losses, demands,

4     claims, liabilities, damages, costs and expenses

5     arising as a result of any inaccuracy or breach of any

6     representation, warranty or covenant of landlord set

7     forth in this lease.  That's the actual preamble to the

8     actual reps, warranties and covenants that are at issue

9     here.

10         Now, what did landlord represent, warrant and

11    covenant?  Well, they said that they owned the property

12    and that their ownership would be free and clear of all

13    conditions and restrictions which might in any manner

14    or to any extent prevent or adversely affect the use of

15    the premises by tenant for tenant's intended purposes

16    or disturb tenant's peaceful and quiet possession and

17    enjoyment thereof.

18         Now, what do we know and what can the Court

19    take judicial notice of today?  Well, what the Court

20    can take judicial notice of today is that, in or about

21    the middle of March 2020, Governor Cuomo ordered this

22    gym and every other gym in the State of New York to

23    close.  Full stop.  Not, you know, limit your hours,

24    not limit your capacity.  Close.  That was a

25    restriction.  That restriction breached this rep, this

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021

NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
RECEIVED NYSCEF: 10/06/2021

Pg 15 of 31

12

1    warranty, this covenant, which these parties put into

2    the lease.  That's the actual language.

3         Now, if you have any question as to what the

4    parties' intended purpose for this lease was, all you

5    need do is go to 1.9 of the lease, which is entitled,

6    primary uses.  It says, the primary uses of the

7    premises shall be for the operation of a full service

8    health club and fitness facility.  So here, where the

9    Governor issues a restriction on our ability to use

10   this property as a fitness center, they're in breach of

11   2.2.  And what we know from the Benderson case, and

12   perhaps maybe some of the individuals on this call

13   remember the case, I don't know, but we know from the

14   case of Benderson Development vs. Commenco Corporation,

15   44 A.D.2d 889, that the Court held that where a lease

16   contains express warranties, that the premises could be

17   used for a certain purpose and the premises could not

18   be used for that purpose, the tenant was excused from

19   its obligations under the lease.  That is the law of

20   the State of New York.

21        Now, with respect to the Yellowstone case,

22   the Yellowstone case has nothing to do with

23   Section 761.  761 was enacted by the Legislature of the

24   State of New York and remains the law of the State of

25   New York.  And what it says, where the special

13

1    proceeding is founded upon an allegation that a lessee

2    holds over after a default in the payment of rents.

3    Now, what the landlord has alleged here is one default

4    payment of rent.  Full stop.  There's no other defaults

5    out here.  There are no other covenants that they've

6    suggested that we've breached.  They've alleged that we

7    failed to pay rents.  And the unexpired term of the

8    lease under which the premises are held exceeds five

9    years at the time when the warrant is issued, the

10   lessee, upon payment or tender, shall be entitled to

11   the possession of the demised premises under the lease

12   and may hold and enjoy the same, according to the terms

13   of the original demise.  That's the law.  Yellowstone

14   has nothing to do with this.  We didn't seek a

15   Yellowstone injunction because we didn't need to.  They

16   were already in breach of the lease.  They were in

17   breach of their representations, warranties and

18   covenants, and they know this because they were

19   actually a party to the precedent that I'm citing to

20   you.

21        Now, as for frustration of purpose, what's

22   interesting is, if you go back and you look at all of

23   these ten or so cases, and believe me, having litigated

24   these cases across the country for the last eighteen

25   months, for every case the landlord can cite, I can

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021

NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
RECEIVED NYSCEF: 10/06/2021
Pg 17 of 31

14

1        find you another one.  Caffe Nero, Mattress King,

2        Cinemax, the Hintz case.  All of them stand for the

3        exact opposite proposition the landlord has suggested

4        to you, that frustration of purpose doesn't exist.  I

5        haven't cited them to you because they are also trial

6        court opinions.  I've cited to you a binding appellate

7        court opinion.  But in any event, were you to look at

8        the decisions that Mr. Hujer has made reference to,

9        without actually citing, just generally speaking that

10       there's this body of law out there, I can assure you

11       that in each one the tenant had the ability to use the

12       property and each one, to the extent that they were

13       closed, it was voluntary.

14              He made reference to the Gap case.  The Gap

15       case concerned a Gap on the Upper East Side of New York

16       City, and what the law said was that -- or in this

17       particular case they could operate under a reduced

18       capacity.  Gap felt that that wasn't profitable,

19       elected, elected to close.  They closed voluntarily.

20       You know what we didn't do?  We didn't do it

21       voluntarily.  We closed eight hundred locations under

22       order of the Government, furloughed thirty-eight

23       thousand people, froze thousands upon thousands, if not

24       a million memberships, stopped collecting on subleases

25       because that was the right thing to do.  Our subtenants

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
RECEIVED NYSCEF: 10/06/2021
Pg 18 of 31

15

1    didn't have use of the property and therefore shouldn't

2    have to pay.

3         So all of this stands for the unique and

4    singular position which you should adopt, which is that

5    tenant under these circumstances, under this lease, not

6    under the Gap lease, not under the Equinox lease, not

7    under some other lease that's not before you, and I can

8    assure you that in the eight hundred or so leases that

9    I've looked at since the pandemic began, not one of

10   them is the same.  Now, they may be similar, but not

11   one of them has identical provisions.  So for him to

12   stand here and suggest to you that just because a trial

13   court somewhere else in the state or somewhere else in

14   the country interpreting a different document under

15   different facts somehow should guide your decision is

16   improper.  What we know is the plain language of this

17   lease required us to have use and possession.

18        And when you look at this lease, what's

19   interesting is when you want to determine what was the

20   parties' intent here, all you have to do is look to

21   Section 15.3.  Now, 15.3 deals with a casualty event.

22   Now, I know that there's been plenty of litigation,

23   it's not necessarily involved in this case at the

24   moment, but there's been plenty of litigation as to

25   whether or not under business interruption policies, et

Kerry A. Meegan, CSR, NYRCR
Official Supreme Court Reporter

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM

INDEX NO. 805964/2021

NYSCEF DOC. NO. 28

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C

RECEIVED NYSCEF: 10/06/2021

Pg 19 of 31

16

1      cetera, COVID is a casualty and is otherwise

2      compensable.  I'm not raising it for that reason,

3      Judge.  I'm raising Section 15 of the lease because I

4      think it informs the Court as to the intention of the

5      parties.  Namely, it says that in the event of damage

6      or destruction that otherwise interferes with the

7      tenant's right to use the property, this is what it

8      says.  Tenant's obligation for payment of minimum rent

9      and other amounts owing from tenant to landlord

10     pursuant to the lease during the period the premises is

11     so rendered unfit shall be equitably abated from the

12     date of the casualty based upon the extent of the

13     interference resulting from such casualty.

14             So when you want to look to the lease and

15     say, you know, what were these parties thinking back in

16     2011, what would they have thought if tenants, for

17     whatever reason, and I think we can all agree that even

18     the day before the shutdown orders were issued, nobody

19     ever thought we would be here.  Nobody could have

20     conceived of this global pandemic, this scope or the

21     duration.  You know, I've been doing a lot of these

22     Zoom hearings, but I can tell you that this is a

23     novelty pre-pandemic.  This would never have occurred.

24             So what were the parties thinking in the

25     event that tenant somehow was prevented from using this

17

1    property?  Well, we know.  Because in a similar

2    circumstance, the parties told you.  They said, tenants

3    should have the right to abate rent when they can't use

4    the property.  That's what the lease says.  It's not

5    what I want it to say.  It's actually what it does say.

6            Your Honor, there was no obligation to pay

7    rent during that period.  I think the law is clear in

8    that regard.  They have no right to current possession

9    of the property.  I still think that the Court should

10   hold this over for cross-motions for summary judgment,

11   but in either event, I think you should deny the motion

12   and I appreciate the time.

13           THE COURT:  All right.  And so I'm clear, the

14   termination of the lease, as Mr. Hujer has argued, is

15   not accurate because your client had the right to not

16   pay rent based on the pandemic and --

17           MR. PHELAN:  Right.

18           THE COURT:  -- the Government's action.

19           MR. PHELAN:  And Your Honor, we actually

20   wrote to them back in January, to Mr. Chait, who is on

21   the phone.  I wrote the letter and specifically

22   rejected the termination and set forth the reasons why

23   we believed that rent was not due and owing.  So we

24   don't believe that they properly terminated.  We

25   believe that we have the right to possession of this

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 21 of 31
RECEIVED NYSCEF: 10/06/2021

18

1    property and we think that this whole thing is an

2    exercise in futility in either event, either on the

3    merits or on application of 761, which has never been

4    addressed.

5             THE COURT:  Now, Mr. Chait is present.  He

6    represents the landlord or he did at the time you were

7    dealing with him back in January?

8             MR. PHELAN:  Correct.

9             THE COURT:  Mr. Chait, anything you wish to

10   say relative to that representation?

11            MR. HUJER:  Judge, if I could start just

12   before Mr. Chait has a chance here.  The letter

13   Mr. Phelan -- the letter Mr. Phelan cites to, I feel

14   like I have to continue to kind of bring the Court back

15   to the actual history of events here.  A termination

16   notice was sent as of the date stated in the petition.

17   Mr. Phelan's letter long predated that.  There was no

18   response to the operative termination notice here under

19   this lease.  It's terminated.

20            But Mr. Chait, if you have -- if you have

21   something to say about the specific discussion, if any,

22   you might have had with Mr. Phelan, please proceed.

23            But Your Honor, I would like to be heard in

24   response to any other comments.

25            THE COURT:  Well, let me ask you then.

19

1    You're the movant here.

2           MR. HUJER:  Yes.

3           THE COURT:  Do you believe that's even

4    relevant?  That's not the termination of the lease.

5           MR. HUJER:  No.  I mean, it's a termination

6    of the lease.  Look, we could do all sorts of things

7    here.  I don't want to make it -- I don't want to make

8    jokes, but we could have a -- we could pound our fists,

9    stomp our feet, we could dance till the cows come home

10   here.  The termination is the termination.  It's over

11   under New York Law.  There was no application for a

12   Yellowstone injunction to prevent this tenant from

13   being removed.  We're here.  We're properly before you.

14          THE COURT:  I was just gonna ask Mr. Chait if

15   that was accurate that you were party to that letter

16   and you never responded.

17          MR. CHAIT:  Your Honor, I believe, if I

18   remember correctly -- I'm not looking at the letter.  I

19   did receive that letter, but I believe that was in

20   response to a prior default notice.  I don't think it

21   was in response to the default notice that gave rise to

22   the lease termination or in fact to the lease

23   termination itself.  I believe it was in response, I

24   think it was a January letter, and what's before Your

25   Honor are things that occurred subsequent to that time,

20

1        so to that extent.

2                    And if I might add just briefly, Section 19.3

3        of the lease clearly gives landlord the right to

4        reenter the premises and remove property upon a summary

5        proceeding, so I think, you know, that's something that

6        I think we want to make clear.

7                    And something else that just strikes me is

8        the argument about equitable abatement of rent is in

9        regard to a casualty, which this is certainly not a

10       casualty.  And in the event of a casualty, there would

11       be insurance that would step in and pay that rent

12       during that period of loss.  So I think that's just a

13       misapplied paragraph or section of the lease for what's

14       before Your Honor.

15                   THE COURT:  Mr. Hujer, anything else?

16                   MR. HUJER:  Yes.  I -- Mr. Phelan's

17       represented that all -- that no lease is the same.  I

18       mean, look, the courts still render decisions based on

19       different facts and different leases, but what the

20       Court should look at is the Kel Kim Corp case from the

21       Court of Appeals that recognizes explicitly that the

22       defenses LA has raised, they are narrow and they should

23       be construed in exceptionally narrow circumstances.

24       That jumping-off point here, when you start to peel

25       back the arguments and you look at the lease,

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 24 of 31
RECEIVED NYSCEF: 10/06/2021

21

1    Section 2.2 of these warranties and representations,

2    the continuation of a warranty and rep after an

3    expiration of the lease doesn't make a warranty and rep

4    that is specific as to the time it was given continue

5    on indefinitely.  It may preserve the ability of the

6    party in privity to sue for a breach after the

7    termination of the lease because the rep continues.  It

8    doesn't expire with the termination of the lease.

9    That's the important point here.

10        2.2-b, which Mr. Phelan referenced regarding

11   free from liens, restrictions, encumbrances.  We gotta

12   look at the language of the lease here and it's

13   specific to the landlord's title to the premises.

14   There's nothing that's happened to the landlord's title

15   to the premises.  There's no allegation that anything

16   has happened to the landlord's title to the premises.

17        The Fourth Department case that Mr. Phelan

18   has referenced, again, it is usurped by the Yellowstone

19   case and it also references the fact that an unexpired

20   term of the lease is one of the facts in that scenario.

21   This lease is expired, the term is over, and they did

22   nothing to redeem the premises.  You can't pay rent

23   after the lease has been terminated.

24        There's allegations in the answer about

25   conditions precedent, which I believe is what

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
INDEX NO. 805964/2021
NYSCEF DOC. NO. 28
22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 25 of 31
RECEIVED NYSCEF: 10/06/2021

22

1      Mr. Phelan is getting at here with these warranties and

2      reps, that they need to be satisfied before the

3      tenant's obligation to pay rent kicks in.  But again,

4      let's leave the warranties and reps aside and let's go

5      to the quiet enjoyment provision, which is 22.1.  It's

6      the reverse.  It's upon the payment by tenant of the

7      rent and the observance and performance of all of the

8      agreements, covenants, terms and conditions on tenant's

9      part to be observed, tenant shall quietly enjoy.

10         We don't have a full payment of rent here.

11     They have no right to quiet enjoyment under this

12     situation.  The use of the property is not solely for a

13     fitness club during the months of the pandemic in 2020.

14     The purpose of the lease is for the operation of maybe

15     a fitness club for thirty-three years.  But again, if

16     you go to, Your Honor, 8.1, which I referenced off the

17     record, which it contemplates that the tenant doesn't

18     need to use the property as a fitness center, it needs

19     to pay rent.  So being a fitness center is not the sole

20     purpose of this lease.  And 8.2 actually allows the

21     tenant to change the use of the premises, but again,

22     provided it pays rent.

23         I think Mr. Chait has accurately discussed

24     the abatement provision.  I mean, it's not just -- it's

25     a --

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
NYSCEF DOC. NO. 26
INDEX NO. 805964/2021
RECEIVED NYSCEF: 10/06/2021

22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C
Pg 26 of 31

23

1          THE COURT:  A casualty.

2          MR. HUJER:  It's a casualty.  But Judge, I

3    mean, it's not just that one word in the provision

4    that's casualty.  It's there needs to be an

5    interference as a result of any damage or destruction.

6    And then the obligation to pay rent resumes following

7    completion of restoration work by the landlord here.  I

8    mean, this is absolutely casualty property damage.  The

9    building is flooded.  You know, there's a -- you know,

10   a car goes through a plateglass window off hours, okay?

11   That's a casualty.  The COVID-19 Pandemic is not.  And

12   there was no rejection of the termination.  As I've

13   stated, there was a default.  My client sent a default

14   notice.  There was no payment of rent.  The lease has

15   been terminated.

16          THE COURT:  Is it relevant at all that your

17   client continued to accept rent even though you've

18   argued that they're entitled to another fifteen percent

19   of that?

20          MR. HUJER:  No, it's not.  Here's the --

21          MR. CHAIT:  May I step in, Your Honor?  Each

22   and every month once we terminated the lease, we sent

23   the rent back to the tenant.  So each and every month

24   after the lease termination, when they submitted the

25   check, we mailed the money back.

Kerry A. Meegan, CSR, NYRCR
Official Supreme Court Reporter

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 27 of 31

24

1             THE COURT:  So as of May, you returned the

2       money?

3             MR. CHAIT:  That's correct.

4             MR. PHELAN:  That's not true, Your Honor.

5       Your Honor, we pay electronically.

6             MR. CHAIT:  Then we mail it back.  They pay

7       electronically, then we mail a check back.

8             MR. PHELAN:  It didn't happen, Your Honor.

9             MR. CHAIT:  Your Honor, I'll represent --

10             MR. PHELAN:  Your Honor, none of those checks

11       have been cashed.  None of those checks have been

12       cashed.

13             MR. CHAIT:  That's true.  We felt bad.

14             THE COURT:  All right.  Well, if they haven't

15       been cashed, they still haven't been paid because

16       petitioner didn't accept them.  But you're saying since

17       the termination, you have not accepted any payment?

18             MR. CHAIT:  We would mail a check back to

19       them, that's correct.

20             MR. PHELAN:  Your Honor, so that we're clear,

21       we send it electronically.  They don't reject the

22       electronic payment.  They try to send a check back.  We

23       have returned their checks.  They have been paid.  They

24       have the money for the months in question.

25             THE COURT:  Anything else from you,

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C
Pg 28 of 31

25

1      Mr. Phelan?

2            MR. PHELAN:  Well, just real quickly, Your

3      Honor.  You know, Mr. Hujer made reference to title.

4      Title, as we all know from first year property class,

5      is the word used for those bundle of rights that are

6      attendant with ownership of property.  So when the

7      parties use the term "title," that's what they're

8      referring to.  And in fact, what is made clear is when

9      they use the simple title to the portion of the

10     property owned by landlord, they're simply describing

11     that landlord owns the property, and then they make

12     reps, warranties and covenants regarding that

13     ownership.  Right?

14           With respect to the quiet enjoyment and the

15     suggestion that we were in breach, remember that we

16     paid them on March 1st and we were forced to shut down

17     on March 17th, so they had been paid in full for the

18     month of March before there was any breach, rep,

19     warranty, before there was any issue.  So they breached

20     first, and that's quite clear.

21           And then with respect to other uses, when you

22     look at a frustration of purpose argument, and this is

23     what the law says is you look at the tenant's purpose

24     at the inception of the lease, not whether or not they

25     can use it for other reasons.  And frankly, we couldn't

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM
NYSCEF DOC. NO. 28

INDEX NO. 805964/2021

22-11582-pb   Doc 121-3   Filed 05/09/23   Entered 05/09/23 17:28:21   Exhibit C

RECEIVED NYSCEF: 10/06/2021

Pg 29 of 31

Decision                                    26

1    use it for other reasons.  This is a specialty fifty

2    thousand square foot building with a pool and a

3    basketball court that frankly we couldn't have made

4    pizzas, we couldn't have done other things.  We run

5    gyms.  We weren't allowed to run the gym, so frankly,

6    they breached the lease first.  Thank you.

7              THE COURT:  All right.  I'm going to take a

8    brief recess here.  I want to check my notes and a

9    statute, and I'll come back and give you my ruling, all

10   right?

11             MR. PHELAN:  Okay.  Thank you.

12             THE COURT:  Bear with me.

13             MR. HUJER:  Thank you, Your Honor.

14             (A short recess was then taken.)

15             THE COURT:  Back on the record.  And I have

16   reviewed your papers and listened carefully to your

17   arguments.  And I don't want to conflate RPAPL 761

18   with 711, but the relief requested reserving

19   petitioner's rights to commence a plenary action and

20   for monetary damages was for the Court to order the

21   respondent-tenant to vacate the premises and award

22   possession to the petitioner; of course, in broom clean

23   condition and the reservation of their other rights.

24   The respondent has opposed the relief and then raised

25   counterclaims.  There's seven of them.

FILED: ERIE COUNTY CLERK 10/06/2021 01:26 PM        INDEX NO. 805964/2021

NYSCEF DOC. NO. 28        22-11582-pb    Doc 121-3    Filed 05/09/23    Entered 05/09/23 17:28:21    Exhibit C    RECEIVED NYSCEF: 10/06/2021
Pg 30 of 31

Decision                                27

1          The case law cited, of course, supports the

2     respective parties' positions, and notwithstanding the

3     many cases, including the Yellowstone case, and the

4     concession by Mr. Phelan that his client never asked

5     for a Yellowstone stay or rejected the termination -- I

6     reviewed that Fourth Department case, Benderson

7     Development Company vs. Commenco, C-O-M-M-E-N-C-O,

8     44 A.D.2d 889.  It's been cited and given to the court

9     reporter for the cite for the record -- it seems to me

10    draconian that, based on what arose during the

11    pandemic, that the petitioner could unilaterally

12    terminate the lease or say the lease was terminated

13    based on what occurred, frustration of purpose, the

14    inability for the respondent to conduct its business as

15    intended.

16          So based on all of that, based on the

17    arguments of counsel, the case citations, the statutory

18    citations, I am denying the petition, the relief

19    requested.

20          What remains is the ability for the

21    petitioner to bring a plenary action for monetary

22    damages, and also the counterclaims survive.  That's my

23    ruling.

24          Mr. Phelan, would you prepare an order for my

25    signature.

Decision                                                    28

1        So what we need to do is have a pretrial or

2     conference relative to the counterclaims and what the

3     intention of the petitioner is relative to a plenary

4     action.

5              MR. PHELAN:  I will, Your Honor.  Thank you.

6              THE COURT:  All right.  Off the record.

7              (Discussion held off the record.)

8                (PROCEEDINGS CONCLUDED.)

9

10                   *        *        *

11

12              C E R T I F I C A T I O N

13     The foregoing is certified to be a true and accurate

14  transcript of the official court reporter's minutes of the

15  virtual proceedings in the matter of Egate-95, LLC vs.

16  Fitness International, LLC.

17    _8/27/21_____          _Kerry A. Meegan_____

18  DATE                        Kerry A. Meegan, CSR, NYRCR
                                Official Supreme Court Reporter
19

20

21

22

23

24

25