

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

July 20, 2023

**BY ECF AND EMAIL**
Honorable Philip Bentley
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004

      Re:    In re Golden Seahorse LLC dba Holiday Inn Manhattan Financial District
                  Chapter 11 Case No. 22-11582 (PB)

Dear Judge Bentley:

      This firm is counsel to Golden Seahorse LLC dba Holiday Inn Manhattan Financial District, the debtor and debtor in possession (the "Debtor").

      During the hearing on July 6, 2023, the Court requested briefing on the following discrete issue: "whether in the non-plan context, the 365 assumption context, the debtor can deaccelerate." See transcript, pp. 101:4 to 101:5; see also transcript, pp. 103:20 to 104:2 ("just the very discrete issue of in a non-plan context, when the debtor is seeking to assume a contract or a lease that has been accelerated-…does the debtor have the power in the right circumstance…to deaccelerate"). As the Court summarized, the Secured Lenders have said "no". See transcript, pp. 101.5. A copy of the transcript of the hearing is annexed hereto as Exhibit "A".

      During the lengthy hearing on July 6, 2023, counsel to the Secured Lenders belabored over this point for roughly 30 minutes attempting to drive the point home. To the extent a party needs to go to such efforts to try to convince a court that its reading is correct, this is evidence in and of itself the statutory language does not clearly lend itself to the Secured Lenders' interpretation that "unexpired leases and executory contracts" in section 365(b)(2)(D) was only meant to refer to those types of contracts, and no other contracts. The Secured Lenders admitted during the hearing, there does not appear to be any case law or other persuasive authority supporting Secured Lenders' position. As best as we can ascertain from the confusing argument, the Secured Lenders suggest that the words "of a kind" do not really mean "of a kind" as it relates to § 365(b)(2)(D) but the words "of a kind" can only be used to apply to all types of contracts with the types of defaults described in § 365(b)(2)(A) through (C). The Secured Lenders are wrong.

      After additional research, the Debtor has not found a single case that supports the Secured Lenders' view that since § 365 does not mention the word "deaccelerate", when there is an acceleration of an unexpired lease or executory contract, it cannot be decelerated by utilizing the assumption power under § 365(b) but that it could only be decelerated under 1124(2), by reference to § 365(b)(2)(D). The Debtor did locate an old case in the Southern District of New York from the late Judge Schwartzberg where a debtor that had defaulted on rent payments under a real property lease pre-petition had given the landlord a promissory note on account of the unpaid rent and then sought to assume the lease under section 365(b) without promptly curing the arrears and instead sought to reinstate the note utilizing section 1124. Judge

Honorable Philip Bentley
July 20, 2023
Page 2 of 4

Schwartzberg denied the debtor's motion to assume the lease holding that section 365(b) essentially trumped section 1124 and required a prompt cure. See In re Offices and Services of White Plains Plaza, Inc., 58 B.R. 441 (1986).

While no case law seems to exist that is directly on point, the best reading on this specific issue was provided by Professor Brubaker. In criticizing the decision of In re Moody National SHS Houston H, LLC, 426 BR 667 (Bankr. S.D. Texas) in which the court held the § 365(b)(2) reference in § 1124(2) only relates to unexpired leases and executory contracts, Professor Brubaker states, in relevant part, as follows:

> If [Moody were] accepted, though, this reasoning would render § 1124(2) a nullity. The only kinds of debts for which § 1124(2) has any utility at all are debts that are not associated with executory contracts and unexpired leases subject to § 365. A debtor does not need § 1124(2) to reinstate a defaulted executory contract or unexpired lease via a plan of reorganization. Code § 365 assumption, in and of itself, authorizes cure and reinstatement of such a defaulted executory contract or unexpired lease, and § 1123(b)(2) expressly provides that a plan may, subject to § 365…provide for the assumption…of any executory contract or unexpired lease of the debtor." The entire purpose and function of § 1124(2), therefore, is to permit a debtor's plan to "cure and reinstate certain **executed** contracts – loan agreements - in reorganization cases".
>
> Hence, the "of a kind" reference in § 1124(2)(A), if it is to have any meaning at all, must be referring to the particular kind of contract provisions set forth in the referenced subsection, § 365(b)(2), rather than the kinds of contracts and leases governed by § 365 generally…
>
> If § 1124(2)(A) were only excusing cure of ipso facto defaults in executory contracts and unexpired leases subject to § 365 – since § 1124(2) only has utility for debts not associated with an executory contract or unexpired lease, subject to § 365 – then § 1124(2)(A) would never excuse cure of ipso facto defaults. i.e. a debtor could cure, "de-accelerate" and reinstate a defaulted debt under § 1124(2) only by also curing all ipso facto defaults, such as financial condition defaults or even a bankruptcy default. This, of course, would make it impossible to ever cure, "de-accelerate," and reinstate (through a chapter 11 plan in a bankruptcy case) a defaulted debt contract that contains a bankruptcy default clause. Given that debt contracts invariably do contain such a bankruptcy default clause (and inevitably would if Moody National were good law), the *Moody National* interpretation of the "of a kind" reference in 1124(2)(a) would render 1124(2) a dead letter. Consequently, it is hard to accept the Moody National interpretation as even a plausible (much less "plain" meaning of the statutory text at issue.

See Brubaker Part II, p. 5. The Moody case did not address this specific issue raised by the Secured Lenders the purpose of the addition to section 365(b)(2)(D) was to allow for de-acceleration of only executory contracts or unexpired leases. As reflected in the Debtor's prior memorandum of law as well as its reply and as indicated during oral argument, one of the few cases providing any insightful analysis of the 365(b)(2)(D) impact on reinstatement was the Phoenix Business case cited to the Court. Brubaker's analysis on the point above, together with Phoenix Business's ultimate ruling is consistent with section 1123(b), which permits a debtor to assume, reject or assign any executory contract or unexpired lease subject to section 365.[1]

---

[1] See also In re Zamani, 390 B.R. 680, 684 (Bankr. N.D. Cal. 2008) (denying default interest and confirming a plan "that would cure the payments defaults on each of the notes by decelerating the debt and paying all arrearages or by paying the full amount due on the note", citing Phoenix Business's analysis with approval, after noting Professor Klee's interpretation of the penalty rate or provision language in section 365(b)(2)(D)).

089271\1\170281855.v4

Honorable Philip Bentley
July 20, 2023
Page 3 of 4

      Further, Brubaker's analysis is particularly appropriate when you consider the ramifications that would follow if the Secured Lenders were correct. As the Court is aware, it is very common for a debtor or trustee to proceed with a sale of assets pursuant to section 363 of the Bankruptcy Code, coupled with the assumption and assignment of executory contracts and unexpired leases. In other words, to the extent that a lease or executory contract had been "accelerated" by virtue of the types of penalty provisions referred to in section 365(b)(2)(D), but such lease or executory contract had not yet terminated, outside of a plan, the debtor is able to assume and assign that unexpired lease or executory contract as long as it satisfies the requirements for assumption under section 365(b), which notably includes a cure payment to the extent of any outstanding amounts due and owing. To our knowledge, we have not seen a counterparty to an unexpired lease or executory contract raise objections to a sale/assumption motion by claiming that the executory contract or unexpired lease could not be assumed and/or assigned under section 365(b) because it was "accelerated" and thus the parties are required to pursue such assumption and assignment under a plan in order to deaccelerate under 1124(2), either in advance of or at the same time as assumption and assignment. If that were the law, and a debtor did not have the flexibility to assume and assign contracts outside of the plan context with the ability to give the counterparty all rights under such contracts, notwithstanding an earlier acceleration, debtors would lose the option of maximizing its assets through pre-plan sales or assumptions and/or assignments.

      For these reasons, it is not surprising there appear to be no cases on point in which a party was seeking to de-accelerate an executory contract under section 1124(2) rather than assumption under section 365(b) other than Judge Schwartzberg's case cited above. The reported cases that have considered section 1124(2) or 1123(d), with or without discussion of section 365(b)(2)(D) all seem to have addressed secured notes and mortgages, as opposed to executory contracts. As such, logic dictates the proper reading of section 365(b)(2)(D) in this context is that it was incorporated into the statute to provide a list of defaults "of the kind" that may be relevant to other types of contracts. Indeed, Brubaker, who conducted his own detailed research in connection with his article found no case that supports the Secured Lenders' arguments at the July 6th hearing, with Professor Brubaker noting that his reading of this specific issue is consistent with the "presumption against ineffectiveness" canon. See Brubaker Part II, fn. 30.

      Moreover, even if the Secured Lenders were right that section 1124(2), together with section 365(b)(2)(D) could apply to de-acceleration in connection with executory contracts, it does not necessarily follow the statute could not be read to also allow de-acceleration of all types of contracts (including executory contracts) that have defaults of the kind referenced in section 365(b)(2)(A) through (D). Indeed, that would be consistent with the plain meaning of section 1124(2)(A) which refers to "defaults of a kind specified in section 365(b)(2)", which naturally means all of the subdivisions (A) through (D), not just (A) through (C), as argued by the Secured Lenders.

      Finally, the interpretation the Debtor espouses is the most compelling view, especially when reading the Bankruptcy Code holistically, as described in the Debtor's papers and at oral argument because outside of the Bankruptcy Code, most state laws and loan agreements generally do not allow borrowers to "decelerate", and thus, if the Secured Lenders, were correct, a debtor could never "cure" a default under section 1123(d) and decelerate under section 1124(2) of the Bankruptcy Code where state law and the agreement did not so provide. However, as cases have found and as emphasized by Professor Brubaker, the concept of "cure" is governed by federal law. Here, the mortgage loan is silent on the cost to cure as it does not permit a cure. Also, it is without dispute New York law does not give the Debtor the right to reinstate the mortgage loan which was accelerated prepetition by the Secured Lenders. See In re Graf v. Hope Building Corp., 254 N.Y 1, 171 N.E. 884 (1930). Outside of a bankruptcy case, and under New York

n/a

Honorable Philip Bentley
July 20, 2023
Page 4 of 4

state law, the only right the Debtor has to save its property is to redeem (not reinstate) prior to the foreclosure sale by paying the full amount of what a foreclosure court deemed is owed. While we disagree wholeheartedly with the ruling in New Investments, the unique Washington state statute, unlike New York law, permitted a cure of a non-judicial foreclosure sale by paying default interest (and hence, the Washington state statute permitted deceleration of an accelerated debt). Neither New York law nor the Debtor's mortgage loan permit cure and/or reinstatement. Therefore, the federal concept of cure (avoiding the consequences of a default) which is consistent with the relevant legislative history in 1978 and 1994, reflects that an adoption of the Taddeo and Entz-White line of cases is not inconsistent with section 1123(d). See also In re Southeast Co., 81 B.R. 587, 591 (9th Cir. B.A.P. 1987) ("Section 1124(2)(D) [the predecessor to section 1124(2)(E) does not totally forbid alteration of I.R.E.'s contractual or state law rights. Rather, it specifies that legal, equitable or contractual rights must not be "*otherwise* alter[ed]"). The exceptions referred to by this "otherwise" are spelled out in subsections (A), (B) and (C) of 1124(2). According to these subsections, cure, reinstatement and reasonable reliance can alter the terms of a contract in Chapter 11 proceedings", citing to In re Taddeo, 685 F.2d 24, 28-29 (2d Cir. 1982); In re Madison Hotel Associates, 749 F.2d 410, 419 (7th Cir. 1984); In re Forest Hills Associates, 40 B.R. at 415; In re Masnorth, 28 B.R. 892, 894 (Bankr. N.D.Ga. 1983).

      Thank you for your attention to this matter.

Respectfully submitted,

*/s/ Scott S. Markowitz*

Scott S. Markowitz

089271\1\170281855.v4