**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Golden Seahorse LLC,*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
smarkowitz@tarterkrinsky.com
rcavaliere@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:

                                            Chapter 11

GOLDEN SEAHORSE LLC
dba Holiday Inn Manhattan Financial District,[1]    Case No. 22-11582 (PB)

                      Debtor.
-------------------------------------------------------------x


## DEBTOR'S THIRD AMENDED DISCLOSURE STATEMENT TO ACCOMPANY ITS THIRD AMENDED PLAN OF REORGANIZATION DATED NOVEMBER 21, 2023


> **THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

[1] The Debtor's last four digits of its tax identification number are 4770. The Debtor's principal place of business is 99-103 Washington Street, New York, New York.

# TABLE OF CONTENTS

I INTRODUCTION ............................................................................................................................. 1

    A.    Summary of Classification and Treatment ........................................................................ 5

II VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN ................................................ 7

    A.    Manner of Voting on Plan ................................................................................................. 7
    B.    Claim Holders Entitled To Vote ........................................................................................ 8
    C.    Classes Impaired Under the Plan ...................................................................................... 9
    D.    Vote Required For Class Acceptance ................................................................................ 9

III  THE DEBTOR AND ITS OPERATIONS ................................................................................. 9

    A.    General Background .......................................................................................................... 9
    B.    Value of the Hotel ........................................................................................................... 12

IV THE CHAPTER 11 CASE ........................................................................................................ 13

    1.    The Chapter 11 Filing ..................................................................................................... 13
    2.    Retention of Debtor's Counsel ........................................................................................ 13
    3.    Cash Collateral Motion ................................................................................................... 13
    4.    Agreement with New York City Health & Hospitals Corporation ................................. 14
    5.    Post-Petition Operating Results ...................................................................................... 15
    6.    Filed and Scheduled Claims ............................................................................................ 15

V SUMMARY OF THE PLAN ..................................................................................................... 19

    A.    General ............................................................................................................................. 19

        1.    Brief Explanation of Chapter 11 .................................................................................... 19
        2.    Acceptance of the Plan .................................................................................................... 20
        3.    Classification of Claims and Equity Interests Generally ................................................ 21

    B.    Classification and Treatment of Claims and Equity Interests Under the Plan ................ 22

        1.    Unclassified Claims ........................................................................................................ 22
        2.    Class 1 – Wilmington Trust's Secured Claim(s) ............................................................ 24
        3.    Class 2 - Priority Tax Claims .......................................................................................... 27
        4.    Class 3 – General Unsecured Claims .............................................................................. 27
        5.    Class 4 – Equity Interests ............................................................................................... 28

    C.    Conditions to and Means for Consummation of the Plan and Alternatives ..................... 28

        1.    Conditions Precedent to Occurrence of the Effective Date ............................................ 28
        2.    Funding of the Plan ......................................................................................................... 29
        3.    Alternative to Plan .......................................................................................................... 30

    D.    Objections to Claims ...................................................................................................... 30
    E.    Resolution of Disputed Claims ....................................................................................... 30
    F.    Estimation ....................................................................................................................... 30
    G.    Allowance of Disputed Claims ....................................................................................... 31
    H.    Vesting of Property .......................................................................................................... 31
    I.    Certain Other Provisions of The Plan .............................................................................. 31

        1.    Discharge of all Claims ................................................................................................... 31
        2.    Injunction and Stays ........................................................................................................ 32
        3.    Exculpation ..................................................................................................................... 33
        4.    Causes of Action ............................................................................................................. 33
        5.    Disbursing Agent ............................................................................................................ 33
        6.    Payments by Cash ........................................................................................................... 33
        7.    Unclaimed Distributions ................................................................................................. 34

    8.     Executory Contracts and Unexpired Leases........................................................34
    9.     Professional Fees and Expenses ........................................................................35
    10.   Retention of Jurisdiction ....................................................................................36
    11.   Management of the Reorganized Debtor .............................................................37
    12.   Modification of the Plan .....................................................................................38

**VI CONFIRMATION PROCEDURES** ...............................................................................38
    A.     Solicitation of Votes; Acceptance .....................................................................38
    B.     Confirmation Hearing .........................................................................................39
    C.     Best Interests Test/Liquidation Analysis ...........................................................41
    D.     Risk Factors .......................................................................................................43

**VII "CRAM DOWN"** ........................................................................................................43

**VIII VOTING INSTRUCTIONS** .........................................................................................45

**IX CERTAIN FEDERAL INCOME TAX CONSIDERATIONS** ......................................45

**X CONCLUSION** ..............................................................................................................46

089271\1\170136412.v8

# I

## INTRODUCTION

On November 29, 2022 (the "Petition Date"), Golden Seahorse LLC, debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

Pursuant to § 1125 of the Bankruptcy Code, the Debtor submits this third amended disclosure statement (the "Disclosure Statement") relating to its modified third amended plan of reorganization, dated November 21, 2023 (the "Plan").

The Debtor provides this Disclosure Statement to all of the Debtor's known Creditors, and other parties in interest in order to provide adequate information to enable them to make an informed decision as to whether to accept or reject the Plan. All holders of Claims are hereby advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan.

The Plan summary and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan (a copy of which accompanies this Disclosure Statement as **Exhibit "A"**).[2]

The Plan is premised upon either a cure and reinstatement of the Loan held by Wilmington Trust and HI FIDI pursuant to sections 1123(a)(5)(G) and 1124(2) of the Bankruptcy Code or a recasting and modification of the Loan and the issuance of the New Note in the Allowed Amount of the Claim(s) less the $10 million payment on the Effective Date.

---

[2] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings assigned to them in the Plan.

089271\1\170136412.v8

Pursuant to the Bankruptcy Court Decision issued by the Bankruptcy Court on July 31, 2023, the Bankruptcy Court held that in order for the Debtor to reinstate the Loan without affording Wilmington Trust the right to vote for or against the Plan, the Debtor is required to pay the default interest which Wilmington Trust asserts is at least $18 million and if the Bankruptcy Court permits post-petition interest at the default rate could be as much as $29 million. The Debtor is exploring options to raise the funds required to reinstate the Loan.[3] However, at the Debtor's sole option, the Plan provides for a modification and recasting of the Loan and the issuance of the New Note which will entitle Wilmington Trust the right to vote for or against the Plan.

By Order dated November ____, 2023, the Bankruptcy Court approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable the Debtor's Creditors to make an informed judgment about the Plan. However, the Bankruptcy Court's approval of this Disclosure Statement does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.  No statements or information concerning the Plan and the transactions contemplated thereby have been authorized, other than the statements and information set forth in this Disclosure Statement.  All other statements regarding the Plan and the transactions contemplated, whether written or oral, are unauthorized.

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for **March 5, 2024 at 10:00 a.m.** The hearing will be held before the Honorable Philip Bentley, United State Bankruptcy Judge at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, at his Courtroom, New York, NY 10004.This hearing may

---

[3] The Debtor has filed a notice of appeal from the order implementing the Bankruptcy Court Decision regarding payment of default interest and intends to seek a direct appeal to the Second Circuit.  The Bankruptcy Court has certified the order for direct appeal. The Debtor has filed a petition to the Second Cicruit seeking a direct appeal.

be adjourned from time to time without further notice other than by announcement in Bankruptcy Court on the scheduled date of such hearing or on the electronic case docket.  At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code.  The Bankruptcy Court will also receive and consider a ballot report prepared by the Debtor concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote.

**No representations concerning the Debtor, the estimated value of the Debtor's property and/or the estimated assets to be generated from the liquidation of the Debtor's assets, are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance which are other than as contained in this Disclosure Statement, should not be relied upon by you in casting your vote with respect to the proposed Plan.**

**THE DEBTOR BELIEVES THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO ALL CREDITORS UNDER THE CIRCUMSTANCES.  THE DEBTOR BELIEVES ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITORS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

This Disclosure Statement is based upon information available to the Debtor as of November 21, 2023, and does not reflect events that may occur subsequent to that date, which may have a material impact on the information contained in this Disclosure Statement.  The Debtor will not make any effort to supplement or amend this Disclosure Statement to reflect changes subsequent to the date hereof.

089271\1\170136412.v8

THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.

ALTHOUGH THE DEBTOR'S PROFESSIONAL ADVISORS HAVE ASSISTED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON THE FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING THE FINANCIAL, BUSINESS AND ACCOUNTING DATA PROVIDED BY THE DEBTOR, THE DEBTOR'S PROFESSIONAL ADVISORS HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND MAKE NO REPRESENTATIONS OR WARRANTIES AS TO SUCH INFORMATION.    SUCH PROFESSIONAL ADVISORS DO NOT REPRESENT OR WARRANT THAT THIS DISCLOSURE STATEMENT IS COMPLETE OR IS FREE FROM ANY INACCURACY OR OMISSION.

## CAUTIONARY STATEMENT

CERTAIN INFORMATION INCLUDED IN THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITHIN THE MEANING OF THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, AS AMENDED.    SUCH FORWARD-LOOKING INFORMATION IS BASED ON INFORMATION AVAILABLE WHEN SUCH STATEMENTS WERE MADE AND ARE SUBJECT TO RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THOSE EXPRESSED IN THIS DISCLOSURE STATEMENT.

### A.    Summary of Classification and Treatment

Detailed elsewhere in this Disclosure Statement is a description of the technical aspects of the classification of Claims, the relative allocations of property to holders of such Claims, the methodology as to how such property is to be distributed, the risks inherent in the proposed Plan, and the applicable bankruptcy and tax consequences of the proposed reorganization.  However, the Debtor believes that a broad overview of what, in the Debtor's opinion, Creditors are likely to receive under the Plan, will be helpful for your consideration of whether you wish to accept or reject the Plan.

The following is a summary of the classification of all Claims under the Plan and the proposed treatment of each such Class under the Plan. This summary is qualified in its entirety by reference to provisions set forth in the Plan, the terms of which are controlling.

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | TREATMENT OF CLAIM AND PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|---|---|---|---|---|
| Administrative (unclassified) | a.  Professional Fees and Expenses | Cash | 100% as allowed by the Bankruptcy Court or as agreed between the holder of such Claim and the Reorganized Debtor. | No |
| | b.  Accounts payable and other obligations which arose post-petition | Cash | 100% on the Effective Date or as may be paid in the ordinary course of business. | No |
| | c.  Goods delivered to the Debtor within the twenty days prior to the Petition Date | Cash | 100% on the Effective Date. | No |
| Class 1 | Wilmington Trust and HI FIDI – Secured Claim(s) | Cash | On the Effective Date, in full and complete satisfaction, compromise, settlement, release, the Allowed Wilmington Trust Claim(s) shall receive, at the election of the Debtor, either: (i) reinstatement of the principal amount of such Allowed Claim(s) plus payment in full in cash of all accrued but unpaid interest at the default rate | No, unless the Debtor elects to proceed with the option set forth in (ii). |

089271\1\170136412.v8

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | TREATMENT OF CLAIM AND PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|---|---|---|---|---|
|  |  |  | under the Note and all reasonable fees and ancillary expenses required to be paid under and in accordance with the Loan and/or the Bankruptcy Code through the Effective Date; or (ii) at the Debtor's sole option, the Loan shall be modified and recast via the New Note as follows: On the Effective Date, the Debtor shall pay $10 million thereby reducing the Allowed Amount of the Loan. The balance of the Allowed Amount of the Loan shall be modified and recast to a 10-year loan from the Effective Date at an interest rate of 6.5% simple interest based upon a 30 year amortization. The unpaid Allowed Amount of the Loan shall be due on the Maturity Date. If after Confirmation of the Plan, the Property is sold prior to the Maturity Date, the Class 1 Claim(s) shall be paid in full from the Sale Proceeds. Additionally, the Debtor reserves the right to pay the Class 1 Claim(s) in full the Allowed Amount of its Claim(s) from the refinance of the Property, or otherwise, any time prior to the sale of the Property with no prepayment fee or penalty. |  |
| Class 2 | Priority Tax Claims | Cash | 100% of Allowed Claims paid over three (3) years from the Effective Date (in equal quarterly payments) at the statutory rate of interest. In the event the Property is sold, the Class 2 Claim shall be paid in full the Allowed Amount of its Claim from the Sale Proceeds. | No |

089271\1\170136412.v8

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | TREATMENT OF CLAIM AND PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|---|---|---|---|---|
| Class 3 | General Unsecured Claims | Cash | All holders of Allowed Class 3 Unsecured Claims (including any Deficiency Claim), shall be paid in full without interest no later than six months from the Effective Date. On the Effective Date, all holders of Allowed Class 3 Claims shall receive 50% of their Allowed Claims in Cash and the remaining 50% shall be paid in Cash no later than six months from the Effective Date. In the event the Property is sold prior to six months from the Effective Date, the Allowed Class 3 Claims shall be paid any remaining unpaid amount of their Distributions from the Sale Proceeds. | Yes |
| Class 4 | Equity Interest Holder | Retain Interest | No Distribution, unless the Property is sold and in that case the Class 4 Equity Interest Holder shall receive the net Sale Proceeds after payment of all Administrative Claims and Class 1 through 3 Claims. | No |

## II

## VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN

A.    <u>Manner of Voting on Plan</u>

Before voting, this Disclosure Statement as well as the Plan should be read in their entirety. You should only use the ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan.

If you hold a Claim in Class 1 (if the Debtor elects to modify and extend the Loan rather than reinstate) or Class 3 included in the package of materials forwarded to you along with this Disclosure Statement and the Plan is the enclosed ballot for your acceptance or rejection of the Plan. You should complete, date and sign your ballot and return it to Tarter Krinsky & Drogin

LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., attorneys

for Debtor.  All ballots must be received prior to **5:00 P.M. on January 5, 2024**.

**B.**     **Claim Holders Entitled To Vote**

Under the Bankruptcy Code, holders of Claims in Classes that are "impaired" under the

Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains

any property under the Plan (in which case such Class is deemed to have rejected the Plan).

Bankruptcy Code § 1124 provides generally that a Class is impaired if the legal, equitable or

contractual rights of the Claims or Equity Interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the

Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is

not scheduled as disputed, contingent or unliquidated, or (ii) such Claim holder has filed a proof

of Claim with respect to a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is

temporarily allowed by the Debtor or by an order of the Bankruptcy Court in an estimated

amount which it deems proper for the purpose of voting to accept or reject the Plan.  In other

words, only holders of Allowed Claims may vote to accept or reject the Plan.  A Claim to which

an objection has been filed by the Debtor or a Claim (i) which is listed on the Debtor's Schedules

or Amended Schedules as disputed, unliquidated or contingent, and (ii) with respect to which a

superseding proof of claim has not been filed, is not an Allowed Claim for voting purposes,

unless the Claim is settled by agreement or the Bankruptcy Court allows the Claim (in whole or

in part) by Final Order.  Upon request of a party-in-interest, the Bankruptcy Court may

temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan.  Ballots

cast in respect of Claims other than Allowed Claims will not be counted. In addition, a vote may

be disregarded or "designated" if the Bankruptcy Court determines the acceptance or rejection of

the Plan by the Creditor is not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.    <u>Classes Impaired Under the Plan</u>

Claim holders in Classes 1 and 3 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.  Class 2 is not impaired under the Plan as this class consists of Priority Tax Claims which are treated in accordance with § 1129(a)(9)(C) of the Bankruptcy Code and are statutorily impaired but not entitled to vote for or against the Plan.

Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

## D.    <u>Vote Required For Class Acceptance</u>

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a Class of Equity Interest Holders as acceptance by holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests of such Class who cast ballots.

## III
## THE DEBTOR AND ITS OPERATIONS

## A.    <u>General Background</u>

The Debtor owns and operates the Hotel. The Hotel has been managed by Crescent for several years, a third-party unaffiliated management company that is known as one of the leading hotel management companies in the industry. Many of the Hotel's employees are employed by

Crescent and the Hotel advances funds to Crescent to cover the payroll and related expenses. Crescent receives a management fee of 1.5% of the Hotel's revenues.  In addition, the Hotel outsources its housekeeping services with General Personnel Services Inc. which provides the Hotel with approximately 60 housekeeping employees.

 In addition to the Hotel, the Debtor also owns an adjacent neighboring property located at 103 Washington Street, New York, NY 10006 whereby the Debtor leases space to a restaurant which is owned by a relative of the Debtor's primary equity interest holder. Initially the real property known as 99 Washington Street, New York, NY, Block 53 Lot 2 (the "Real Property") was purchased by McSam DT. McSam DT obtained a loan from Cathay Bank which was utilized to construct the Hotel between 2010 and 2014. The Cathay Bank loan was refinanced with UBS in the amount of $130 million (the "UBS Loan").  In connection with the UBS Loan, McSam DT deeded the Real Property to the Debtor.  The UBS Loan was refinanced and paid off in 2015 through a new loan with Bank of China for $135 million. Aside from a construction loan with Cathay Bank, McSam DT borrowed $14 million from HI Wall Street pursuant to the EB-5 loan program (the "EB-5 Loan").  The EB-5 Loan was an unsecured loan made to then owner of the Real Property.

In September 2018, the Debtor obtained the Loan from Ladder in the amount of $137,025,000 which was utilized to pay off the Bank of China loan.  McSam DT later changed its name to Hysendal.  The Hotel consists of fifty (50) stories and 492 rooms and operates under the HHF flag pursuant to a license agreement.

The September 2018 Loan with Ladder was secured by the Mortgage. The Loan was ultimately split into four separate tranches. Three tranches in the amount approximately $87 million are held by Wilmington Trust and one tranche (B Note) in the amount of $50 million was initially held by IGIS. In or about February 2022, IGIS sold its portion of the Loan (B Note) to

HI FIDI.  The Loan was for a period of ten (10) years at a fixed interest rate at 5.259% which required monthly interest payments of approximately $612,000.00. The Loan was an interest only loan with no amortization. The Debtor was current on all payments under the Loan up until the onset of the Covid-19 pandemic. Commencing in May 2020, directly as a result of the Hotel's closure as a result of the Covid-19 pandemic, the Debtor was unable to make the monthly interest payments on the Loan.

In or about May 26, 2020, Wilmington Trust, through its special servicer Midland,  called a default under the Loan and imposed the default interest rate of 10.259%.  The Debtor's first payment default was the interest payment due by May 5, 2020 for the May 2020 interest payment under the Loan. However, Wilmington Trust/Midland continued to sweep the Debtor's cash management accounts and applied at least $11.7 million of the Debtor's funds to interest payments on the Notes and other charges. In short, the Debtor was essentially current on all interest payments at the non-default rate on the Notes (other than the B Note) through February 2022. The Debtor attempted to negotiate a forbearance and/or modification with Midland with respect to the Loan but was unsuccessful. In or about March 25, 2022, Wilmington Trust commenced a mortgage foreclosure action in New York Court and also filed a motion seeking the appointment of a receiver to take control of the Hotel. By decision and order dated September 27, 2022, the Honorable Francis A. Kahn, III granted Wimington Trust's motion to appoint a receiver. Believing the appointment of a receiver would negatively impact the Hotel's operations. On November 29, 2022, the Debtor filed a voluntary Chapter 11 petition with the Bankruptcy Court which automatically stayed the foreclosure action and prevented the appointment of the receiver.

089271\1\170136412.v8

**B.**      **Value of the Hotel**

The Debtor believes the fair market value of the Hotel as of the Confirmation Date is approximately $172 million, which is based upon a recent appraisal. The Debtor believes the value of the Hotel, as of the Petition Date, was approximately $169,500,000.00 which is based upon a retrospective appraisal.  If the Debtor and Wilmington Trust are unable to agree upon value of the Hotel, the Bankruptcy Court will determine the value at or just prior to the Confirmation Hearing.  It may also be necessary for the Bankruptcy Court to value the Hotel as of the Petition Date, as the valuation on such date may have a material effect upon the Debtor's ability to confirm the Plan.  The Bankruptcy Court's determination of the Hotel's value will in part determine the treatment of Wilmington Trust's and HI FIDI's claim under the Plan.  Further, based upon Wlimington Trust's proofs of claim, the total amount due under the Loan to Wilmington Trust and HI FIDI, as of the Petition Date, inclusive of all interest, fees, and other charges, is approximately $169 million without consideration of a prepayment penalty of approximately $9 million.  Finally, the Bankruptcy Court's determination of value of the Hotel as well as the ultimate Allowed Amount of Wilmington Trust's Claim(s) will impact whether Wilmington Trust will have a Deficiency Claim in Class 4 of the Plan.

Moreover, pursuant to section 506(b) of the Bankruptcy Code, only oversecured creditors are entitled to post-petition interest. As such, to the extent the Bankruptcy Court determines Wilmington Trust was not oversecured as of the Petition Date, the Debtor may have the right to seek a return of the approximate $6 million in adequate protection payments made during the Chapter 11 case or such monies can be applied to reduce the principal of the Allowed Wilmington Trust Claim(s).  Further, depending on the Hotel's valuation, Wilmington Trust may be entitled to assert that unpaid post-petition interest at the default rate must be paid, while the Debtor may be able to assert that such interest should not be paid based on, among other reasons,

089271\1\170136412.v8

"equitable considerations" determined under relevant case law. Absent an agreement between the parties, the Bankruptcy Court will need to resolve these potential disputes which may have a material effect upon the confirmability of the Plan.

## IV
## THE CHAPTER 11 CASE

**1.      The Chapter 11 Filing**

The Debtor's Chapter 11 Case was filed on November 29, 2022.  It is pending before the Honorable Philip Bentley, United States Bankruptcy Judge.  On the Petition Date, the Debtor filed its Schedules [ECF Dkt. No. 4] and on December 8, 2022 the Debtor filed the Statement of Financial Affairs [ECF Dkt. No. 24].

**2.      Retention of Debtor's Counsel**

By order of the Bankruptcy Court dated January 11, 2023 [ECF Dkt No. 49], Tarter Krinsky & Drogin LLP ("TKD") was authorized to act as bankruptcy counsel for the Debtor during the course of the Debtor's Chapter 11 Case.

**3.      Cash Collateral Motion**

Immediately after the Petition Date, the Debtor filed a motion to use Wilmington Trust's cash collateral (the "Cash Collateral Motion").  Pursuant to section 363(a) of the Bankruptcy Code, room revenues generated from operation of the Hotel constitute cash collateral. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession is not entitled to utilize hotel room revenues unless the mortgagee consents or the Bankruptcy Court authorizes such use. It is customary in hotel Chapter 11 cases for a debtor-in-possession to utilize hotel room revenues to pay the ordinary operating expenses associated with the Hotel. The Debtor and Wilmington Trust agreed upon a cash collateral order which included a budget which the Debtor updates periodically. The cash collateral order permits the Debtor to continue to operate the Hotel by

collecting room revenues and paying ordinary operating expenses including real estate taxes and the monthly non-default interest payments due to Wilmington Trust under the Loan. The Debtor has paid Wilmington Trust approximately $6,000,000.00 since the Petition Date.

### 4.    Agreement with New York City Health & Hospitals Corporation

In or about January 2023, the Debtor entered into an agreement with NYCHH pursuant to which NYCHH agreed to utilize all 492 rooms in the Hotel to temporarily house migrants seeking asylum in the United States. The agreement expires on April 2024. The Debtor reserves the right to negotiate an extention of the NYCHH agreement. The Debtor believed it was a prudent exercise of its business judgment to enter into the agreement with NYCHH because it would likely generate at least an additional $10 million in net operating income and facilitate the Debtor's reinstatement of the Loan.

On or about January 17, 2023, the Debtor filed a motion with the Bankruptcy Court to authorize the Debtor's entry into the agreement with NYCHH [ECF Dkt. No. 54]. The Debtor also negotiated a temporary closing agreement with HHF which permits the Debtor to maintain its license agreement with HHF so the Hotel can transition back to a transient hotel at the conclusion of the agreement with NYCHH. Wilmington Trust vigorously objected to the Debtor's motion to enter into the agreement with NYCHH and the Bankruptcy Court conducted an evidentiary hearing and authorized the Debtor over the Wilmington Trust's objection to enter into the agreement with NYCHH. NYCHH is currently utilizing all or substantially all of the Debtor's Hotel rooms and the Debtor is no longer taking reservations from transient hotel guests until the expiration of the term of the agreement with NYCHH. The Debtor expects NYCHH to renew the contract for at least an additional one year.

**5.       Post-Petition Operating Results**

The Debtor has filed ten operating reports since the Petition Date. Copies of the operating reports are available by viewing same on PACER. The Debtor's operations have been profitable since the Petition Date and the Debtor has generated excess cash of over $10 million after payment of the monthly operating expenses and Wilmington Trust's non-default interest payments under the Loan. Currently, the Debtor has cash on hand of approximately $11,700,000.00. The Debtor is current on all post-petition obligations.

**6.       Filed and Scheduled Claims**

By order, dated January 5, 2023 (the "Bar Order"), the Bankruptcy Court established March 3, 2023 as the last date for the Debtor's Creditors to file a proof of Claim for prepetition Claims (the "Bar Date").  In accordance with the Bar Order, the Debtor's bankruptcy counsel served a copy of the notice of the Bar Date upon all known Creditors and other parties-in-interest.  The Debtor's management has reviewed the Claims filed by Creditors.

To the extent the Debtor deems it prudent and/or cost effective to object to Claims, the Plan provides the Debtor has thirty (30) days from the Effective Date to file objections to filed Claims.  If the Debtor fails to object to a properly filed proof of Claim on or before thirty (30) days from the Effective Date, then such Claim will be deemed Allowed and will be entitled to the Distribution under the Plan applicable to the particular class such Claim is a member of.  Below is a chart listing all filed proofs of claims to date.

| Claim No. | Original Claimant | Amount | Type |
|---|---|---|---|
| 1 | ODP Business Solutions, LLC | $1,640.44 | General Unsecured Claim |
| 2-2 | New York State Department of Taxation & Finance | 40,693.82 | Priority Unsecured Claim |
|  |  | $41.07 | General Unsecured Claim |

15

| 3-2 | U.S. Small Business Administration | $191,797.30 | General Unsecured Claim |
|---|---|---|---|
| 4-2 | Department of the Treasury, Internal Revenue Service | $0.00 | n/a |
| 5 | Six Continents Hotels, Inc. | $225,000.00 | General Unsecured Claim |
| 6 | Holiday Hospitality Franchising, LLC | $670,773.30 | General Unsecured Claim |
| 7 | Constellation NewEnergy, Inc. | $11,441.40 | General Unsecured Claim |
|  |  | $19,069.01 | Administrative Claim |
| 8 | Hewlett-Packard Financial Services Company | $54,562.32 | General Unsecured Claim |
| 9 | M7 Services LLC | $564.52 | General Unsecured Claim |
| 10 | Terramia SRL | $11,964.00 | Priority Unsecured Claim |
| 11 | Oracle America, Inc. | $2,130.23 | General Unsecured Claim |
| 12 | Travel Advocates International, Inc. | $1,755.23 | General Unsecured Claim |
| 13 | Wilmington Trust, NA, Trustee (Trust 1, Note A-1-A) | $35,474,902.52 | Secured Claim |
| 14 | Wilmington Trust, NA, Trustee (Trust 2, Note A-2) | $43,823,949.13 | Secured Claim |
| 15 | Wilmington Trust, NA, Trustee (Trust 3, Note A3) | $31,302,290.71 | Secured Claim |
| 16 | Wilmington Trust, NA, Lead Trustee (Note B) | $68,879,818.47 | Secured Claim |
| 17 | Casey Fire Systems, Inc. | $12,333.18 | General Unsecured Claim |
| 18 | Ritz Hotel Services | $123,277.36 | General Unsecured Claim |
| 19 | McCarter & English, LLP | $36,866.83 | Secured Claim |
| 20 | H.I. Wall Street Hotel, LLC | $4,925,553.97 | General Unsecured Claim |
| 21 | W&D Consultants Corp. | $9,015,500.00 | General Unsecured Claim |

089271\1\170136412.v8

| 22 | NYC Department of Finance | $1,727,487.20 | Priority Unsecured Claim |
|----|---------------------------|---------------|--------------------------|
| 23 | NYC Department of Finance | $221,357.00 | Administrative Claim |
| 24 | HD Supply Facilities Maintenance, LTD. | $30,930.66 | General Unsecured Claim |
| 25 | W&D Consulting Corp. | $250,000.00 | Administrative Claim |
|    | **Total** | **$197,056,330** | |

Aside from the twenty-five (25) proofs of claim referenced above, the Debtor's Schedules reflect non disputed Unsecured Claims in the amount of approximately $400,000.00 exclusive of cure costs with respect to HHF. The Debtor estimates total Allowed Unsecured Claims will be approximately $1,200,000.00 excluding any monies owed to insiders and excluding any potential Deficiency Claim held by Wilmington Trust.  Wilmington Trust filed an objection to the HI Wall Street Claim.  The Bankruptcy Court held a preliminary hearing on Wilmington Trust's objection to the HI Wall Street Claim on October 24, 2023. The Bankruptcy Court requested supplemental briefing on one issue and determined an evidentiary hearing is required in order to determine whether the claim is an Allowed Claim. Shortly thereafter, the Debtor, HI Wall Street and Wilmington Trust entered into a stipulation which provides for the expungement of the HI Wall Street Claim against the Debtor. The Debtor filed an objection to Claim No. 21 filed by W&D Consultants Corp. in the amount of $9,015,500.00. By order dated July 10, 2023, Claim No. 21 was expunged. Recently, W&D Consultants Corp. filed Claim No. 25 asserting an administrative claim based upon similar allegations contained in Claim No. 21 which has been expunged.  The Debtor intends to object to this Claim for similar reasons as it objected to Claim No. 21.   The Debtor is attempting to reconcile with the City of New York Claim No. 22 which consists primarily of hotel occupany taxes. In the event the Debtor and the City of New York are unable to reach an agreement,

the Debtor intends to object to Claim No. 22 as the Debtor believes it is vastly overstated and the actual amount owed is between $400,000.00 and $600,000.00. Claim No. 23 filed by the City of New York as an administrative claim was paid in the ordinary course of business.

On October 23, 2023, FiDi Claims LLC, an entity that, upon information and belief, is affiliated with prepetition secured lenders in which Wilmington Trust is either the trustee or an authorized representative, filed three transfer agreements reflecting purported transfers of Claim No. 9 of M7 Services LLC, Claim No. 10 of Terramia Srl, as well as a scheduled claim of Party Technology Solutions LLC. See Dkt Nos. 215, 216, and 217. Furthermore, on November 16, 2023, FiDi Claims LLC filed three additional transfer agreements reflecting purported transfers of Claim No. 12 of Travel Advocates International Inc., Claim No. 17 of Casey Fire Systems Inc. and a scheduled claim of Best Cleaners. See Dkt. Nos. 240, 241, and 242. The Debtor believes that FiDi Claims LLC has purchased the foregoing Claims and may attempt to purchase additional Claims in an effort to "block" the Debtor's Plan by voting such claims to "reject" the Plan. The Debtor is conducting an investigation, which will include the potential service of subpoenas for documents and possibility testimony on FiDi Claims LLC and the creditors that transferred their Claims to FiDi Claims LLC. The Debtor believes the circumstances surrounding the transfer of these Claims may give rise to designation of any votes arising from the purchased Claims pursuant to section 1126(e) of the Bankruptcy Code. Any creditor that sells their Claim to FiDi Claims LLC or any entity affiliated with Wilmington Trust should preserve all of their communications and documents as the Debtor reserves the right to serve a subpoena for documents and possible testimony in connection with the purchase of any such Claims.

V

**SUMMARY OF THE PLAN**

The Debtor submits the treatment of Creditors under the Plan is more favorable than the treatment Creditors would receive if the Chapter 11 Case was converted to Chapter 7. Therefore, the Debtor submits the Plan is in the best interests of the Creditors and the Debtor and recommends acceptance of the Plan by holders of Claims in Classes 1 (if the Debtor pursues a modification of the Loan) and 3.

**THE SUMMARY OF THE PLAN SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH CONTROL.**

A.      **General**

1.      **Brief Explanation of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself and its creditors and Equity Interest Holders.  Upon the filing of a petition for reorganization under Chapter 11 and during the pendency of the case, the Bankruptcy Code imposes an automatic stay of all attempts to collect on Claims against the Debtor and to enforce Liens against the Debtor's Property.

Confirmation and consummation of a plan of reorganization is the principal objective of a Chapter 11 case.  In general, a plan divides the Claims against, and Equity Interests in, a debtor into separate Classes and allocates plan distributions among those Classes.  If the legal, equitable and contractual rights of a Class are unaffected by the Plan, such Class is considered "unimpaired."  All unimpaired Classes are deemed to have accepted the Plan and therefore are not entitled to vote thereon.  Bankruptcy Code §1126(g), on the other hand, provides that all Classes of Claims and Equity Interests that do not receive or retain any property under the Plan

19

on account of such Claims and Equity Interests are deemed to have rejected the Plan.  All other

Classes of Claims and Equity Interests are considered "impaired" and are entitled to vote on the

Plan.

Under the Bankruptcy Code, acceptance of the Plan is determined by Class; therefore, it

is not required that each holder of a Claim or Equity Interest in an impaired Class vote in favor

of the Plan in order for the Bankruptcy Court to confirm the Plan.  Generally, each impaired

Class must vote to accept the Plan; however, the Bankruptcy Court may confirm the Plan in

certain circumstances without the acceptance of all impaired Classes if at least one (1) impaired

Class votes to accept the Plan and certain other statutory tests are satisfied. A further explanation

of the requirements for Confirmation if an Impaired Class rejects the Plan is set forth below in

this Disclosure Statement.  Many of these tests are designed to protect the interests of Creditors

and Equity Interest Holders who either do not vote or vote to reject the Plan but who will

nonetheless be bound by the Plan if it is confirmed by the Bankruptcy Court.

2.    **Acceptance of the Plan**

As a condition to confirmation, Bankruptcy Code § 1129(a) requires that: (a) each

impaired Class of Claims or Equity Interests votes to accept the Plan; and (b) the Plan meets the

other requirements of § 1129(a).  As explained above, Classes that are unimpaired are deemed to

have accepted the Plan and therefore are not entitled to vote thereon, and Classes that do not

receive or retain any property under the Plan are deemed to have rejected the Plan and likewise

are not entitled to vote thereon.  Accordingly, acceptances of the Plan are being solicited only

from those parties who hold Claims or Equity Interests classified in impaired Classes that are to

receive Distributions under the Plan.

An impaired Class of Claims will be deemed to have accepted the Plan if holders of at

least two-thirds in dollar amount and a majority in number of Claims in such Class who cast

089271\1\170136412.v8

timely ballots vote to accept the Plan. An impaired Class of Equity Interests will be deemed to have accepted the Plan if the Plan is accepted by Equity Interest Holders holding at least two-thirds in dollar amount of the allowed interests in such Class who cast timely ballots vote to accept the Plan.

Holders of Claims who do not timely vote on the Plan are not counted for purposes of determining acceptance or rejection of the Plan by any impaired Class of Claims or Interests.

### 3.    <u>Classification of Claims and Equity Interests Generally</u>

Bankruptcy Code § 101(5) defines a Claim as: (a) a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;" or (b) a "right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

Bankruptcy Code § 1123 provides that a plan of reorganization shall designate Classes of Claims against and Equity Interests in a debtor. Bankruptcy Code § 1122 further requires that each Class of Claims and Equity Interests contain only Claims or Equity Interests that are "substantially similar" to each other. The Debtor believes that it has classified all Claims and Equity Interests in compliance with the requirements of §§ 1122 and 1123. However, it is possible that a holder of a Claim or Equity Interest may challenge such classification and the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, the Debtor would, to the extent permitted by the Bankruptcy Court, modify the classifications in the Plan as required and use the acceptances received in this solicitation for the purpose of obtaining the approval of a Class or Classes of which the accepting holder is ultimately deemed to be a member. Any such reclassification could adversely affect the Class of

which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan. Furthermore, a reclassification of Claims or Equity Interests may necessitate a re-solicitation.

**B.**    **Classification and Treatment of Claims and Equity Interests Under the Plan**

The following describes the classification of Claims and Equity Interests under the Plan and the treatment that holders of Allowed Claims and Allowed Equity Interests are to receive if the Plan is confirmed and becomes effective.  A Claim or Equity Interest is classified in a particular Class only to the extent the Claim or Equity Interest fits within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest fits within the description of such different Class.  As a general rule, Secured Claims are classified in separate classes based upon the priority of their security interest in a debtor's assets. However, to the extent the underlying collateral securing a Secured Claim is determined to have a value less than the amount of the Secured Claim, such claimant is considered to be "undersecured" and may hold both a Secured Claim and an Unsecured Claim.  Accordingly, if the value of the Hotel as of the Petition Date is determined to be less than the amount of Wilmington Trust's Allowed Claim(s), then Wilmington Trust will hold a Secured Claim in the amount of the value of the underlying collateral (the Hotel) and an Unsecured Claim for the balance. If the Debtor is able to obtain the funds necessary to reinstate the Loan or is successful in any appeal of the Bankruptcy Court Decision, Wilmington Trust will not hold a Deficiency Claim.

**1.**    **Unclassified Claims**

The Plan does not classify Administrative Claims or statutory fees due to the United States Trustee, but does provide for the following treatment of such Claims.

(a) <u>United States Trustee Fees</u>.  All fees payable by the Debtor under § 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtor on the Effective Date.  In addition, the Debtor, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for and the Reorganized Debtor shall pay such fees until the entry of a final decree in this case or until the case is converted or dismissed.  The Reorganized Debtor shall file post-confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

(b) <u>Administrative Claims</u>.  An "Administrative Claim" is a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code § 503(b) and referred to in Bankruptcy Code § 507(a)(2), including the actual and necessary costs and expenses of preserving the estate or operating the Debtor's business after the commencement of a Chapter 11 case, loans and advances made to the Debtor after the Petition Date, compensation for legal and other services and reimbursement of expenses awarded or allowed under Bankruptcy Code § 330(a) or § 331, certain retiree benefits, certain reclamation Claims arising under Bankruptcy Code § 503(b)(9) , and all fees and charges against the estate pursuant to Chapter 123 of Title 28 of the United States Code.

The Plan provides that each holder of an Allowed Administrative Claim (including, without limitation, the professionals' fees and expenses incurred by the Professional Persons) allowed in a Final Order of the Bankruptcy Court and claims allowed pursuant to Bankruptcy Code § 503(b)(9)) shall be paid in Cash in full by the Debtor (a) upon the later of the Effective Date or the date upon which the Bankruptcy Court enters a Final Order allowing such Administrative Expense Claim or (b) upon such other terms as may exist in accordance with the ordinary course of business of the Debtor or (c) upon such less favorable terms as may be agreed between any holder of such Administrative Expense Claim and the Reorganized Debtor.  The

Plan further provides that holders of Administrative Claims, including Professional Persons holding Claims for services rendered during the Chapter 11 case, must file requests for payment within forty-five (45) days after the Confirmation Date.  The Debtor estimates the aggregate amounts due to Professional Persons shall total approximately $300,000.00, and shall consist of the professional fees of Debtor's counsel, TKD, exclusive of the retainer and payments received pursuant to the monthly compensation order.

Administrative Claims representing obligations incurred by the Debtor after the date and time of the entry of the Confirmation Order (including, without limitation, Claims for professionals' fees and expenses) shall not be subject to application to the Bankruptcy Court and may be paid by the Reorganized Debtor in the ordinary course of business and without Bankruptcy Court approval.  After the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The Plan provides that the fees and expenses of such Professionals shall be submitted monthly to the Reorganized Debtor by such Professionals in the form of a detailed invoice therefor, and shall be paid by the Reorganized Debtor upon such submission. If the Reorganized Debtor disputes the reasonableness of any such invoice and, if the dispute cannot be resolved by the parties, all unresolved disputes shall be submitted to the Bankruptcy Court on notice to the Reorganized Debtor for a determination of the reasonableness of such invoice.

**2.**    **Class 1 – Wilmington Trust's Secured Claim(s)**

Class 1 consists of Wilmington Trust's Allowed Secured Claim(s).  Wilmington Trust holds a first mortgage on the Property. Wilmington Trust has filed Claims against the Debtor in

the total amount of $179,481,590.83 as of the Petition Date. The Debtor disputes significant portions of Wilmington Trust's Class 1 Claim(s) including the default interest ($17,813,250.00), the liquidation fee in the amount of $1 million, late charges of approximately $1.2 million, a special servicing fee of $660,000.00 and the estimated prepayment fee in the amount $9,009,982.87.[4] However, at the Debtor's sole option, the Debtor will proceed with modification (or a recasting) of the Loan, at which time the Bankruptcy Court may need to determine the value of the Property and the amount of Wilmington Trust's Class 1 Secured Claim(s). Pursuant to § 506 of the Bankruptcy Code, Wilmington Trust's Class 1 Claim(s) are limited to the value of the Property as of the Petition Date.  Wilmington Trust shall hold a Deficiency Claim for the difference between the Allowed Amount of its Claim(s) and the value of the Property as of the Petition Date. The Deficiency Claim shall be included in Class 3 as a General Unsecured Claim and treated in the same manner as other Class 3 Claimholders.

The Plan provides either at the Debtor's sole option for the allowance of Wilmington Trust's principal amount of $137,025,000 plus all pre-petition interest at the default rate. Pursuant to sections 1123(a)(5)(G) and 1124(2) of the Bankruptcy Code, Wilmington Trust's Loan shall be deaccelerated and reinstated and the Debtor shall pay in full in Cash on the Effective Date all accrued unpaid interest under the Loan at the default rate which the Debtor believes to be approximately $28 million plus all reasonable professional fees and ancillary expenses required to be paid under the Loan and as required by section 1124(2) of the

---

[4] As set forth above, the Bankruptcy Court has determined the Bankruptcy Code requires the Debtor to pay default interest as a condition of reinstating the Loan. However, the Debtor still retains the right and has filed a claim objection motion challenging the default interest and related fees based upon non-bankruptcy law. Specifically, the Debtor seeks relief from the default interest and related charges based upon the undisputed fact the Debtor's payment defaults were caused solely by the Covid-19 pandemic.  On October 24, 2023, the Bankruptcy Court held a preliminary hearing on the Debtor's objection to various aspects of Wilmington Trust's Claims and requested supplemental briefing on two issues. After completion of the supplemental briefing, on November 14, 2023, the Bankruptcy Court rendered a decision determining that an evidentiary hearing will take place on January 29 to 31, 2024 pertaining to the Debtor's legal defense of "impossibility" as more fully described in the Debtor's objection to various aspects of Wilmington Trust's Claims.

Bankruptcy Code. Class 1 is unimpaired under the Plan if the Debtor pursues the cure and

reinstatement option. Class 1 is conclusively presumed to accept the Plan pursuant to section

1126(f) of the Bankruptcy Code if the Debtor is able to reinstate the Loan in accordance with the

Bankruptcy Court Decision. Therefore, Wilmington Trust is not entitled to vote to accept or

reject the Plan in the event the Debtor proceeds with the reinstatement option.

In the event the Debtor is unable to raise the funds required to reinstate the Loan in

accordance with the Bankruptcy Court Decision or the Debtor does not successfully reverse the

Bankruptcy Court Decision on appeal, the Plan provides for a modification and recasting of the

Loan as follows: On the Effective Date, the Debtor shall pay $10 million thereby reducing the

Allowed Amount of the Loan. The balance of the Allowed Amount of the Loan shall be

modified and recast to a 10-year loan from the Effective Date at an interest rate of 6.5% simple

interest based upon a 30-year amortization. The Reorganized Debtor shall issue the New Note to

Wilmington Trust which the Debtor estimates will be in the approximate amount of $158 million

(assuming the Debtor is unsuccessful in avoiding the default interest) and after application of the

$10 million payment on the Effective Date.  The unpaid Allowed Amount of the Loan (which the

Debtor estimates to be approximately $134 million) shall be due on the Maturity Date. Based

upon the Debtor's calculations, the monthly payments under the modified/recast Loan and the

New Note, shall be approximately $1 million. After confirmation of the Plan, in the event the

Property is sold prior to the Maturity Date, Wilmington Trust Class 1 Claim(s) shall be paid in

full from the Sale Proceeds. The Debtor reserves the right to pay the Class 1 Claim(s) in full the

Allowed Amount of its Claim(s) from the refinance of the Property or otherwise at any time prior

to the Maturity Date without any pre-payment fee or penalty.  If the Debtor elects to proceed

with modification/recasting of the Loan option rather than the reinstatement option, the Class 1

Claimholder is impaired and entitled to vote for or against the Plan.  In the event the Debtor

reinstates the Loan with full payment of all obligations, including default interest in accordance

with the Bankruptcy Court Decision or exercises its right to modify the Loan on the Effective

Date, the Debtor retains the right to reinstate the Loan with payment only of the non-default

interest and require Wilmington Trust to return excess payments to the extent the Bankruptcy

Court Decision is reversed on appeal after Confirmation of the Plan.  Under either scenario,

Wilmington Trust shall retain its Lien as existed on the Petition Date.

3.    **Class 2 - Priority Tax Claims**

Class 2 consists of Priority Tax Claims.  Each holder of a Priority Tax Claim that has not

been paid prior to the Effective Date shall be paid in full (in equal quarterly payments) over three

(3) years at the statutory rate of interest.  The holder of an Allowed Priority Tax Claim shall not

be entitled to receive any payment on account of interest, or on account of any penalty arising

with respect to or in connection with the Allowed Priority Tax Claim, except to the extent

allowed as a part of an Allowed Priority Tax Claim pursuant to § 507(a)(2) of the Bankruptcy

Code. The only Priority Claims are the City of New York's Claim for hotel occupancy tax and

New York State's Claim for sales tax.  In the event the Property is sold, the Class 2 Claim shall

be paid in full the Allowed Amount of its Class 2 Claim from the Sale Proceeds.  Class 2 is not

impaired under the Plan, as they are being treated in accordance with § 1129(a)(9)(C) of the

Bankruptcy Code.

4.    **Class 3 – General Unsecured Claims**

Class 3 consists of the holders of General Unsecured Claims. These Claims include trade

Creditors, the SBA Claim, Claims of professionals, and Claims of Insiders for loans made to the

Debtor and depending upon the value of the Property (and whether the Debtor is able to reinstate

the Loan), may include Wilmington Trust's Deficiency Claim. The Debtor believes the total

Allowed Class 3 Claims are approximately $1,200,000.00 exclusive of Wilmington Trust's

Deficiency Claim. Class 3 is impaired and entitled to vote for or against the Plan. All holders of Allowed Class 3 Unsecured Claims (including any Deficiency Claim), shall be paid in full without interest no later than six months from the Effective Date. On the Effective Date, all holders of Allowed Class 3 Claims shall receive 50% of their Allowed Claims in Cash and the remaining 50% shall be paid in Cash no later than six months from the Effective Date. In the event the Property is sold prior to six months from the Effective Date, the Allowed Class 3 Claims shall be paid any remaining unpaid amount of their Distributions from the Sale Proceeds.

5. **Class 4 – Equity Interests**

Hysendal is the sole Class 4 Equity Interest Holder and it shall retain its Equity Interest as it existed on the Petition Date in exchange for the Plan Contribution. The Debtor estimates the Plan Contribution will be approximately $20 million in the event the Debtor seeks to reinstate the Loan. Hysendal shall not receive any Distribution under the Plan. However, in the event the Property is sold, the Class 4 Equity Interest Holder shall receive any Sale Proceeds left over after payment of Allowed Administrative Claims and Class 1 through 3 Claims. Class 4 is not impaired under the Plan.

C. **Conditions to and Means for Consummation of the Plan and Alternatives**

1. **Conditions Precedent to Occurrence of the Effective Date**

The Effective Date will occur only if all of the following conditions take place:

(i) the Confirmation Order shall have been entered and become a Final Order; and

(ii) the Plan Contribution (to the extent necessary) shall have been deposited into Debtor's counsel's attorney trust account.

The Effective Date shall be the first business day on which all of the above conditions have occurred or are satisfied.

2.    **Funding of the Plan**

The Debtor anticipates funding the Plan from the revenue generated at the Hotel, as well as the Plan Contribution.[5]  Based upon the Bankruptcy Court Decision, the Debtor estimates it will need a Plan Contribution of approximately $20 million in addition to the funds on hand generated from the Hotel's operations.  The Debtor believes based upon its projections the Hotel will continue to generate sufficient cashflow to remain current on the monthly interest payment of approximately $612,000 under the reinstated Loan, or if the Debtor pursues the modification/recasting of the Loan, debt service payments will be approximately $1 million per month.

In the event the Debtor is unable to raise the funds required to reinstate the Loan in accordance with the Bankruptcy Court Decision, the Debtor will exercise its rights under the Plan to seek a modification/extension of the Loan. The Debtor intends to obtain the monies required to pay Wilmington Trust the balloon payment (approximately $134 million) on the Maturity Date by refinancing the Property or selling the Property.  The Debtor believes that assuming a normal working mortgage financing environment, the Reorganized Debtor will be able to refinance the Property to satisfy the payment due to Wilmington Trust on or before the Maturity Date.

Attached hereto as **Exhibit "B"** is the Debtor's seven (10) year projection following the Effective Date which reflects the Plan payments. [6] As set forth in the projections, the Debtor anticipates the Hotel will require approximately $3 million in renovations in 2025 and 2026 which will be funded from the FF&E reserve. The Debtor's total 2025 revenues are less than the 2024 revenues due to the transition back to a transient hotel operating under the Holiday Inn flag.

---

[5] The Plan Contribution will only be necessary if the Debtor pursues the reinstatement option.
[6]  The projections are based upon an assumption the current contract with NYCHH will be renewed for at least one (1) year beyond April 2024.

3.      **Alternative to Plan**

An alternative to the Plan is the Bankruptcy Court can permit Wilmington Trust to file their own plan which will likely provide for the sale of the Hotel and the payment of all Allowed Claims from the Sale Proceeds or alternatively, if Wilmington Trust was dissatisfied with offers to purchase the Hotel, they could credit bid and obtain ownership of the Hotel. In this scenario, Wilmington Trust has indicated it is prepared to pay all Allowed Claims. This alternative would require the Bankruptcy Court to permit Wilmington Trust to file a plan and will most certainly cause additional delay.

D.      **Objections to Claims**

The Plan provides that all objections to Claims shall be filed by the Debtor and served on the holders of such Claims within thirty (30) days after the Confirmation Date. If the objection to a proof of Claim that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of distributions under the Plan.

E.      **Resolution of Disputed Claims**

The Plan provides that Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Reorganized Debtor shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class.

F.      **Estimation**

The Plan provides the Debtor may, at any time, request the Bankruptcy Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to

estimate any Claim at any time, including during litigation concerning any objection to such Claim.

## G.    Allowance of Disputed Claims

The Plan provides that if, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.  Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent shall make a Distribution on the non-disputed portion of an Unsecured Claim in accordance with the provisions of the Plan.

## H.    Vesting of Property

As of the Effective Date, all assets of the Debtor shall vest in the Reorganized Debtor, free and clear of all Liens, Claims and Interests, except as otherwise provided in the Plan or the Confirmation Order.

## I.    Certain Other Provisions of The Plan

The Plan contains other provisions consistent with the requirements of Chapter 11 of the Bankruptcy Code, including provisions for the Distribution of Cash and the collection and disposition of assets of the Debtor's Estate.

### 1.    Discharge of all Claims

Except as otherwise provided by the Plan, pursuant to § 1141 of the Bankruptcy Code, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date.

2.      **Injunction and Stays**

Except as otherwise expressly provided herein and related documents, all persons or entities who have held, hold or may hold claims against the Debtor are, with respect to any such Claims, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtor or the Reorganized Debtor, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor or the Reorganized Debtor, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.

089271\1\170136412.v8

3.      **Exculpation**

Neither the Debtor nor any of its respective officers, directors, employees and other agents, financial advisors, attorneys and accountants shall have any liability to any holder of any Claim or Equity Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Case or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by the Bankruptcy Court.

4.      **Causes of Action**

Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Reorganized Debtor shall retain, and may, with its determination of the best interest of the estate, enforce any claims, rights and causes of action that have been or may be commenced by the Debtor including, but not limited to, those arising under §§ 544 through 550 of the Bankruptcy Code. After a preliminary review, the Debtor does not believe it possesses any causes of action which are worth pursuing.

5.      **Disbursing Agent**

The Reorganized Debtor shall act as Disbursing Agent under the Plan.  Jianfeng Qin shall be in charge of all matters relating to the Distributions required by the Plan. In the event the Disbursing Agent changes prior to the, entry of an order of final decree closing the Debtor's Chapter 11 case, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

6.      **Payments by Cash**

Payments to be made by the Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

33

7.    **Unclaimed Distributions**

The Plan provides that Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

The Plan further provides that if any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

8.    **Executory Contracts and Unexpired Leases**

(a)    **Assumption and Rejection are Generally Subject to Approval of the Bankruptcy Court**

The Bankruptcy Code empowers a debtor-in-possession to assume or reject executory contracts and unexpired leases. As a general matter, an "executory contract" is a contract under which material performance (other than the payment of money) remains due by each party thereto. If an executory contract is rejected, the non-debtor party to that contract may file a Claim for damages incurred by reason of the rejection. In the case of rejection of leases for non-residential real property, resulting damage Claims are subject to certain limitations imposed by the Bankruptcy Code. If an executory contract or unexpired lease is assumed, the debtor-in-possession is bound to perform its obligations arising thereunder in accordance with the terms of such agreement.

(b)    Assumption of Executory Contracts and Unexpired Real Property Leases

As of the date the Plan is confirmed, unless expressly rejected by the Debtor, any executory contract or unexpired lease of entered into by the Debtor that has not yet been (a)

assumed and assigned, or (b) assumed, shall be deemed to be assumed by the Debtor as of the Confirmation Date. For avoidance of doubt, the License Agreement, the TCA, the SCH Loan Agreement, the SCH Note, and any ancillary contracts to the License Agreement, including but not limited to the Master Technology Agreement with SCH, shall be deemed assumed upon the Effective Date. For assumption of the License Agreement, the Debtor shall pay a total cure of $800,773.30 to HHF consisting of $670,773.30 in outstanding unpaid prepetition amounts due under the License Agreement, and $130,000.00 in reimbursement of HHF's attorneys' fees and costs (the "Cure"). Payment of the Cure shall be made in six equal installments of $133,462.22 starting with the first business day of the month after the Effective Date occurs and the first business day of each of the next five months thereafter, paid by wire transfer to the Alston & Bird LLP CA IOLTA Trust Account. Separate and apart from the Cure, Debtor shall be required to be current on all postpetition franchise fees due to HHF under the License Agreement and TCA, and to continue to pay all postpetition franchise fees to HHF in the ordinary course as they become due. Notwithstanding anything in the Disclosure Statement, Plan or Confirmation Order, HHF is not required to file an application for payment of any administrative claim, and other than the Cure, all amounts due under the License Agreement and TCA shall be paid in the ordinary course pursuant to the terms of those agreements. Claim No. 5 filed by SCH and Claim No. 6 filed by HHF shall be Allowed as of the Effective Date.

## 9.    Professional Fees and Expenses

The Plan provides that each of the Professionals requesting compensation in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date within forty five (45) days after the Confirmation Order.

**10.    Retention of Jurisdiction**

The Plan provides that, from and after the Confirmation Date and until such time as all payments and Distributions required to be made by the Debtor have been made, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes permitted under the Code, including, without limitation, the following:

(a)    To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

(b)    To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

(c)    To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

(d)    To hear and determine motions to approve the sale of assets of the Debtor under § 363 of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

(e)    To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtor during the pendency of the Chapter 11 Case.

(f)    To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

(g)    To make orders allowing amendment of the schedules filed in the Chapter 11 Case for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

089271\1\170136412.v8

(h)      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

(i)      To hear and determine any and all motions to abandon property of the Debtor's Estate.

(j)      To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

(k)      To consider and order any modifications or amendments requested to the Plan.

(l)      To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

(m)     To make all orders necessary or appropriate to carry out the provisions of the Plan.

(n)      To enforce all orders previously entered by the Bankruptcy Court.

(o)      To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

### 11.    <u>Management of the Reorganized Debtor</u>

The Reorganized Debtor will be managed by Jubao Xie with the assistance of Jianfeng Qin. The Reorganized Debtor shall continue to utilize a third party management company to manage the Hotel. The Debtor believes that Mr. Xie's management of the Reorganized Debtor is consistent with the interests of Creditors and Equity Interest Holders and with public policy as Mr. Xie has managed the Debtor's affairs since the Debtor acquired the Hotel.

089271\1\170136412.v8

12.    **Modification of the Plan**

Prior to Confirmation and consistent with section 1127(a) of the Bankruptcy Code, the Debtor reserves the right to further modify the Plan, which modifications may include the creation of a "convenience class" of holders of Unsecured Claims (as expressly permitted by section 1122(b) of the Bankruptcy Code) that are in relatively nominal amounts to permit the Debtor to pay such Claims in full on the Effective Date of the Plan. Such convenience class, to the extent it becomes a part of any amended plan will be unimpaired and be deemed to accept the Plan.  Any party that disputes whether the modification of the Plan is consistent with  section 1127(a) will be permitted to object to any such modification at the Confirmation Hearing.

## VI
## CONFIRMATION PROCEDURES

In order for the Plan to be confirmed by the Bankruptcy Court, all of the applicable requirements of Bankruptcy Code § 1129 must be met.   These include, among others, requirements the Plan:  (i) is accepted by all impaired Classes or, if rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to each rejecting Class; (ii) is feasible; and (iii) is in the best interests of holders of Claims or Interests in each impaired Class.

A.    **Solicitation of Votes; Acceptance**

The Debtor is soliciting the acceptance of the Plan from all holders of Claims in Classes that are impaired under the Plan and receiving Distributions thereunder.

Class 2 is not impaired under the Plan.  Since that Class is unimpaired, it is deemed to have accepted the Plan and therefore is not entitled to vote thereon.

Class 1 is not impaired under the Plan if the Debtor pursues the cure and reinstatement option which requires payment of the default interest. If the Debtor is unable to obtain the funds

required to pay the default interest as a condition to reinstatement of the Loan, and the Debtor proceeds with the recasting of the Loan as set forth above, Class 1 Claim is impaired and entitled to vote for or against the Plan. Class 3 is an impaired Class and is entitled to vote for or against the Plan.  Classes 1 and 3 will be deemed to have accepted the Plan if the Plan is accepted by holders of at least two thirds in dollar amount and more than one half in number of the Claims in that Class that have cast ballots on the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured or made in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

## B.     Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing") after the period for submission of Ballots has expired.  The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement of the postponement made at the Confirmation Hearing.  Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of the Plan.  Objections must be made in writing, specifying in detail the name and address of the person or entity objecting, the grounds for the objection and the nature and amount of the Claim held by the objector, and must otherwise comply with the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules.  Objections must be filed with the Clerk of the Bankruptcy Court, with a courtesy copy delivered to the chambers of the Honorable Philip Bentley, United States Bankruptcy Judge, and served upon the parties so designated in the Order and Notice accompanying this Disclosure Statement on or before the time and date designated in such Order and Notice.  **FAILURE TO TIMELY FILE AND SERVE AN**

**OBJECTION TO CONFIRMATION MAY BE DEEMED BY THE BANKRUPTCY COURT TO BE CONSENT TO CONFIRMATION OF THE PLAN.**

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the following confirmation requirements specified in Bankruptcy Code § 1129 have been satisfied:

1.  The Plan complies with the applicable provisions of the Bankruptcy Code.

2.  The Debtor has complied with the applicable provisions of the Bankruptcy Code.

3.  The Plan has been proposed in good faith and not by any means proscribed by law.

4.  Any payment made or promised by the Debtor for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to approval of, the Bankruptcy Court as reasonable.

5.  The Debtor has disclosed the identity and affiliations of all individuals proposed to serve, after confirmation, as directors or officers of the Debtor and the appointment to or continuance in such positions by those individuals is consistent with the interests of creditors and Interest holders and with public policy; and (b) the Debtor has disclosed the identities of any insider(s) that will be employed or retained by the Reorganized Debtor and the nature of any proposed compensation for such insider(s).

6.  Each holder of a Claim in an impaired Class either has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such entity would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.  See "Best Interests Test" below.

7.      Unless the Debtor is required to seek nonconsensual confirmation of the Plan, each Class of Claims and Interests has either accepted the Plan or is not impaired under the Plan.

8.      Except to the extent that the holder of a Claim has agreed to different treatment, the Plan provides that: (a) Allowed Administrative Claims will be paid in full on the later of the Effective Date, or the date the Claim is Allowed; (b) other Priority Claims will be paid in full on the Effective Date; and (c) Priority Tax Claims will receive payment in full plus interest over five (5) years.

9.      At least one impaired Class has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class.

10.     Confirmation of the Plan is not likely to be followed by the liquidation of or the need for further financial reorganization by the Debtor or the Reorganized Debtor.

## C.     **Best Interests Test/Liquidation Analysis**

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an Allowed Claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such Claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate what holders of Claims would receive if the Debtor was hypothetically liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the dollar amount that would be realized from the liquidation (the "Chapter 7 Liquidation Fund"). The Chapter 7 Liquidation Fund would consist of the net proceeds from the disposition of the Debtor's assets (after satisfaction of all valid liens) augmented by the Cash held by the Debtor and recoveries on actions against third parties, if any. The Chapter 7 Liquidation Fund

would then be reduced by the costs of the liquidation.  The costs of liquidation under chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, any unpaid expenses incurred by the Debtor during its Chapter 11 case (such as fees for attorneys, financial advisors and accountants) which would be allowed in the Chapter 7 proceedings, interest expense on secured debt and claims incurred by the Debtor during the pendency of the case.  In addition, in a Chapter 7 case, it is possible the NYCHH contract which was entered into post-petition may be rejected and NYCHH may assert a Chapter 11 administrative claim that will further reduce recoveries to holders of Allowed Unsecured Claims. These claims would be paid in full out of the Chapter 7 Liquidation Fund before the balance of the Chapter 7 Liquidation Fund, if any, would be made available to holders of Unsecured Claims.  In addition, other claims which would arise upon conversion to a Chapter 7 case would dilute the balance of the Chapter 7 Liquidation Fund available to holders of Claims.  Moreover, additional claims against the Debtor's estate might arise as the result of the establishment of a new bar date for the filing of claims in a Chapter 7 case for the Debtor.  The present value of the distributions out of the Chapter 7 Liquidation Fund (after deducting the amounts described above) are then compared with the present value of the property offered to each of the Classes of Claims and holders of Interests under the Plan to determine if the Plan is in the best interests of each holder of a Claim.

The Debtor believes that a Chapter 7 liquidation (*i.e.*, foreclosure sale or sale by trustee) of its assets would result in diminution in the value to be realized under the Plan by holders of Claims.  That belief is based upon, among other factors: (a) the additional administrative expenses involved in the appointment of a trustee, attorneys, accountants, and other Chapter 7 professionals; and (b) the substantial time which would elapse before creditors would receive any distribution in respect of their Claims due to a trustee's need to become familiar with the

089271\1\170136412.v8

Chapter 11 case and the Debtor's books and records, and the trustee's duty to conduct independent investigations, and (c) and increase in Unsecured Claims, including but not limited to possible rejection damage claims filed by the Debtor's contract counterparties, including HHF. The Debtor's estimated liquidation analysis and the assumptions upon which it is based are annexed hereto as **Exhibit "C"**  As indicated in the Debtor's liquidation analysis, the Debtor believes that a liquidation of the Debtor's assets would result in a lesser recovery to Creditors than the Plan provides for.

D.    **Risk Factors**

The Debtor has no way of being certain the Hotel will continue to generate sufficient revenues to meet the Plan payments.  If, for example, another unforeseen disaster such as the Covid-19 pandemic were to occur causing the closure of the Hotel, there is a risk the Reorganized Debtor will not generate sufficient revenues to make the Plan payments.  In addition, if the current contract with NYCHH is not renewed and the Debtor is required to transition the Hotel back to use as a transient hotel in 2024, the Debtor may not generate enough operating profits to pay the recasted Loan in the event the Debtor is unable to reinstate the Loan.

Certain substantial risk factors are inherent in most Chapter 11 plans which provide for installment payments.  If such plans are accepted, it is usually because it represents a greater hope for return than a dividend in a liquidating Chapter 7 case.

## VII
## "CRAM DOWN"

The Bankruptcy Code provides a mechanism by which a plan may be confirmed even if it has been rejected by an impaired class of claims.  Under the "cram down" provisions of the Bankruptcy Code (§1129(b)), the proponent of the Plan (in this case the Debtor) may request that it be confirmed despite its rejection by an impaired class, and the Bankruptcy Court will confirm

the Plan if it (i) does not discriminate unfairly against a dissenting impaired class, and (ii) is fair and equitable with respect to such class.

The Bankruptcy Code sets forth specific guidelines for determining whether a plan is fair and equitable with respect to a particular class of claims. For Unsecured Claims, as are those in Class 3, a plan must provide that Equity Interest Holders do not receive or retain any property on account of their interest. Therefore, if Class 3 votes to reject the Plan, the Class 4 Equity Interest holders would not be able to retain their interest in the Reorganized Debtor absent a finding by the Bankruptcy Court the Plan Contribution satisfies the new value exception to the absolute priority rule. The new value exception to the absolute priority rule is a controversial judicially created exception to the general rule that unsecured creditors must be paid in full on account of their Claims before equity can retain their interests in a reorganized debtor, unless unsecured creditors vote in favor of the plan. Here, if it is determined Wilmington Trust holds a Deficiency Claim and such Claim is greater than one-third (1/3) of the other classified Claimholders, it is likely Class 3 will reject the Plan. In this scenario, the Plan may not be confirmable and the Debtor would either need to reach an agreement with Wilmington Trust or Wilmington Trust will likely have the ability to propose an alternative plan. For Secured Claims, as is in Class 1, a plan must provide, *inter alia*, the holders of such Secured Claim retain the Lien securing such Claim to the extent of the Allowed Amount of such Claim and the holder of such Claim receive on account of such Claim of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest in the property securing the Lien. In other words, the secured creditor must receive the present value of the Allowed Amount of its Secured Claim which Allowed Amount is dependent upon the value of the property securing the Claim.

Under the Plan, Wilmington Trust (if the Debtor does not reinstate the Loan) will retain its Lien to secure the full amount of its Allowed Secured Claim and receive payments over time

44

equal to the present value of the Allowed Amount of its Secured Claim as of the Effective Date of the Plan.  In the event the Bankruptcy Court declines to impose a "cram-down" on the rights of a non-consenting class unless certain modifications are made to the terms and conditions of such non-consenting class treatment under the Plan, the Debtor reserves the right, without re-solicitation and to the extent consistent with Section 1127 of the Bankruptcy Code, to propose such modification to such non-consenting class treatment and to confirm the Plan.

## VIII

## VOTING INSTRUCTIONS

Creditors should complete and sign the enclosed Ballot and return it to Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., attorneys for Debtor.  A ballot is enclosed with each copy of this Disclosure Statement being sent to all holders of Impaired Claims that filed proof of Claims or were scheduled by the Debtor. Ballots must be received on or before 5:00 p.m. Eastern Daylight Time on January 5, 2024.

If a ballot is damaged or lost, or if you have any questions concerning any voting procedures, you may contact Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., (212) 216-8005.

## IX

## CERTAIN FEDERAL INCOME TAX CONSIDERATIONS

In view of the fact that Debtor will retain ownership of the Hotel, the transactions contemplated by the Plan should have no federal tax consequences to the Debtor.

**CREDITORS AND EQUITY INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTOR OF THE TRANSACTIONS**

**CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.**

Since the tax consequences for each creditor will depend to a considerable extent upon its particular situation, the Debtor recommends that each creditor review the entire Plan and this Disclosure Statement to best determine the effect of the Plan on it.

## X

## CONCLUSION

The Debtor believes that confirmation and implementation of the Plan is preferable to any other alternative. Accordingly, the Debtor urges holders of Claims to vote to accept the Plan by so indicating on their Ballots and returning them as specified in the Order and Notice accompanying this Disclosure Statement.

Dated: New York, New York
      November 21, 2023

**GOLDEN SEAHORSE LLC**                    **TARTER KRINSKY & DROGIN LLP**
*Debtor and Debtor-in-Possession*          *Attorneys for Golden Seahorse LLC*
                                           *Debtor and Debtor-in-Possession*


By:  /s/ Juabo Xie                         By:   /s/ Scott S. Markowitz
      Juabo Xie                              Scott S. Markowitz, Esq.
      Managing Member                        1350 Broadway, 11th Floor
                                           New York, New York 10022
                                           (212) 216-8000
                                           smarkowitz@tarterkrinsky.com

089271\1\170136412.v8