# EXHIBIT A

This Hotel Use Agreement is made as of _____ __, 2024 for a license agreement ("**License Agreement**") between THE CITY OF NEW YORK, a municipal corporation, acting through the Department of Citywide Administrative Services, with offices at 1 Centre Street, 20th Floor North, New York, New York 10007 ("**Licensee**") and Golden Seahorse LLC, Debtor in Possession, a New York limited liability company, with offices at 99 Washington Street, New York, NY 10006 ("**Licensor**").  Each of Licensee and Licensor may be referred to as a "**Party**" and collectively as the "**Parties.**"

| Licensee: | Licensor: |
|---|---|
| **Licensee Contact: Chris Keeley** | **"Licensed Area": the entire building known as the Holiday Inn Financial District (99-103 Washington Street)** |
| **Title:** | **Address: 99 Washington Street, New York, NY 10006** |
| | **Commencement Date: May 1, 2024 (Subject to Bankruptcy Court Approval)** |
| | **Expiration Date April 30, 2025** |
| **Address: 50 Water Street** | **Hotel Contact: Greg Riley** |
| **City, State, Zip: New York, NY 10004** | **Title: General Manager** |
| **Phone: 646.695.6565** | **Phone: 484-894-0823** |
| **Email: chris.keeley@nychhc.org** | **Email: greg.riley@crescenthotels.com** |

I.    **License Agreement**

    a.    Licensor is a debtor and debtor in possession in a Chapter 11 bankruptcy case pending in the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Bankr. Case. No. 22-11582.

    b.    Licensor hereby licenses to Licensee and Licensee hereby licenses from Licensor, consistent with the following terms and conditions, the Licensed Area, inclusive of all of the 492 rooms in the Licensed Area (the "**Rooms**") at a rate of $175.00 per room per day (the "**Room Rate**") for the term of this License Agreement and Licensee shall pay for all such available rooms regardless of whether they are occupied by Licensee or its guests.

| REVIEWED BY | |
|---|---|
| **Attorney: _____** | **Date: _____** |
| **Negotiator: _____** | **Date: _____** |
| **Exec. Dir., Leasing & Acquisitions: _____** | **Date: _____** |

c.   The Rooms will be used as temporary housing for Licensee's clients referred and overseen by Licensee or its contractors ("**Guests**").  Licensor acknowledges that, as of the Commencement Date, the New York City Health and Hospitals Corporation ("**H+H**") will operate the Licensed Area on behalf of Licensee.

d.   This License Agreement includes the use and occupancy of, and access to the entire Hotel building, including but not limited to all Rooms, meeting spaces, Guest storage spaces, appurtenant outdoor spaces such as atria, Guest areas/spaces, and the restaurant on the first and second floor at 103 Washington Street, etc.  The only portions of the Hotel that shall not be available to Licensee are the mechanical rooms.

e.   This License Agreement shall be effective only after Licensor obtains authority to enter into this License Agreement from the Bankruptcy Court (the date Licensor obtains such authority being the "**Effective Date**"), and Licensor will utilize best efforts to obtain such authority within ten (10) days of the full execution and delivery of this License Agreement.  The term of this License Agreement shall commence on May 1, 2024 so long as the Bankruptcy Court has authorized Licensor to enter into this License Agreement (the "**Commencement Date**") and shall expire on April 30, 2025 (the "**Initial Term Expiration Date**"; the period commencing on the Commencement Date and ending on the Initial Term Expiration Date being the "**Initial Term**"), unless earlier terminated pursuant to the terms hereof.  No later than thirty (30) days before the expiration of the Initial Term, the Licensor and Licensee shall utilize their best efforts to negotiate an extension of the Initial Term including the Room Rate.

f.   Termination:

1.   Either Party shall have the right to terminate this License Agreement in the event of a material breach by the other Party; provided that the non-breaching Party gives the allegedly breaching Party a notice describing in detail the nature of such material breach and the allegedly breaching Party fails to cure such material breach within 30 days of the giving of such notice.  To the extent the allegedly breaching Party disagrees with the notice of termination and cure, such Party shall be permitted, on no less than 7 business days' notice to seek relief from the Bankruptcy Court in order to prevent the termination of the License Agreement. Notwithstanding the foregoing, in the event of a breach by either of the Parties that creates a danger to the health or safety of the Guests, then, notwithstanding the 30-day period to cure such breach, the non-breaching party may immediately upon notice to the other Party, remove the Guests from the Hotel and the Room Rate shall be suspended until the hazardous condition has been remedied.  Licensor's exercise of the termination right in this paragraph being a "**Licensee's Cause**" termination.

2.   Licensee may terminate this License Agreement without cause at any time 60 days after giving notice of termination to Licensor, provided however in no event shall Licensee be permitted to terminate this License Agreement without

2

cause until after one hundred eighty (180) days after the Commencement Date (the "**Early Termination Period**").

3.          Notwithstanding any other provision of this License Agreement, to the contrary, Licensor may terminate this License Agreement at any time on not less than 25 days' notice to Licensee.  If Licensor terminates this License Agreement other than for Licensee's Cause (as defined in <u>Section I(f)(1)</u>), then Licensor shall pay Licensee a fee in an amount of $1,600,000.00.   The payment required under this <u>Section I(f)(3)</u> shall be made by Licensor to Licensee within thirty (30) days after the effective date of termination.   Licensor's obligation to pay the $1,600,000.00 fee shall survive the expiration or sooner termination of this License Agreement.

g.      In addition to the Room Rate, Licensee shall pay any and all applicable federal, state, municipal or other taxes, including New York City Hotel occupancy taxes (unless exempted), fees, or assessments imposed on or applicable to Licensee's use of the Hotel.  Licensee shall provide Licensor with a letter from the NYS Department of Taxation and Finance confirming Licensee's tax exemption which Licensor will rely on and present to excuse the payment of applicable taxes.

h.      Licensor shall allow Licensee's contractors (including but not limited to H+H and security, food service vendors and medical personnel) to enter the Licensed Area to provide services to the Guests or for other purposes, as it deems necessary.  All such third-party contractors shall be chosen in Licensee's sole discretion.  Licensor shall reasonably cooperate with all such third-party contractors, including allowing such contractors access into and throughout the Hotel as reasonably necessary to carry out their duties and allowing them to store materials pertaining to their work in the Licensed Area.  For the avoidance of all doubt, the Licensor shall continue to employ and/or utilize, at its own expense, its own employees and other independent contractors, including but not limited to its front desk personnel and office employees contracted to Licensor by Crescent Hotels and Resorts and housekeeping personnel contracted to the Licensor by General Personnel Services Inc.  Licensor acknowledges that Licensee may enter into contracts with service providers and/or a memorandum of understanding with the New York City Health and Hospitals Corporation to operate the Licensed Area on behalf of Licensee, as the Licensee's invitees in the Licensed Area

i.      The Room Rate is fixed.  No amenity (other than as provided in this License Agreement) or similar charges other than the fixed Room Rate are allowed when billing for Rooms.  No other charges, such as amenities, pay-per view, non-domestic telephone calls, or room service are allowed and none of the foregoing are required to be provided by Licensor other than Wi Fi and domestic telephone service.

j.      Licensor will provide for the laundering of Guests' personal laundry at the same rate charged Licensor by its outside vendor.  The Parties represent to each other that no broker's fees or commissions shall be due to any party in connection with this License Agreement.

089271\1\170638452.v4

k.      Each Party represents and warrants it has dealt with no broker in connection with this License Agreement and each will indemnify the others for all costs, liabilities and expenses (including reasonable attorneys' fees) if such representation and warranty is inaccurate or alleged to be inaccurate.

l.      Nothing in this License Agreement shall prevent the Licensor from (i) marketing and selling the Hotel to another third party, or (ii) pursuing the confirmation of a Chapter 11 plan of reorganization in Licensor's bankruptcy case, in each instance it being contemplated that this License Agreement would be assumed by Licensor and/or assigned to a third party, as the case may be.

m.      **Payment Arrangements**:

Commencing on the Effective Date, Licensee shall pay Licensor monthly and on the last day of each calendar month the Room Rate for the full Hotel in the amount of $86,100.00 (the "**Total Daily Rate**"). The payment due for each full month during the Initial Term shall be $2,669,100.00 (based on a 31-day month) provided that periodically, Licensor shall adjust with Licensee to account for overpayments or underpayments made during the prior months based upon the actual length of the months, and for any other adjustments or additional charges or credits as may be due. Licensor may invoice Licensee for any underpayment which Licensee shall pay within 30 days. If Licensee is due a credit for any overpayment, it shall be applied to the amount next due from Licensee or, if at the end of the term, promptly remitted to Licensee by check, which obligation shall survive the expiration or termination of this License Agreement.

The parties acknowledge that this License is a successor agreement to the Hotel Use Agreement entered into between Licensor and H+H dated January 17, 2023. In the event H+H makes any payments to Licensor that cover any portion of the Initial Term of this License Agreement, such payments shall be credited against any amounts owed pursuant to this License Agreement. In the event the Effective Date of this License Agreement occurs after the Commencement Date of this License Agreement, Licensee shall pay all amounts owed pursuant to this License Agreement for the period commencing on Commencement Date and ending on the date immediately preceding the Effective Date within 45 days of the Effective Date, less any amounts that may be credited pursuant to the immediately preceding sentence.

Licensor may invoice Licensee monthly at the end of each calendar month for any charges other than the Room Rate incurred during the preceding month, including any charges associated with damages to the rooms in excess of reasonable wear and tear. Licensee shall pay all undisputed invoices (for all vendors and scope of services that Licensee has preapproved in writing whether detailed herein or contracted after the signing of this document) within 30 days after receipt of such invoice. At present, there are no preapproved vendors.

Payment shall be made only for rooms that are made available and delivered in clean and usable condition.  The pro-rata, per room rate of any rooms (i) not made available (ii) not delivered in clean and habitable condition and/or (iii) not delivered with working furniture will be deducted from the Total Daily Rate.  Licensee shall have the option to add, at its cost, any additional refrigerators and microwaves to Rooms, provided however that any additional utility costs borne by Licensor as a result of the use of additional refrigerators and microwaves shall be borne by Licensee, with the parties to agree to work in good faith after the Commencement Date to reconcile what portion of any utility charges relate to additional refrigerators and microwaves required by Licensee.  Any such additional refrigerators and microwaves shall be the property of Licensee which Licensee may remove from the Hotel upon the expiration or earlier termination of this License Agreement.  Licensor represents that each Room has the electrical power capacity for the operation of such appliances.

To the extent any Guests remain after the term of this License Agreement (including, for the avoidance of doubt, after the term has ended because Licensee has exercised its termination option pursuant to Section I(f)(2)), without the consent of Licensor, Licensor shall be entitled to liquidated damages equal to $175.00 per Room per day, representing the fair value of Licensor's loss of the opportunity to rent such Room(s) in the normal course. In the event Licensee is unable or unwilling to remove any Guests after the expiration or earlier termination of this License Agreement, Licensor shall have the right to seek relief from the Bankruptcy Court to forcefully remove any Guests through, among other things, contempt orders or through the use of the United States Marshal's Office or similar governmental agency or unit.

## II.    Licensee Services

1)    Security:  Licensee shall provide 24-hour security and/or Guest access control through Licensee or its contractors.  Licensee shall use reasonable efforts to ensure that Guests comply with typical hotel rules and applicable laws while staying at the Licensed Area. Notwithstanding the foregoing, Licensor shall be permitted to employ its own security at the Licensed Area.  To the extent that any Guests are unruly, engage in any illegal activities, vandalize the Licensed Area, or otherwise pose a danger to any other Guest, employee or independent contractor, or to the proper functioning and structure of the Hotel, Licensee is obligated to immediately remove such Guests from the Hotel, provided that in the event that Licensee fails to immediately remove such Guests from the Hotel, Licensor reserves the right to use its own security or contact the police as it deems appropriate.

2)    Food: Licensee may provide food services to all or a portion of the Rooms. Licensor shall also make available for Licensee's use the first and second floor of the restaurant located at 103 Washington Street.  As noted in the License Agreement, Licensee may provide for refrigerators and microwaves in certain Rooms but in no event shall any Guests be permitted to use hot plates or toaster ovens or any other appliance which may increase the risks for fire and other safety hazards.

089271\1\170638452.v4

### III.    Licensor's Responsibilities

1)    Uses/Rooms:

    a.    Licensor shall provide the Rooms to Licensee as provided herein unless prevented due to conditions beyond Licensor's control.

    b.    Each Room shall contain standard room furniture. If Licensee requires that certain standard room furniture be removed, Licensor shall use commercially reasonable efforts to remove the same prior to 14 days following the Commencement Date. If any room is described as being ADA accessible on the Checklist, Licensor shall keep all features, furniture, and attachments which make the room ADA accessible in good working order such that the room remains ADA accessible through the Expiration Date.

    c.    Immediately upon request, Licensor shall also provide Licensee with key cards for all Rooms with electronic locks for emergency access to all Rooms. To the extent that Licensee shall need emergency access to Rooms, Licensor shall provide Licensee with the anti-lockout emergency access tool to open any latch chains or similar interior door locking devices.

    d.    Licensor shall provide no parking.

2)    Services:

    a.    [intentionally omitted.]

    b.    Licensor will identify on-site staff to serve as emergency contacts in the event that Licensor or Licensee require an immediate response to any inquiry, and will submit the name, cell phone number, email and other contact information for this purpose. Licensee reserves the right to require Licensor to replace any emergency contacts that fail to appropriately respond to emergencies. Licensor's POC shall each be available on a 24 hour/ 7 days per week basis. Licensor's POC is Greg Riley, General Manager, tel: 484-894-0823, email: greg.riley@crescenthotels.com.

    c.    Licensor shall assign on-site management to the Hotel as it would during normal hotel operations responsible for general hotel operations and management of the Hotel's staff. Such staff shall be available on a 24 hour, 7 days per week basis.

    d.    Licensor shall assign a reception/lobby attendant (which may be the same personnel as described in 2(c) above) to provide front of house operations including coordinating with Licensee and, if applicable, 3rd party contractors retained by Licensee for services such as food service. The lobby staff shall be available on a 24 hour, 7 days per week basis. Lobby staff shall be responsible for contacting rooms with notifications as required by Licensee.

089271\1\170638452.v4

e.   Licensor shall maintain all hotel corridors, stairwells, elevators, and other common areas in a clean and sanitary condition.

f.   Licensor shall clean each Room three times each week or upon Guest check out. To the extent any Guest does not voluntary provide access to its Room for housekeeping at least once every week, Licensee shall be responsible for ensuring that such Guest cooperates in allowing housekeeping to enter the Room at least once every week.

g.   Fresh linens, sheets, blankets, pillows and pillowcases, towels, soap, shampoo, conditioner and toilet paper shall be delivered upon check-in and refreshed, as necessary but not less often than three times per week.

h.   Licensor shall replace linens and towels on a one-for one exchange 3 times per week or as needed if they become soiled.

i.   If a Guest checks out between 10AM and 3PM, Licensor shall make the room available for a subsequent Guest within four hours of such check out. If a Guest checks out between 3PM and 10AM, Licensor shall make the room available for a subsequent Guest by 10AM the following calendar day, or 3 hours after such check out, whichever is later.

j.   Licensor shall pick up trash from the Rooms daily.

k.   Licensor shall provide extermination and pest control services daily. Extermination must be performed by a certified pesticide applicator. In addition, extermination must be performed monthly at the Hotel and more often in Rooms as conditions require, and where vermin is identified. Extermination activities cannot be performed while Guests are in the room. If any Guest does not cooperate with Licensor in connection with extermination, Licensor shall not be obligated to exterminate in such Guest's room.

l.   All Rooms shall be equipped with a telephone which can make and receive an unlimited number of domestic calls.

m.   If Hotel is equipped with Wi-Fi, Guests and any Licensee staff or contractors shall have free access to Wi-Fi service at all times.

n.   Licensor shall provide one security guard at the Hotel lobby/entrance 24 hours per day.

3)   <u>Repairs and Maintenance.</u>

a.   Licensor shall provide maintenance staff to support service calls (i.e. clogged toilet etc.) for Rooms.  Maintenance staff shall also be at the Hotel to ensure that all building systems, structural elements, safety equipment, furniture and fixtures are fully functional at all times. Such staff shall

promptly respond to complaints from Licensee. Further, the POC will provide a phone number for non-business hours so that he/she is responsive to any issue with the Hotel systems.

b.    Licensor shall maintain a valid Certificate of Occupancy, or an unexpired Temporary Certificate of Occupancy.  If Temporary Certificate of Occupancy expires, then Licensor shall immediately provide Licensee with a detailed plan for renewing the expired Temporary Certificate of Occupancy.  Except as otherwise agreed to by the Parties, Licensor shall be responsible for all maintenance and repairs of the hotel building and Rooms.

c.    Licensor will keep the Hotel premises free of New York City Department of Building, Fire Department of New York, and Environmental Control Board life safety violations to the best of its abilities. If any life safety violations exist either prior to use by Licensee, or at the time of execution of this License Agreement, then Licensor shall prioritize their resolution at no cost to Licensee.  Licensor shall provide a list of such life safety violations to Licensee prior to execution of this License Agreement, and such life safety violations may also be documented in a corrective action plan issued by Licensee to the Hotel.  Any notice by a City agency of a life safety violation of code, rules or regulations issued prior to the Expiration Date must be addressed promptly and may result in a reduction or potential exit of Licensee from the Hotel. Notwithstanding anything contained herein to the contrary, the Hotel shall be permitted to perform life safety repairs or perform work to the Hotel and Rooms as required under applicable law (e.g., Local Law 11). The above notwithstanding, to the extent that any safety violations are caused by the Guests, Licensee must address such violations promptly, absent which Licensor may terminate this License Agreement or otherwise seek relief from the Bankruptcy Court.

d.    Licensor may enter the Rooms at any and all times for inspection, repairs, and maintenance, but shall use reasonable care not to disturb any occupant of any such room or its possessions in so doing except in cases of emergency or if dangerous, unsanitary or hazardous conditions exist, or illegal activities are being conducted, in or about such room.

4)    Alterations/Damage to Rooms

a.    No additions, alterations or improvements to the Rooms may be made.

b.    If the Hotel or any part is damaged by fire or other cause the Room Rate shall be appropriately abated until such damage is restored.  If a substantial part of the Hotel should be so damaged, Licensee may elect to terminate this License Agreement entirely on 10 days' notice as to such Room. Neither the right of termination or rent abatement shall apply if Licensee, its contractors or Guests were the cause of the fire or other cause.

c.  Guests are not permitted to smoke or use illegal drugs in the Rooms, nor are Guests permitted to write on walls or otherwise vandalize the Rooms in any way.

d.  Licensor shall not make any claim against Licensee for normal wear and tear to the Hotel or Rooms.  In the event of any dispute between Licensor and Licensee concerning whether damage is "normal wear and tear", such dispute will be decided by the Bankruptcy Court.

e.  Licensee will reimburse Licensor for the reasonable cost of repairing any damages caused by misconduct or negligence of Licensee, its employees, contractors or the Guests promptly following submission of an appropriately documented report of a joint walkthrough itemizing and photographing said damages; provided that reasonable wear and tear shall be excepted.  Licensee reserves the right to be present during any such walk-through. Invoices for damages must contain this documentation, including all itemized associated costs.

f.  For damages to be considered, Licensor must create an incident report that includes the following with respect to the alleged damage:

1.  Date damage was discovered.

2.  Number of Rooms or other portions of the Hotel damaged.

3.  Description of damages including photographic evidence.

4.  Licensor's affirmation that it affirms that the damage occurred on or about that date of its discovery and that it was, to the best of Licensor's knowledge, caused by the Guest.

5.  Itemized estimate of repairs.

6.  Any additional information that supports the claim.

g.  Reimbursement for damages will be considered on a monthly basis by Licensee provided that in the event Licensee rejects Licensor's requests for reimbursement, Licensor shall be permitted to apply to the Bankruptcy Court for appropriate relief.

5)  <u>Communication</u>

a.  Inquiries regarding any Guest must be referred to Licensee.  Licensor shall give immediate notice to Licensee of any emergency response situation occurring at the Hotel.

b.  As of the Effective Date, the Licensee POC shall be Chris Keeley (chris.keeley@nychhc.org).  Licensee may change its POC and/or provide an additional POC based prior written notice to Licensor.

6)  <u>Confidentiality</u>

All individual identifying information, including Guest names, received by or in the possession of any Party in the course of this License Agreement shall be kept confidential and shall not be disclosed except as herein provided or as required by law.

## IV.  **The Parties' Joint Responsibilities**

1)  **Insurance**

A.  Hotel shall maintain workers' compensation insurance, employers' liability insurance, and disability benefits insurance, in accordance with Law on behalf of, or in regard to, all employees of the Hotel providing services under this License Agreement.

B.  Within 10 Days of award of this License Agreement, Licensor shall submit proof of workers' compensation insurance and disability benefits insurance (or proof of a legal exemption) to Licensee in a form reasonably acceptable to Licensee.

C.  Licensor shall maintain Commercial General Liability insurance in the amount of at least Two Million Dollars ($2,000,000) per occurrence for bodily injury (including death) and at least Four Million Dollars ($4,000,000) in the aggregate. Coverage must be at least as broad as the coverage provided by the most recently issued ISO Form CG 00 01, primary and non-contributory, and "occurrence" based rather than "claims-made." Such coverage shall list Licensee and the City of New York together with their respective officials and employees, as additional insureds with coverage at least as broad as the most recently issued ISO Form CG 20 10 or CG 20 26.

D.  Nothing set forth in this License Agreement shall change the Licensor's obligation to comply with its insurance commitments under its loan agreement and mortgage, including with respect to mortgagee insured, additional insured or loss payee provisions nor shall it modify the Licensor's obligation to maintain the insurance required by the license agreement with IHG.

2)  **Indemnification**

a.  To the fullest extent permitted by Law, Licensor shall defend, indemnify, and hold harmless Licensee, including its officials, contractors, service providers, and employees, against any and all claims (even if the allegations of the claim are without merit), judgments for damages on account of any injuries or death to any person or damage to any property, and costs and expenses to which Licensee, or its contractors, service providers, officials or employees, may be subject to or which they may suffer or incur arising out of the operations of Licensor and/or its subcontractors under this License Agreement; provided, however, such indemnity shall not apply to

the extent that such damages, etc. arose due to the negligence or wrongful acts of Licensee, its employees, contractors or the Guests.  Insofar as the facts or law relating to any of the foregoing would preclude such indemnitees from being completely indemnified by Licensor, such indemnitees shall be entitled to be partially indemnified by Licensor to the fullest extent permitted by law.  To the extent that Licensee asserts indemnity claims against Licensor, such claims shall be determined by the Bankruptcy Court and to the extent allowed, paid in the order of priority under the provisions of the Bankruptcy Code, and under no circumstances shall such indemnity claims have priority over the secured liens and claims of the Licensor's prepetition lenders.

b.    To the fullest extent permitted by Law, Licensee shall indemnify, defend, and hold harmless Licensor, its manager(s), their respective owners, affiliates and subsidiaries, the successors and assigns of the foregoing, and each of their respective officers, managers, members, partners, directors, employees, (collectively, the "**Licensor Parties**") from and against any and all losses, damages, causes of action, suits, claims, judgments or expenses, including but not limited to fees and court costs (collectively, "**Claims**"), made or asserted by any third parties (including any third party actions of Licensor's employees or Guests), which Claims arise out of any alleged injuries or death to any person or alleged damage to any property, in any case, caused by Licensee's use or occupancy of the Licensed Area as provided herein, including any such claims arising from the actions or failures to act of Licensee's contractors,  but excluding Claims arising from the negligence or intentional tortious acts of any Licensor Party. Insofar as the facts or law relating to any of the foregoing would preclude such indemnitees from being completely indemnified by Licensee, such indemnitees shall be partially indemnified by Licensee to the fullest extent permitted by law.

### 3)    Governing Law:

This License Agreement will be governed by and interpreted pursuant to the laws of the State of New York, excluding any laws regarding the choice or conflict of laws.

### 4)    Jurisdiction:

Should any disagreement arise out of the interpretation and enforcement of this License Agreement, the Bankruptcy Court shall maintain exclusive jurisdiction over any disputes which arise between the Parties as long as Licensor's Chapter 11 case remains pending and after plan confirmation if the plan so provides.

## V.    Additional Applicable Terms

### 1)    Incorporation of Exhibits & Order of Priority

11

The Parties agree to incorporate as though set forth fully herein the terms and conditions set forth in the following attached Exhibits and Appendices: Exhibit A: Licensee's Standard Terms and Conditions with a FEMA Rider (Licensee may provide an updated FEMA Rider).  In the event of a conflict between this License Agreement and any of the Exhibits incorporated herein, the following order of governance will apply: (1) this License Agreement, including Attachment 1 (2) Exhibit A.

### 2)    Entire Agreement

This License Agreement, including the exhibits and appendices attached hereto, constitutes the entire agreement of the Parties with respect to the subject matter of this License Agreement and all prior or contemporaneous agreements or understandings are merged into this License Agreement.  If any provision of this License Agreement is found invalid or unenforceable, the remainder of this License Agreement will still be valid and enforceable to the fullest extent permitted by law.

This License Agreement may not be modified or amended except in writing and signed by all Parties.

### 3)    Counterparts and Electronic Signatures

This License Agreement may be signed in multiple counterparts with the same effect as if the Parties had signed the same document. The counterparts of this License Agreement may be signed and delivered electronically (including by email or PDF). All signatures so obtained and transmitted shall be deemed to be original signatures for all purposes under this License Agreement.

**IN WITNESS WHEREOF,** the parties have signed below as of the date first above written.


LICENSEE:                                         LICENSOR:
THE CITY OF NEW YORK                   GOLDEN SEAHORSE LLC


By: _____        By: _____
    Sheena Wright
    First Deputy Mayor                            Name: Jubao Xie
                                                       Title: Managing Member


Approved as to Form:



_____
Acting Corporation Counsel

089271\1\170638452.v4

## Exhibit A

### Standard Terms and Conditions

These terms and conditions ("**Terms and Conditions**") are entered into by and between The City of New York, a municipal corporation, acting through the Department of Citywide Administrative Services, with offices at 1 Centre Street, 20th Floor North, New York, New York 10007, ("Licensee") and Golden Seahorse LLC, a New York limited liability company with offices at 99 Washington Street, New York, NY 10006 ("Licensor"), each individually referred to as a "Party" and together as the "Parties."

### Definitions

**Agreement:** As used in these Terms and Conditions, the term the "Agreement" refers to the agreement between the Parties that consists of the Space License Agreement between the Parties made this date ("License Agreement"), these Terms and Conditions and all other documents incorporated into the License Agreement as set forth therein relating to the subject matter hereof (collectively, the "Incorporated Documents"). The Incorporated Documents shall be made part of the License Agreement unless specifically stated otherwise in writing signed by both Parties. To the extent of any inconsistencies between the License Agreement and the Incorporated Documents, the License Agreement shall control. Further, to the extent of any inconsistencies between the License Agreement and any order approving the Agreement, the Bankruptcy Court's order shall control.

**The City:**  The City of New York.

**Services:** actions provided by a Licensor under this License Agreement for the benefit of Licensee, such as software support, equipment maintenance, professional services (e.g., legal), non-professional services (e.g., cleaning), consultations, and the like.

**Licensor Employee(s):** owners, partners, members, officers, directors, employees, agents, or any other person under the reasonable control of Licensor.

### Article I. General Business Terms

<u>1. Term and Extension of Term</u>
The term of this Agreement shall be as provided in the License Agreement.

<u>2. Termination</u>
The termination provisions of this Agreement shall be as provided in the License Agreement.

<u>3. Payment</u>
The payment provisions of this Agreement shall be as provided in the License Agreement.

### Article II. Mandatory Terms and Conditions

<u>1. Order of Precedence</u>
The License Agreement shall prevail in the event of a conflict with these Terms and Conditions.

13

## 2. Governing Law

This Agreement shall be governed, construed and enforced in accordance with the laws of the State of New York without giving effect to its principles of conflicts of laws.

## 3. Legal Disputes

3.1 [intentionally omitted.]

3.2 Actions against Licensee by Licensor arising out of this Agreement must be commenced within six months of the expiration or termination of this Agreement.

3.3 Neither Party shall make a claim for personal liability against any individual, officer, agent or employee of the other, nor of the City, pertaining to anything done or omitted in connection with this Agreement.

3.4 This section shall survive expiration or termination of this Agreement.

## 4. [Intentionally omitted.]

## 5. Investigations

5.1     The parties to this Agreement agree to cooperate fully and faithfully with any investigation, audit or inquiry conducted by a State of New York (State) or City of New York (City) governmental agency or authority that is empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath, or conducted by the Inspector General of a governmental agency that is a party in interest to the transaction, submitted bid, submitted proposal, contract, permit, or license that is the subject of the investigation, audit or inquiry.

5.2(a)   If any person who has been advised that his or her statement, and any information from such statement, will not be used against him or her in any subsequent criminal proceeding refuses to testify before a grand jury or other governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to examine witnesses under oath concerning the award of or performance under any transaction, agreement,  permit, contract, or license entered into with the City, the State, or any political subdivision or public authority thereof, or the Port Authority of New York and New Jersey, or any local development corporation within the City, or any public benefit corporation organized under the laws of the State of New York, or;

5.2(b)   If any person refuses to testify for a reason other than the assertion of his or her privilege against self-incrimination in an investigation, audit or inquiry conducted by a City or State governmental agency or authority empowered directly or by designation to compel the attendance of witnesses and to take testimony under oath, or by the Inspector General of the governmental agency that is a party in interest in, and is seeking testimony concerning the award of, or performance under, any transaction, agreement, permit, contract, or license entered into with the City, the State, or any political subdivision thereof or any local development corporation within the City, then;

5.3(a)   The commissioner or agency head whose agency is a party in interest to the transaction, submitted bid, submitted proposal, contract, permit, or license shall convene a hearing, upon not less than five (5) days' written notice to the parties involved to determine if any penalties should attach for the failure of a person to testify.

5.3(b)   If any nongovernmental party to the hearing requests an adjournment, the commissioner or agency head who convened the hearing may, upon granting the adjournment, suspend any contract, permit, or

license pending the final determination pursuant to paragraph 5.5 below without the City incurring any penalty or damages for delay or otherwise.

5.4      The penalties which may attach after a final determination by the commissioner or agency head may include but shall not exceed:

(a)      The disqualification for a period not to exceed five (5) years from the date of an adverse determination for any person, or any entity of which such person was a member at the time the testimony was sought, from submitting bids for, or transacting business with, or entering into or obtaining any contract, permit or license with or from the City; and/or

(b)      The cancellation or termination of any and all such existing City contracts, permits or licenses that the refusal to testify concerns and that have not been assigned as permitted under this agreement, nor the proceeds of which pledged, to an unaffiliated and unrelated institutional lender for fair value prior to the issuance of the notice scheduling the hearing, without the City incurring any penalty or damages on account of such cancellation or termination; monies lawfully due for goods delivered, work done, rentals, or fees accrued prior to the cancellation or termination shall be paid by the City.

5.5      The commissioner or agency head shall consider and address in reaching his or her determination and in assessing an appropriate penalty the factors in paragraphs (a) and (b) below.  He or she may also consider, if relevant and appropriate, the criteria established in paragraphs (c) and (d) below in addition to any other information which may be relevant and appropriate:

(a)      The party's good faith endeavors or lack thereof to cooperate fully and faithfully with any governmental investigation or audit, including but not limited to the discipline, discharge, or disassociation of any person failing to testify, the production of accurate and complete books and records, and the forthcoming testimony of all other members, agents, assignees or fiduciaries whose testimony is sought.

(b)      The relationship of the person who refused to testify to any entity that is a party to the hearing, including, but not limited to, whether the person whose testimony is sought has an ownership interest in the entity and/or the degree of authority and responsibility the person has within the entity.

(c)      The nexus of the testimony sought to the subject entity and its contracts, permits or licenses with the City.

(d)      The effect a penalty may have on an unaffiliated and unrelated party or entity that has a significant interest in an entity subject to penalties under 5.4 above, provided that the party or entity has given actual notice to the commissioner or agency head upon the acquisition of the interest, or at the hearing called for in 5.3(a) above gives notice and proves that such interest was previously acquired.  Under either circumstance the party or entity must present evidence at the hearing demonstrating the potential adverse impact a penalty will have on such person or entity.

5.6(a) The term "license" or "permit" as used herein shall be defined as a license, permit, franchise or concession not granted as a matter of right.

5.6(b) The term "person" as used herein shall be defined as any natural person doing business alone or associated with another person or entity as a partner, director, officer, principal or employee.

5.6(c) The term "entity" as used herein shall be defined as any firm, partnership, corporation, association, or person that receives monies, benefits, licenses, or permits from or through the City or otherwise transacts business with the City.

5.6(d) The term "member" as used herein shall be defined as any person associated with another person or entity as a partner, director, officer, principal or employee.

5.7 In addition to and notwithstanding any other provision of this agreement, the Commissioner or agency head may in his or her sole discretion terminate this agreement upon not less than three (3) days written notice in the event contractor fails to promptly report in writing to the Commissioner of Investigation of the City of New York any solicitation of money, goods, requests for future employment of other benefit or thing of value, by or on behalf of any employee of the City or other person, firm, corporation or entity for any purpose which may be related to the procurement or obtaining of this agreement by the contractor, or affecting the performance of this contract.

6. Audit

6.1 Pursuant to Chapter 5 of the New York City Charter, at Licensee' reasonable request made upon reasonable notice, Licensor shall make available all records and books pertaining to this Agreement during normal business hours for audit, inspection and/or investigation by Licensee, the City, acting through its Comptroller, the U.S. government or any other persons authorized by Licensee. Such audit, inspection and/or investigation may include examination and review of the source and application of all funds from Licensee, the City, the State of New York, the federal government, private sources, or any other source. If an audit, inspection, or investigation is commenced as set forth in this section, Licensee may withhold payment hereunder until Licensor provides the cooperation required hereunder.

6.2 Licensor shall maintain accurate books and records in accordance with generally accepted accounting principles. Licensor shall retain such documents for six years after the final payments, expiration or termination of this Agreement, whichever is later.

6.3 This section shall survive expiration or termination of this Agreement.

7. Fair Practices

7.1 Any violation of the representations or warranties set forth in this section shall constitute a material breach of this Agreement, and Licensee shall have the right to immediately terminate this Agreement without liability for any damages resulting therefrom.

7.2 Licensor warrants that no Licensor Employee is an elected official, officer or employee of Licensee or the City.

7.3 Licensor and Licensor Employees shall not directly or indirectly give any gift in any form, including but not limited to money, service, loan, travel, entertainment to members of Licensee' Board of Directors, Community Advisory Boards, officers, employees, or personnel.

7.4 Licensor shall not represent any party other than Licensee related, or substantially related, to the Services to be performed under this Agreement without Licensee' advance written consent.

7.5 Licensor warrants that neither Licensor nor any Licensor Employee has any conflict of interest relating to the performance of this Agreement which is materially adverse to Licensee or the City and shall not acquire such conflict of interest during the term of this Agreement.

8. [Intentionally omitted.]

9. Licensor Representations

Licensor represents and warrants that it and each of its Licensor Employees providing Services under this Agreement are properly licensed to perform such Services by the applicable licensing entities.

Licensor represents and warrants that it is registered to do business in the State of New York and the City of New York.

Licensor represents and warrants that it is financially capable of fulfilling all requirements of this Agreement, that there are no legal proceedings against it that could threaten performance of this Agreement, and that the it is a validly organized entity that has the authority to enter into this Agreement. Licensor is not prohibited by any loan, contract, financing arrangement, trade covenant, or similar restriction from entering into this Agreement.

10. Licensor Employee Screening

Licensee may require Licensor Employees that enter Licensee premises to participate in its Licensor Employee screening system and Licensor shall comply with all requirements of such system.  Licensee shall have sole discretion as to whether any Licensor Employees may access Licensee premises.

11. [Intentionally omitted.]

12. [Intentionally omitted.]

13. [Intentionally omitted.]

14. [Intentionally omitted.]

15. [Intentionally omitted.]

16. [Intentionally omitted.]

17. [Intentionally omitted.]

**Article III.  General Terms and Conditions**

1. Independent Contractor

Licensor's relationship with Licensee and the City is that of an independent contractor and not that of an employee.  Licensor covenants that neither it nor any Licensor Employees nor any Licensor subcontractors will hold themselves out as, nor claim to be, employees of Licensee or the City, and that they will not make any claim, demand, or application to or for any right or privilege applicable to an employee of Licensee or the City including, but not limited to, Workers' Compensation, benefits, pension, payroll taxes, or Social Security.

089271\1\170638452.v4

2. [Intentionally omitted.]

3. Indemnification

See License Agreement.

4. Limitation of Liability

4.1 Licensee' liability to Licensor arising out of this Agreement shall not exceed the amount that is unpaid to Licensor at the time such liability accrued.

4.2 Neither Party, nor their respective employees or agents, shall be liable to the other for indirect, punitive, exemplary or consequential damages.  Neither Party's officers, directors, agents or employees shall have personal liability to the other Party under this Agreement except in cases of fraud.

4.3 This section shall survive expiration or termination of this Agreement.

5. Notices

5.1 All notices or communications required or permitted to be given hereunder shall be in writing and if to Licensee shall be sent to the Licensee Contact specified on the first page of the License Agreement (provided that Licensee may change its contact upon prior written notice to Licensor) and if to Licensor at the address specified below. Notices may be sent by hand delivery, U.S. Postal Service certified mail return receipt requested or by nationally recognized courier next business day delivery.  Notices shall be deemed given upon delivery if delivery is made by hand, within three business days if sent by certified mail and on the next business day if sent by recognized courier with next business day delivery specified.

5.2 Notices to Licensor shall be sent to:

> Golden Seahorse LLC
> 99 Washington Street
> New York, NY 10006
> Attn: Jeff Qin

5.3 This section shall survive expiration or termination of this Agreement.

6. Compliance with Law

Licensor shall comply with all applicable laws, rules and regulations, including New York State and the City's wage laws. Each and every provision of law required to be inserted in this Agreement shall be and is deemed to be included.

7. [Intentionally omitted.]

8. Insurance

8.1 Licensor shall not commence performing under this Agreement unless and until all insurance required by this Agreement is in effect and satisfactory proof of such insurance (such as certificates of insurance, amendatory endorsements, additional insured endorsement where applicable, or copy of the declarations and endorsements page) has been provided to and approved by Licensee.  All insurance shall be primary

with respect to Licensor and the additional insureds and issued by an insurer with an A.M. Best rating of A-, Class VII or better. All insurance policies must be issued by insurance companies authorized to do business in New York State.  Such insurance shall waive any right of subrogation against Licensee.  The limits of coverage for all insurance required under this Agreement shall be the greater of (i) the minimum limits set forth herein or (ii) the limits available to Licensor under all primary, excess, and umbrella policies. Licensee reserves the right to increase the minimum acceptable limits of coverage depending upon the scope of services and the potential risk exposures involved in this Agreement. Licensor's failure to maintain any of the insurance required by this Agreement shall constitute a material breach of this Agreement.

8.2 There shall be no self-insurance program or self-insured retention in excess of $25,000 with regard to any insurance required under this Agreement unless approved in writing by Licensee. Any self-insurance program shall provide Licensee with all rights that would be provided by traditional insurance.

8.3 Licensor shall provide Licensee with a copy of any policy required under this Agreement upon the demand for such policy by Licensee.

8.4 Any subcontract shall conform to the insurance requirements set forth in this Agreement.

8.5 Licensor shall maintain occurrence based commercial general liability insurance with limits no less than $2,000,000 per occurrence, $4,000,000 in the aggregate.  Such insurance shall name (i) "New York City Health and Hospitals Corporation, its officials, and employees" and (ii) "The City of New York, its officials and employees" as additional insureds.  Such insurance shall cover claims for property damage, bodily injury, including death, products liability, and ongoing and completed operations liability.  Such insurance shall state that coverage shall not be canceled except with notice to the additional insureds.

8.6 If the Services under this Agreement are professional services, then Licensor shall maintain professional liability insurance with limits no less than $1,000,000 per occurrence $2,000,000 in the aggregate.  Any policy that is claims-made shall have at least a three-year reporting period.

8.7 If Licensor uses vehicles under this Agreement, then Licensor shall maintain business automobile liability insurance with limits no less than $2,000,000 and at least as broad as the current ISO form CA0001.  Such insurance shall name (i) "New York City Health and Hospitals Corporation, its officials, and employees" and (ii) "The City of New York, its officials and employees" as additional insureds.  Such insurance shall state that coverage shall not be canceled except with notice to the additional insureds. If vehicles are transporting hazardous materials, the insurance shall be endorsed to provide pollution liability broadened coverage for covered vehicles (endorsement CA 99 48) as well as proof of MCS-90.

8.8 Licensor shall maintain statutory limits of Worker's Compensation insurance and employer's liability insurance with limits no less than $5,000,000 per accident for injury or disease.

9. [Intentionally omitted.]

10. Use of Licensee' Marks

The prior written approval of Licensee is required before Licensor or any Licensor Employee may (i) use Licensee or any of its facilities' names, logos, marks, seals, insignia, symbols or brands or the like in any material for publication through any media of communication, or (ii) make any statement to the press or issue any material for publication through any media of communication relating to this Agreement. The foregoing restriction does not prohibit Licensor from using any such name in direct communications (including marketing materials that contain a list of Licensor's customers) with current or identified prospective customers (such as in a response to a solicitation or another direct communication).

11. Entire Agreement

This Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior or contemporaneous oral or written communications or agreements with respect to such matters.

12. Amendments

This Agreement may not be modified or amended except in writing and signed by both Parties.

13. Assignment

13.1 Should this Agreement be assigned, all rights, benefits and obligations shall be binding upon and inure to the benefit of the Parties, and their respective successors and permitted assigns.

14. Severability

If any section of this Agreement is held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining sections shall remain in full force and effect.

15. Waiver

The failure to enforce any right or remedy under this Agreement or at law shall not constitute a waiver of such right or remedy.

15. Delay

15.1 The time of performance of Services may be extended in the following ways and with the following consequences:

15.1.1 If performance by Licensor is delayed by an act or omission of Licensee, Licensor shall be allowed a corresponding extension of time for performance.

15.1.2 If performance by Licensor is delayed by a force majeure event such as war, civil insurrection, strikes, weather, etc., Licensor shall promptly give notice to Licensee of the circumstances and the anticipated delay duration, and Licensor shall be allowed a corresponding extension of time.

15.1.3 Should a delay necessitate Licensee to purchase Services from a third-party, Licensee may do so without liability to Licensor and Licensee shall be relieved of the obligation to purchase such Services from Licensor.

16. Confidentiality

Each Party has materials and information that have been or might be made available to the other in connection with this Agreement and may consist of confidential and proprietary information ("Confidential Information") of the other Party and shall not disclose the Confidential Information of the other Party except as otherwise set forth in this section. Confidential Information shall include any information relating to the Services, identity of customers or patients, business practices, trade secrets, business opportunities, pricing terms, and financial information. Only those employees or consultants requiring the use of Confidential Information in the performance of this Agreement shall receive such Confidential Information and only if

such employees or consultants are bound by a confidentiality agreement as protective as this section. Neither Party shall be liable to the other with regard to any Confidential Information that: (i) was publicly known at the time it was disclosed, (ii) was legally known to the receiving party at the time of disclosure, (iii) was disclosed pursuant to law or court order, or (iv) was disclosed with the prior written approval of the disclosing party.  This section shall survive the termination or expiration of this Agreement.

## Article IV. Terms and Conditions Specific to Goods

Intentionally omitted.

## Article V. Terms and Conditions Specific to Services

The following shall apply if Licensor provides Services under this Agreement.

<u>Warranty for Services</u>
Licensor warrants that the Services will be performed (i) in a diligent, professional and workmanlike manner in accordance with the highest applicable industry standards and applicable laws and regulations, (ii) in accordance with the requirements under this Agreement, and (iii) by experienced, qualified and properly trained and appropriately licensed personnel.  If Licensor fails to meet the specifications as set forth herein, Licensor will, without additional compensation, promptly correct or revise any errors or deficiencies in the Services provided.

21

# FEMA RIDER

**1. FEMA Reimbursement Documentation**. Some or all of the cost of the services herein may qualify for reimbursement by the Federal Emergency Management Administration ("FEMA") or other federal programs. Accordingly, Licensor shall at its own reasonable expense invoice Licensee as directed by Licensee to meet FEMA standards. Further, Licensor shall prepare at its own reasonable expense any reports required or useful in applying for FEMA reimbursement. Should the cost of preparing documents for FEMA reimbursement become unreasonable, Licensee shall at its own expense offer to Licensor the services of a third-party to perform such services, and Licensor shall cooperate with such third-party.

**2. Debarment**. Licensor certifies that neither it nor its principals is currently in a state of debarment, suspension, or other ineligible status as a result of prior performance, failure, fraud, or violation of applicable laws. Licensor further certifies that neither it nor its principals is debarred, suspended, otherwise excluded from or ineligible for participation in federal assistance programs. Licensee reserves the right to terminate this Agreement if knowledge of debarment, suspension or other ineligibility has been withheld by the Licensor. Licensor must comply with 2 C.F.R. Part 180, subpart C and 2 C.F.R. Part 3000, subpart C, and must include a requirement to comply with these regulations in any lower tier covered transaction it enters into.

**3. Lobbying**. Licensor certifies, to the best of its knowledge and belief, that:

3.1 No federal appropriated funds have been paid or will be paid, by or on behalf of it, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal agreement, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal agreement, grant, loan, or cooperative agreement;

3.2 If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal agreement, grant, loan, or cooperative agreement, it will complete and submit Standard Form-LLL.

3.3 It will require that the language of this Section E be included in the award documents for all subcontracts at all tiers.

3.4 This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by 31 U.S.C. § 1352.

**4. Records Access**. Licensor shall grant access to Licensee, New York State, New York City or any other pass-through entity, FEMA, Inspectors General, and/or the Comptroller General of the United States, or any of their duly authorized representatives, to any books, documents, papers, and/or records of Licensor that are pertinent to the Agreement for the purpose of making audits, examinations, excerpts, and transcripts. The right also includes timely and reasonable access to Licensor's personnel for the purpose of interview and discussion related to such documents. The rights of access in this section are not limited to the required retention period but last as long as the records are retained.

**5. Agreement Changes**. If not provided elsewhere in the Agreement, Licensee and the Licensor must agree in writing to any changes to the Agreement, including changes to pricing and scope. All changes must meet the requirements of 2 C.F.R. Part 200, including Subpart E entitled "Cost Principles."

**6. Logos**. The Licensor shall not use Department of Homeland Security ("DHS") seal(s), logos, crests, or reproductions of flags or likenesses of DHS agency officials without specific FEMA preapproval.

**7. Federal Government not a Party**. The Licensor acknowledges and understands that the federal government is not a party to this Agreement and is not subject to any obligations or liabilities to Licensee, Licensor or any other party pertaining to any matter resulting from the Agreement.

**8. Program Fraud and False or Fraudulent Statements or Related Acts**. The Licensor acknowledges that 31 U.S.C. Chap. 38 (Administrative Remedies for False Claims and Statements) applies to the Licensor's actions pertaining to this Agreement.

089271\1\170638452.v4