**PERKINS COIE LLP**
*Attorneys for Wilmington Trust, National Association, as Trustee*
*for the benefit of the Registered Holders of Commercial Mortgage*
*Pass-Through Certificates Series 2018-C6, Proponent Commercial*
*Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through*
*Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial*
*Mortgage Trust, Commercial Mortgage Pass-Through Certificates,*
*Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC*
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
Telephone: (212) 262-6900
Gary F. Eisenberg, Esq.
Email: geisenberg@perkinscoie.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                    Chapter 11

GOLDEN SEAHORSE, LLC,
dba Holiday Inn Manhattan Financial District,[1]         Case No. 22-11582 (PB)

                              Debtor.
------------------------------------------------------------x

## PLAN OF REORGANIZATION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2018-C6, PROPONENT COMMERCIAL MORTGAGE TRUST 2018-C47, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C47 AND CSAIL 2018-C14 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C14 AND AS AUTHORIZED REPRESENTATIVE FOR HI FIDI B NOTE OWNER LLC AS PROPONENTS AND SECURED CREDITORS

---

[1] The Debtor's last four digits of its tax identification number is 4770. The Debtor's principal place of business is 99 Washington Street, New York, New York.

Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC (collectively, "Secured Creditor" or "Proponent"), secured creditor of the above captioned debtor and debtor-in-possession  hereby proposes the following Plan of Reorganization for debtor Golden Seahorse LLC ("Debtor" pursuant to the provisions of title 11 of Chapter 11 of the United States Code.  Capitalized terms used herein shall have the meanings set forth in Article 1.A.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms shall have the respective meanings specified below:

1.1    "*Accepting Class*" means a Class that votes to accept the Plan in accordance with Section 1126 of the Bankruptcy Code.

1.2    "*Administrative Claim Bar Date*" means the first Business Day that is at least thirty (30) days after the earlier of the Closing Date or the Effective Date.

1.3    "*Administrative Claim*" means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtors; and (b) Fee Claims.

1.4    "*Agreed Cash Collateral Order*" means that certain *Final Order (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Adequate Protection to the Pre-Petition Lenders, (III) Modifying the Automatic Stay and (IV) Granting Related Relief* [ECF No. 38], as may be modified from time to time.

1.5    "*Allowed*" means, with reference to any Claim, a Claim (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor; (c) as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; *provided*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtor shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.6    "*Assets*" means all of the rights, title and interest of the Debtor, whether tangible, intangible, intellectual, real, personal, or mixed that constitute property of the Estate within the purview of section 541 of the Bankruptcy Code, including without limitation the Property.

1.7    "*Assumed Contracts*" has the meaning assigned to such term in Section 7.2.

1.8    "*Assumption*" has the meaning set forth in Article III below.

- 2 -

1.9     "***Auction***" means the public auction of the Property held pursuant to Articles III and IV of this Plan.

1.10    "***Auction Date***" has the meaning as set forth in Section 3.2 of this Plan.

1.11    "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. § 101. *et seq*., as amended from time to time, as applicable to this Chapter 11 Case.

1.12    "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 to the United States District Court for the Southern District of New York.

1.13    "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

1.14    "***Bid Procedures***" has the meaning set forth in Article IV.

1.15    "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are authorized or required to close by law or executive order, or other legal holiday.

1.16    "***Case***" means the bankruptcy case commenced by the filing of the chapter 11 petition by the Debtors, with the docket number as captioned above.

1.17    "***Cash***" means legal tender of the United States of America.

1.18    "***Cash Credit***" shall have the meaning as set forth in Article III.

1.19    "***Cash Transfer***" shall have the meaning as set forth in Article III.

1.20    "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, loss, debt, damage, judgment, account, defense, remedies, offset, power, privilege, license and franchise of any kind of character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  Causes of Action also includes; (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.21    "*Chapter 11 Case*" means the above-captioned chapter 11 case commenced by the Debtor on the Petition Date in the Bankruptcy Court.

1.22    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against the Debtor.

1.23    "*Class*" means any group of Claims or Interests classified as set forth in Article II of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.24    "*Class 1 Creditor Documents*" means all documents executed and delivered in connection with effectuation and implementation of the treatment under this Plan in favor of the Proponent amending, reaffirming or otherwise modifying any Loan Document, it being understood

- 4 -

that no Loan Document may be modified without Proponent's consent, to be granted, withheld or conditioned in its sole and absolute discretion.

1.25    "***Closing Date***" means (i) in the event of a Sale or Refinancing, the closing date of such Sale or Refinancing, and (ii) in the event of a Credit Bid for the Property, the closing date of the Credit Bid Agreement.

1.26    "***Confirmation Date***" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.27    "***Confirmation Hearing***" means the date on which the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.28    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.29    "***Credit Bid***" means the rights of Proponent under Section 363(k) of the Bankruptcy Code to bid all or a portion of its Allowed Class 1 Secured Claim at the Auction to be conducted pursuant to Article IV hereof.

1.30    "***Credit Bid Agreement***" means any purchase agreement submitted by the Secured Crditor or its designee in connection with any Credit Bid.

1.31    "***Creditor***" means the holder of a Claim.

1.32    "***Debtor***" has the meaning set forth in the introductory paragraph of the Plan.

1.33    "***Debtor's Owner***" means Mr. Jubao Xie, the direct or indirect holder of the majority of the equity interests in the Debtor.

- 5 -

1.34    "*Deficiency Claim*" means the Allowed Claims of any Creditor holding a Claim that is in part evidenced and/or secured by a lien on the Property to the extent that such claim is an Unsecured Claim as provided under Section 506(a) of the Bankruptcy Code.

1.35    "*Designee*" means the person or entity to whom Proponent elects to be the recipient of the Property Transfer upon the Sale (as defined in Article III of this Plan).

1.36    "*Disallowed*" means, with respect to any Claim, that such Claim has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.37    "*Disbursing Agent*" means the agent authorized to make all distributions provided for under the Plan.

1.38    "*Disclosure Statement*" means the disclosure statement related to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.39    "*Disputed*" means with respect to a Claim, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order; *provided*, *however*, that a Disputed Claim shall not include any portion of the Claim that is an Allowed Claim.

1.40    "*Disputed Claim Reserve*" means one or more reserve accounts to be funded with Cash in accordance with the terms of the Plan, for Disputed Claims.

1.41    "*Distribution*" means any initial or subsequent payment or transfer made under the Plan, including by the Disbursing Agent.

- 6 -

1.42    "*Distribution Fund*" means (i) the Sale Proceeds generated from the Property Sale in accordance with Article III of this Plan, (ii) if applicable, any Cash of the Debtor on hand, and (iii) if applicable, the proceeds of any amount contributed by the Secured Creditor to fund the Plan.

1.43    "*Distribution Fund Carve-Out*" has the meaning as set forth in Article III of this Plan.

1.44    "*Effective Date*" means the later of (i) the earlier of (A) the first business day following the fourteenth (14th) day after entry by the Court of the Confirmation Order or (B) the date designated by the Purchaser in writing as the Effective Date, or (ii) the first business day after which the Confirmation Order shall have become a Final Order.

1.45    "*Estate*" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.46    "*Executory Contract*" means a contract to which the Debtor is party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.47    "*Fee Claims*" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331 or 503(b) of the Bankruptcy Code in the Chapter 11 Case.

1.48    "*Fee Claims Bar Date*" means 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date.

1.49    "*Final Order*" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended.  So long as such order has not been reversed, stayed, modified or amended, neither the filing or pendency of (i) a notice of appeal; motion for leave to appeal, motion for an extension of the time to file a notice of appeal or leave to appeal under

- 7 -

Federal Rule of Bankruptcy Procedure 8002(d); (ii) motion for reconsideration or rehearing or extension of the time in which to file a notice of appeal or motion for leave to appeal or motion for stay of such order; nor (iii) motion or other pleading seeking relief of any kind from the Bankruptcy Court or any other court with respect to such order, shall derogate from such order becoming a Final Order.

1.50    "*Free and Clear*" means free and clear of all Liens, security interests, Claims, encumbrances and interests (other than to a Holder of a Claim as part of the treatment of such Claim under this Plan), including any claim against the Debtors, Disbursing Agent, any Secured Creditor or their successors and assigns arising from, based upon, sounding in or relating to any theory of successor liability or claim or debt assumption.

1.51    "*General Unsecured Claim*" means any Claim against the Debtor, that is not (a) an Administrative Claim, (b) a Fee Claim, (c) a Priority Tax Claim, or (d) a Secured Claim, *provided*, *however*, that any deficiency claim on account of any under-Secured Claim shall be treated as a General Unsecured Claim.

1.52    "*Holder*" means the Person that is the legal owner of a Claim or Interest.

1.53    "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code. The Allowed Claim of Class 1 is deemed to be an Impaired Claim.

1.54    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether fully vested or vesting in the future, including, without limitation,

equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.55    "*Lease*" means any lease to which the Debtor was a party as of the Petition Date.

1.56    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.57    "*Loan Agreement*" shall mean that certain loan agreement dated as of September 18, 2018 between Proponent's predecessor in interest on the one hand and the Debtor on the other hand.

1.58    "*Loan Documents*" has the meaning as set forth in the Loan Agreement.

1.59     "*Marketing Agent*" shall mean a prominent national or regional real estate broker, duly licensed in the jurisdictions where each Property is located, to be selected by Proponent in its sole discretion.  The Proponent intends to confer with the Debtor regarding the Marketing Agent but that shall not derogate from the sole discretion of the Proponent to select the Marketing Agent.

1.60    "*Marketing Plan*" shall mean a comprehensive, market-standard, prompt and efficient marketing and sales process as approved by Proponent in its sole discretion, to be implemented by the Marketing Agent.  The Marketing Plan may commence prior to the filing of this Plan.

1.61    "*New Equity Issuance*" has the meaning as set forth in Article IV of the Plan.

1.62    "*Obligations*" means the sum of the Allowed Class 1 Claim.

1.63    "*Person*" means an individual, corporation limited partnership, limited liability company or other entity.

1.64    "*Personalty*" has the meaning as set forth in Section 3.2 of this Plan.

- 9 -

1.65    "*Petition Date*" means November 28, 2022, the date the Debtor commenced this Chapter 11 Case.

1.66    "*Plan*" or "Plan of Reorganization" means this chapter 11 plan, including all appendices, exhibits, schedules and supplements hereto as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.67    "*Plan Obligations*" means the amounts required to be paid hereunder to the holders of Allowed Administrative, Priority, Class 1 and Class 2 Claims.

1.68    "*Plan Supplement*" means a supplemental appendix to the Plan containing, among other things, form of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court.  The documents comprising the Plan Supplement may be filed on an iterative basis.  The Proponent shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date, in accordance with Section 9.4 of the Plan.

1.69    "*Priority Claim*" means a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Bankruptcy Code.

1.70    "*Priority Tax Claim*" means any Secured Claim or General Unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.71    "*Pro Rata*" means proportionally according to the total amount of Allowed Claims in a Class.  For purposes of Pro Rata calculations, only Allowed Claims against the specific Debtor shall be included; there shall be no substantive consolidation of the Debtor's Claims or Assets.

1.72    "*Proceeds*" means (a) all "proceeds" (as such term is defined in the UCC) and "products" (as such term is defined in the UCC) with respect to the Property, (b) all "proceeds,

- 10 -

products, offspring or profits" as any such terms are used in 11 U.S.C. §552; and (c) include, without limitation: whatever is receivable or received when Property is are sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary; all rights to payment, including return premiums, with respect to any insurance relating thereto; all interest, dividends and other property receivable or received on account of the Property or proceeds thereof, (including all distributions or other income from the Property, all collections thereon or all distributions with respect thereto); and proceeds of any indemnity or guaranty payable to Debtors or Proponent from time to time with respect to any Property.

1.73    "*Professionals*" means those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to Sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code.

1.74    "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.75    "*Property*" means the real property owned by the Debtor as of the Petition Date.

1.76    "*Property Transfer*" has the meaning as set forth in Article III of this Plan.

1.77    "*Proponent*" has the meaning as set forth in the preamble paragraph of this Plan.

1.78    "*Proponent Closing Date*" means, if Proponent or the Designee is the successful bidder for the Property at the Auction, the date of closing of such sale to Proponent or Designee.

1.79    "*Purchaser*" has the meaning as set forth in Section 3.2 of this Plan.

- 11 -

1.80    "*Refinancing*" means a refinancing of some or all of the indebtedness secured by the Property, the net proceeds of which shall not be less than the Plan Obligations, including without limitation all of the Allowed Class 1 Claims (allowed pursuant to the provisions of this Plan).

1.81    "*Refinancing Proceeds*" means the net proceeds payable to the Debtors from the Refinancing.

1.82    "*Reinstated*" means, with respect to a Claim, one that was Disallowed where the order rendering such Claim as Disallowed is subsequently modified to render such claim Allowed.

1.83    "*Released Parties*" has the meaning set forth in Section 8.3 herein.

1.84    "*Remaining Assets*" has the meaning as set forth in Section 3.2 of this Plan.

1.85    "*Sale*" means the sale of the Property pursuant to this Plan.

1.86    "*Sale Closing Date*" means the date of the closing of the sale of the Assets pursuant to a Sale conducted in accordance with this Plan.

1.87    "*Sale Contract*" means a written agreement between the Debtor or Proponent on the one hand and a Third Party Purchaser for the sale of the Property that provides for a Cash purchase price and is in any event subject to the terms of this Plan and the Confirmation Order.

1.88    "*Sale Proceeds*" means the net amount payable to the Debtor from a sale of the Property to a Third Party Purchaser.

1.89    "*Schedules*" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

- 12 -

1.90    "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) agreed to by the holder of such Claim and the Debtor or (ii) determined by a Final order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.91    "*Secured Creditor*" means Proponent.

1.92    "*Successful Purchaser*" means the purchaser of the Assets who is either a Third Party Purchaser, Proponent or any other Person who pursuant to the Sale process in accordance with the Bid Procedures closes on the acquisition of the Assets.

1.93    "*Tenant*" means any tenant under any Lease.

1.94    "*Third Party Contract*" means a contract for the purchase of the Assets between Proponent or the Designee on the one hand (in the event that Proponent or the Designee is the winning bidder at the Sale) and a Person other than the Proponent or the Designee.

1.95    "*Third Party Purchaser*" means a party other than Proponent (or its nominee or the Designee) who or which is the highest bidder at an Auction conducted pursuant to Section 4.2(a) of the Plan or pursuant to a Third Party Contract.

1.96    "*UCC*" means the Uniform Commercial Code in effect in the state in which the Bankruptcy Court is located.

1.97    "*Unexpired Lease*" means an unexpired lease to which the Debtor is party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.98    "*Unimpaired*" means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

- 13 -

1.99    "***U.S. Trustee***" means the United States Trustee for the Southern District of New York.

1.100    "***Voting Deadline***" means the date by which all persons or entities entitled to vote on the Plan must vote to accept or reject the Plan.

Section 3.1 of the Plan uses a number of defined terms as defined in that Section.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.    Controlling Document.**

- 14 -

161416634.5

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan, the Plan shall govern and control.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

2.1    Classification of Claims.  A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

2.2    Summary of Classification.  The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| Class 1 | Secured Claim of Proponent | Impaired | Yes (accepting) |
| Class 2 | General Unsecured Claims | Not Impaired | No |
| Class 3 | Claims of Insiders | Impaired | Deemed to Reject |
| Class 4 | Interests | Impaired | Deemed to Reject |

2.3    Administrative Claims.

- 15 -

(a)        A notice setting forth the Administrative Claim Bar Date will be filed on

the Bankruptcy Court's docket and served with the notice of the Effective Date.  No other notice

of the Administrative Claim Bar Date will be provided.

(b)        All requests for payment of Administrative Claims that accrued on or

before the Effective Date (other than Fee Claims) must be filed with the Bankruptcy Court and

served on counsel for the Debtors by the Administrative Claim Bar Date.  Any requests for

payment of Administrative Claims that are not properly filed and served by the Administrative

Claim Bar Date shall be disallowed automatically without the need for any objection or any action

by the Bankruptcy Court.

(c)        Unless the Proponent or the Debtors objects to a timely filed and properly

served Administrative Claim by the applicable objection deadline, or such Administrative Claim

has been allowed by prior order of the Bankruptcy Court, then such Administrative Claim shall be

deemed allowed in the amount requested.  If the Proponent or the Debtors objects to an

Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the

Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if

so, in what amount.

(d)        Each holder of an Allowed Administrative Claim (other than any Allowed

Administrative Claim held by Proponent or any Fee Claims or U.S. Trustee Fees) shall be paid in

full, in cash, by the Disbursing Agent from the proceeds of the Sale, Refinancing or other

transaction (as applicable) on or as soon as reasonably practicable after the later of the Effective

Date or the Closing Date, as applicable, and the date on which such Claim becomes an Allowed

Administrative Claim, or on such other date and upon such other terms as may be agreed by the

holder of such Allowed Administrative Claim and the Disbursing Agent or ordered by the

- 16 -

Bankruptcy Court.  Holders of Administrative Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

(e)      It is a condition precedent to the occurrence of the confirmation of the Plan that the only holders of Allowed Administrative Claims are Proponent, the Debtor's counsel and the U.S. Trustee.

(f)      The foregoing treatment of Administrative Claims shall apply to each Debtor's chapter 11 case.

2.4      U.S. Trustee Fees.  The U.S. Trustee Fees are Unimpaired, but Proponent reserves the right to challenge the amount and the basis for determination by the U.S. Trustee of any Claim for U.S. Trustee Fees.  All U.S. Trustee Fees incurred by the U.S. Trustee prior to the Effective Date and not yet paid shall be paid by the Disbursing Agent on the Effective Date in accordance with the applicable schedule for payment of such fees including any interest thereon.  Until the Chapter 11 Case is closed by entry of a final decree of the Bankruptcy Court, the Debtors shall pay all additional U.S. Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees including any interest thereon.  Commercially reasonable efforts shall be used to effectuate closing of this Case as soon as practicable after effectuation of the distributions provided hereunder.  The foregoing treatment of U.S. Trustee Fees shall apply to each Debtor's chapter 11 case.

2.5      Fee Claims.

(a)      All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on the Debtors and Proponent on or before the Fee Claims Bar Date.

(b)      Any Fee Claim that is not asserted in accordance with this Section 2.5 shall be deemed Disallowed under this Plan and the holder thereof shall be enjoined from

- 17 -

commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Fee Claim against any of the Debtors, the Disbursing Agent, or any of their respective assets or property.

(c)    Each holder of an Allowed Fee Claim shall be paid in Cash in an amount equal to its Allowed Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

2.6    <u>Priority Tax Claims</u>.    Except as may be otherwise mutually agreed in writing between the Debtors or Proponent and any applicable Governmental Units, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent (a) in the event of a sale, from the proceeds remaining in the Distribution Fund, if any, as soon as is reasonably practicable after the payment in full in Cash of all of the following: (i) Administrative Claims, (ii) Fee Claims, (iii) the Class 1 Claim, and (iv) the Class 2 Claim, and (b) in the event of a Refinancing or Reinstatement, in full from the proceeds received by Debtors to implement the Refinancing or Reinstatement.    Priority Tax Claims may be Impaired by the Plan subject to the amount of proceeds remaining in the Distribution Fund.    The foregoing treatment of Priority Tax Claims shall apply to each Debtor's chapter 11 case.

### ARTICLE III
### <u>TREATMENT OF CLAIMS UNDER THE PLAN</u>

3.1    **Class 1**.    The Debtor shall have a Class 1 of Secured Claims consisting of the Allowed Secured Claim of Proponent.

**Class 1 Treatment**:    The Allowed Secured Claim of Proponent shall be treated in Debtor's case as follows.    All of the Assets, including without limitation all of the Estate's: (i) Property, (ii) personal property used at, upon or in connection with the operation of the

- 18 -

Property (the "*Personalty*") and (iii) other intangible assets of the Debtor, including without limitation all Leases (excluding (a) cash transferred pursuant to a Cash Transfer as defined below and (b) Avoidance Actions) as shall be designated by Proponent (the "*Remaining Assets*") shall be transferred (the "*Property Transfer*") through the occurrence of a public auction sale or otherwise pursuant to the Sale described below to be conducted on the terms and conditions contained herein. Class 1 is Impaired, and each holder of an Allowed Class 1 Claim against Debtor is entitled to vote to vote to accept or reject the Plan for that Debtor. The Property Transfer may be in parcels or *en masse* as determined by Proponent with input from the Marketing Agent.

*Marketing and Sale.*

The Marketing Agent shall be responsible for designing and implementing the Marketing Plan, whereby the Marketing Agent will advertise and conduct one or more prompt, efficient, and orderly sales (each, a "*Sale*") of the Assets. Allowed Claims shall be paid from the Proceeds of any sale conducted under the Marketing Plan. The Marketing Agent may initiate the Marketing Plan prior to confirmation of the Plan.

At Proponent's election, a Sale may be accompanied by Proponent's agreement, in lieu of the Sale being Free and Clear, to permit the purchaser at the Sale to assume the existing Loan Documents (subject to such modifications to which Proponent in its sole and absolute discretion shall agree) (any, an "*Assumption*"). Proponent need not offer Assumption to any purchaser and may determine to offer Assumption to certain purchasers and not others. Neither the Debtor nor Debtor's Owner shall have any right to claim any Assumption.

*Auction Sale.*

- 19 -

If the Marketing Agent is unable to procure one or more buyers offering an aggregate price for the Assets (or any of them) sufficient to generate net Proceeds equal to or greater than Proponent's Allowed Claims (remaining owing after payment of the proceeds of sales of any Assets to Proponent), any Assets that have not been sold under the Marketing Plan (or sold prior to the Marketing Plan) will be transferred through an auction sale (the "Auction Sale") to a buyer (the "Purchaser") who will be identified through the process described in this section.  Proponent shall provide at least 21 days' notice of the date on which the Auction Sale will take place (the "Auction Date") to the Holders of Allowed Claims and Interests, and will publish notice in such publications as Proponent elects, if any.  At Proponent's election, the Sale will be either in parcels, *en masse* or in a combination of in parcels and *en masse* so as to attempt to yield the maximum Proceeds.  Whether in parcels, *en masse* or in a combination of in parcels and *en masse*, the Proceeds of Sale shall be distributed to Debtor's creditors and other parties in interest as provided in this Article III.

### Vesting of Assets

Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Assets shall vest in the successful purchaser free and clear of all Liens, Claims and encumbrances (other than Assumed Contracts and the Ground Leases) and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds as of such date, to be distributed as provided in the Plan.

### Credit Bid and Sale Proceeds

The Sale Proceeds shall be used solely to fund the Distribution Fund and utilized to satisfy payments consistent with the terms of the Plan.  Proponent is entitled to credit bid at such

- 20 -

Sale pursuant to 11 U.S.C. §363(k) up to the Allowed Amount of Proponent's Claim (including all sums awarded pursuant to the Agreed Cash Collateral Order and including the Prepayment Premium referenced in the Agreed Cash Collateral Order (the "*Total Bid*"). The Total Bid shall be reduced by an amount equal to the amount of any actual cash transferred to Proponent between the Petition Date and the Sale Date by the Debtors or otherwise in partial payment of the Obligations (the "*Cash Credit*"), but in each case subject to the accrual of interest at the Default Rate that has continued since the Petition Date. Proponent shall have no obligation to bid and/or become the successful bidder at the Sale. Proponent may bid in excess of the sum of the Total Bid, to the extent that Proponent or the Designee agrees at the Sale to pay in immediately available funds any amounts above the Total Bid in increments to be coordinated with Proponent at the sale. If Proponent is the successful bidder at the Sale, or if otherwise a Property Transfer to Proponent or the Designee occurs, upon the closing of the Property Transfer, all of the Assets will be transferred to Proponent or the Designee Free and Clear in partial satisfaction of Proponent's Allowed Secured Claim, and the Cash Transfer will occur on the Effective Date. If Proponent is the successful bidder at the Sale, Proponent may postpone the vesting of title to the Assets in Proponent, Designee or a Third Party Purchaser until execution, delivery and closing of a Third Party Contract, in which case the proceeds of such Third Party Contract shall be payable to Proponent (so long as all other Plan Obligations and payments to holders of Allowed Class 4 Claims shall have been paid not later than simultaneously with the closing of such Third Party Contract) and the vesting of the title shall be entitled to the benefits of Section 1146(a) as set forth in the section below entitled "Transfer Taxes."

- 21 -

If Proponent is not the successful bidder at the Sale, Proponent shall be paid (after payment of all regular closing costs and adjustments, Allowed Administrative Claims and Allowed Priority Claims) (x) the proceeds of the Sale up to the Allowed Amount of its Claim (less credit for all cash and money equivalents transferred to Proponent pursuant to a Cash Credit) Free and Clear with Proponent having an Allowed Class 3 Claim for any amounts remaining unpaid after the sale plus (y) all cash or other money alternatives held by the Debtors or held in any account where Proponent holds a Lien on such cash or money equivalents or the account or its contents, which shall be transferred to Proponent Free and Clear (the "*Cash Transfer*").  In addition, the Cash Transfer will be made to Proponent whether or not Proponent is the Purchaser.  The Debtors will advise Proponent of the estimated amount of the Cash Transfer not less than seven (7) days prior to the Auction Date so that Proponent can formulate any credit bid it intends to make taking into consideration the estimated Cash Transfer.

Any Property Transfer shall vest Proponent, the Designee or the Purchaser (as applicable) with good and marketable title to the Assets Free and Clear other than as provided above. The Property Transfer will be "AS IS, WHERE IS", with no warranties express or implied. The transferee of any Property Transfer shall be found and determined to be a good faith purchaser, as defined in 11 U.S.C. §363(m).

Proponent or the Designee shall, at its option, have the right to retain the Debtor's existing management company or any other appropriate entity as manager or operator of any Property, on terms and conditions mutually agreeable to Proponent or the Designee on the one hand and management company on the other hand.  After payment of ordinary operating expenses, and without derogating from the Cash Transfer set forth above,

- 22 -

Proponent or the Designee shall be entitled to receive distribution of all net income from the Assets post-Effective Date.

*Transfer Taxes*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to the sale of the Property to the Successful Purchaser and, if Secured Creditor is the Successful Purchaser, to any designee of its right to receive execution and delivery of a Deed or otherwise to any Third Party Purchaser pursuant to a Third Party Contract.

*Document Execution and Delivery*

Proponent shall be authorized to sign in the name of the Debtor (with a limited power of attorney) all documents that Proponent determines in its sole discretion will further the Property Transfer (including such documents in aid of issuing, preserving or transferring any license to operate the Property and including pursuant to any Third Party Contract) or are otherwise reasonably necessary or useful for the carrying out of the transactions contemplated under this Plan.

- 23 -

3.2    **Class 2**.  Class 3 shall consist of Holders of General Unsecured Claims against that Debtor.  There shall be no substantive consolidation of any of the Debtors.

**Class 2 Treatment**:  Holders of Allowed General Unsecured Claims in Class 2 shall receive the greater of the following:  (a) one or more distributions on a Pro Rata basis, up to one hundred percent (100%) of such Allowed General Unsecured Claim plus such other amounts to which Holders may be entitled so as to render them not Impaired, in full and final satisfaction of such Allowed General Unsecured Claim, at Proponent's election, from (a) the remaining proceeds of the corresponding Debtor's Distribution Fund, if any, promptly after the payment in full in Cash of all of the following against that Debtor: (i) Administrative Claims, (ii) Fee Claims, (iii) the Class 1 Claim of that Debtor, (iv) the Class 2 Claims, and (v) Priority Tax Claims, or (b) Cash payable upon (*1*) Assumption or (*2*) the conduct of the Auction Sale if the Sale described above does not yield proceeds sufficient to pay the amounts set forth in subparagraph (a) above or an Assumption.  Class 2 is not Impaired, and each holder of an Allowed Class 2 Claim against the Debtor is conclusively presumed to have accepted the Plan.

3.3    **Class 3**:  Debtor shall have a Class 3 consisting of Insiders who are the Holders of Claims against the Debtor.  Each Insider who is the Holder of a Claim against the Debtor shall receive the following treatment.  Each such claim shall be recharacterized as a Class 4 Interest.  In addition, any Claim of any Insider that is the subject of an Avoidance Action shall be disallowed until resolution of such Avoidance Action.  If, notwithstanding the foregoing, the Claim of any Insider who is the Holder of a Class 3 Claim shall be Allowed pursuant to a Final Order, such Claim shall receive treatment as if it were an Allowed Class 2 Claim.  Class 3 is Impaired and is presumed to have rejected the Plan.

- 24 -

3.4    **Class 4**:  Debtor shall have a Class 4 consisting of the holders of equity interests in the Debtor.  Each Holder of an Interest in the Debtor shall, in the event of a Sale, receive a Pro Rata portion of the remaining proceeds of the Distribution Fund, if any, after the payment of all classified and unclassified Allowed Claims.   In addition, the interests in Debtor shall be cancelled and Debtor shall be deemed dissolved as of the Effective Date, except to the extent that Proponent effectuates a New Equity Issuance.  Class 4 is Impaired and is presumed to have rejected the Plan.

3.5    **No Voting**.  As the proponent of the Plan, Proponent is deemed to have accepted the Plan.  No other voting on the Plan is to take place.

**ARTICLE IV**
**IMPLEMENTATION OF THE PLAN**

4.1    <u>Plan Funding</u>.  As a condition to effectiveness of this Plan, there must occur the following: (x) closure on the Sale of the Property and (y) payment of a sum equal to the amount of Allowed Administrative Claims, Allowed Priority Claims and Allowed Convenience Class Claims.  The Sale of the Property, and execution and delivery of a deed for the Property to an assignee of Secured Creditor's winning bid, if any, each is intended to be exempt from otherwise applicable transfer taxes in accordance with Section 1146(a) of the Bankruptcy Code.  The Plan shall be funded with (a) Cash on hand remaining after the Cash Transfer (but Proponent may elect to allow the Debtor to retain an amount of Cash otherwise to be transferred pursuant to the Cash Transfer to be included in the Distribution Fund) and (b) the net proceeds of (i) a Sale of the Assets pursuant to the Bid Procedures and (ii) a cash contribution from the Secured Creditor (which Secured Creditor shall have no obligation to make other than in amount sufficient (if the sum of (a) and (b)(i) above yields insufficient proceeds to pay the amounts required to be paid under this Plan) to pay the difference between (q) the sum of (i) Allowed Administrative Claims, Allowed

- 25 -

Priority Claims, Allowed Class 2 Claims and Allowed Convenience Class Claims and (ii) the sum of (a) and (b)(i) above, or any combination of the foregoing.

    4.2   <u>Implementation</u>.

    (a)   <u>Sale of Property</u>.

    (1)   *The Sale Process*.  Through the assistance of the Marketing Agent, there shall be conducted  a Sale process in accordance with such procedures as Proponent shall, in its sole and absolute discretion, determine are reasonably likely to facilitate a Sale to yield the maximum net Proceeds, pursuant to Bankruptcy Code Section 1123(a)(5), free and clear of any and all Liens, Claims, and encumbrances (except for Assumed Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law.  Notwithstanding the foregoing, Proponent may permit the purchaser to do an Assumption.

    (2)   *Bid Procedures*.

    (i)   <u>The Auction</u>.  If the Sale Process does not yield either (A) sale of the Property generating sufficient Proceeds to satisfy Proponent's Allowed Claim in full or (B) an Assumption, Proponent shall, with the Marketing Agent's assistance, conduct an Auction of the Property, 21 days after conclusion of the Sale Process. That Auction shall constitute a component of the Sale process described in this Plan.

    (ii)   <u>The Credit Bid</u>.  Proponent shall be entitled to submit a Credit Bid as provided in Section 3.1 above.

    (iii)   <u>Qualified Bidder</u>.  Proponent is a Qualified Bidder at the Auction.

    (iv)   <u>Disputes</u>.  Any disputes arising from the Auction, or regarding any of the Bid Procedures, shall be submitted to the Bankruptcy Court.  In the

- 26 -

interest of judicial economy, any dispute shall first be raised by the parties to the dispute contacting Chambers by phone.

(3)    *Vesting of Assets*.  Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall vest in the successful purchaser Free and Clear and any other Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall attach to the Sale Proceeds as of such date.

(b)    <u>Refinancing</u>.  Notwithstanding any of the foregoing, the Debtor shall have the absolute right prior to the date that is 21 days after entry of the Confirmation Order to satisfy the Allowed Class 1 Claim.  THE DEADLINE FOR REFINANCING SET FORTH IN THIS PARAGRAPH IS NOT SUBJECT TO EXTENSION FOR ANY REASON OTHER THAN CONSENT BY PROPONENT IN ITS SOLE AND ABSOLUTE DISCRETION AND THIS PARAGRAPH DOES NOT CREATE ANY OTHER RIGHT OR CAUSE OF ACTION IN FAVOR OF DEBTOR, DEBTOR'S OWNER OR ANY AFFILIATE OF OR OTHER PARTY IN CONTRACT WITH ANY OF THEM.

(c)    <u>New Equity Issuance</u>.  On the Effective Date, at the option of Proponent, (a) all or such portion as Proponent or the Designee shall elect of the Equity Interests in each Reorganized Debtor shall be transferred to Proponent or the Designee, and the entity documents and other governing documents for each Reorganized Debtor shall be modified as Proponent or the Designee, consistent with the Plan, shall elect (including without limitation changing the Debtor's entity form to that of a different entity, for example, changing the state of formation of the limited liability company that currently is the Debtor; any of such, an "*Entity Form Change*") (the occurrence of the transactions set forth in this subparagraph shall be referred to as the "*New*

- 27 -

*Equity Issuance*"), or (b) all of the Equity Interests of the Debtor shall be deemed canceled, annulled, extinguished, and surrendered without any further action by any party and shall no longer be of any force and effect. The New Equity Issuance shall constitute the substitution of such entities as Proponent or the Designee shall elect (the "*Substituted Equity Holders*") as members in the Debtor in place of the then-current member(s) in the Debtor. Such substitution may be accompanied by a simultaneous or subsequent Entity Form Change, with the Substituted Equity Holders' status in the Reorganized Debtor changing to that appropriate for the form of entity resulting from the Entity Form Change. If a New Equity Issuance occurs, at the option of Proponent, a Property Transfer may still occur but need not occur. In addition, if the New Equity Issuance occurs, then except as otherwise expressly provided in the Plan, upon occurrence of a New Equity Issuance, title to all assets of each corresponding Reorganized Debtor under the Plan shall continue to vest in the corresponding Reorganized Debtor, Free and Clear, including from all liens, encumbrances, charges claims, interests of creditors and equity security holders arising on or before the Effective Date (other than as provided in the Class 1 Creditor Documents), and the Reorganized Debtor may operate its business, from and after the Effective Date, free from any restrictions imposed by the Bankruptcy Code or by prior Orders of this Court. In addition, if the New Equity Issuance occurs, all liens of any kind against any property of the estate of the Reorganized Debtor shall be discharged, extinguished, removed, expunged, or otherwise disallowed as against all property of the Estate of the Reorganized Debtor, other than liens in favor of Proponent which Proponent or the Designee, as the case may be, may elect to have continued, pursuant to the Loan Documents, as may be amended with the consent of Proponent. No New Equity Issuance shall derogate from the treatment to be provided to THE Debtor's Holders of Allowed Class 2 Claims and Class 3 Interests.

- 28 -

4.3    Post-Effective Date.

(a)    Sale.    In the event of a sale, subject to the occurrence of a New Equity Issuance, the Debtor shall continue to exist after the Effective Date for the purposes of allowing the making of Distributions to holders of Allowed Claims and Interests under the Plan, and to take any other steps in furtherance thereof or, if applicable, as may be reasonably necessary or appropriate to wind-down its affairs and its Estate, including filing and prosecuting objections to Claims, if any, and if necessary.    The principal purpose of the Debtor shall, subject to the occurrence of a New Equity Issuance, be to (i) implement the Plan, (ii) if necessary, liquidate, collect, and maximize the Cash value of the any remaining assets of the Estate, and (iii) make Distributions on account of Allowed Claims in accordance with the terms of the Plan.    However, nothing in this paragraph shall derogate from the powers granted to the Disbursing Agent or Proponent pursuant to Section 6.15 of this Plan.

(b)    Refinancing.    In the event of a Refinancing approved by the Bankruptcy Court through an order which has become final and non-appealable, the Proponent may withdraw this Plan, in which case (i) the Debtor shall continue to exist, (ii) all of the Debtor's Assets, including the Property, will vest in the Debtor, (iii) the existing Holder of Interests in the Debtor shall retain its Interest in the Debtors, and (iv) the Property will be managed by the Debtor.

4.4    U.S. Trustee Fees and Post Confirmation Reports.    The Debtor shall be responsible for filing post-confirmation reports with the Bankruptcy Court and the Disbursing Agent shall effectuate payment of all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. Section 3717, on behalf of the Debtor, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

- 29 -

4.5     Filing of Documents.  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

4.6     Execution of Documents.  Without derogating from any authority granted to Proponent or the Purchaser, Proponent is authorized to execute and deliver (in the Debtor's name) all documents to which the Estate shall be a party pursuant to this Plan.  Without detracting from this Plan and in particular Section 3.1, the Court may appoint an agent to execute and deliver on behalf of any party any document that is an exhibit to the Plan with full force and effect as if such party had executed and delivered such document, in the event such party does not execute and deliver such exhibit after request by either the Disbursing Agent or Proponent.

## ARTICLE V
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1     Objections.  The Proponent alone may file an objection to the allowance of a Claim or Interest with the Bankruptcy Court, in writing, no later than the time provided under Section 6.4 of this Plan.  For the avoidance of doubt, paragraph 6.6 of this Plan applies in lieu of any contemplated objection to any Class 1 Claim.

5.2     Amendment of Claims.  A Claim may not be amended after the Effective Date unless agreed upon in writing by the Proponent and the holder of such Claim, and, in the case of an Allowed Class 1 Claim, Proponent and the Holder of such Allowed Class 1 Claim, respectively, and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

- 30 -

5.3    <u>Reserve for Disputed Claims</u>.  Notwithstanding anything contained in this Plan to the contrary, the Disbursing Agent shall reserve, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of Distribution.  The Cash so reserved for the holder of such Disputed Claim shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim.  The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when Distribution thereon is made to or received by such holder.

**ARTICLE VI**
**<u>PROVISIONS GOVERNING DISTRIBUTIONS</u>**

6.1    <u>Disbursing Agent</u>.  The Proponent or such agent as the Proponent may retain pursuant to an order of the Court on appropriate notice to interested parties shall act as Disbursing Agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall be entitled to be paid compensation at its regular hourly rate from proceeds to be distributed pursuant to this Plan, subject to approval by the Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction to approve such fees.  The Disbursing Agent shall be authorized to hold in escrow the sum of $10,000 pending approval of the Disbursing Agent fees, which fees shall be an Allowed Administrative expense.  The Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan.  Pending the final distribution of all sums distributable under the terms of the Plan, the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtors to the extent necessary to make any payment or distribution contemplated by the Plan.

6.2    <u>Timing of Distributions Under the Plan</u>.  Subject to Sections 6.6 and 6.8 hereof, any payments, Distributions or other performance to be made pursuant to the Plan on account of

- 31 -

any Disputed Claim shall be deemed to be timely made if made as provided for under this Plan on the later of the Closing Date or the Effective Date, on or within five days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times as may otherwise be provided in the Plan.

6.3    Method of Payment.   Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank, or wire transfer, if requested.

6.4    Claims Objection Deadline.   Subject to further extension by the Proponent, objections to the allowance of any Claim may be filed only by the Proponent and in any event no later than the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

6.5    Prosecution of Objections.   After the Confirmation Date, only the Proponent shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.   The Proponent may comprise any objections to Disputed Claims without further order of the Court.

6.6    No Distribution Pending Allowance; Allowance of Secured Creditor's Claim. Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.   For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Plan. Notwithstanding any other provision of this paragraph, the Secured Creditor's Claim shall be Allowed in the amounts set forth in the proof of claim filed by the Secured Creditor in this Case, as adjusted by any Final Order of the Court regarding such Claim subsequent to the filing of the

- 32 -

161416634.5

Secured Creditor's Claim and prior to the date of this Plan.  For the avoidance of doubt, the allowance provided in the previous sentence includes allowance of all amounts (other than late charges) accruing on and after the Petition Date, including interest at the Default Rate and legal fees of Proponent's counsel, which are deemed allowed without the need to submit any fee application or document in lieu of a fee application.

6.7    <u>Escrow of Cash Distributions</u>.  On any date that Distributions are to be made under the terms of the Plan, the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any Disputed cure amount, and (iv) any amount due but not payable on the Closing Date on account of Administrative Claims or Claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

6.8    <u>Distribution After Allowance</u>.  Subject to Article III hereof, within five (5) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

- 33 -

6.9    <u>Investment of Segregated Cash</u>.  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; *provided*, *however*, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository pursuant to the guidelines of the Office of the United States Trustee.

6.10    <u>Distribution After Disallowance</u>.  Subject to Section 6.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Estate for distribution pursuant to the terms of this Plan.

6.11    <u>Delivery of Distributions</u>.  Except as provided in Sections 6.12, 6.13 and 6.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made (1) at the addresses set forth on the respective Proofs of Claim or proofs of Interests filed by such Holders; at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

6.12    <u>Undeliverable Distributions</u>.

(a)    If the Distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further Distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.

- 34 -

Undeliverable Distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an unclaimed distribution pursuant to Section 6.13 of the Plan.

(b)    Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section 6.13 of the Plan, within 30 days after the end of each calendar quarter following the Confirmation Date, the Disbursing Agent shall make Distributions of all Cash that has become deliverable during the preceding quarter.  Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

(c)    Nothing contained in the Plan shall require the Disbursing Agent to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

6.13    <u>Unclaimed Distributions</u>.  Any Cash or other assets to be distributed under the Plan shall revert to the Debtors and distributed in accordance with the terms of this Plan if it is not claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article III hereof; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

6.14    <u>Estimation of Claims</u>.  Subject to the allowances provided in paragraph 6.6 above, the Proponent may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at

- 35 -

any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

6.15    <u>Preservation of Causes of Action</u>. Except as otherwise provided in the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity are preserved, including without limitation, any and all Causes of Action under Sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code. The Proponent shall have sole power to bring (and to elect not to bring) any of the foregoing. Without derogating from the foregoing, if Proponent or the Designee is the Purchaser, Proponent or the Designee shall have the exclusive right to direct, manage and control the pursuit of such causes of action.

6.16    <u>No Substantive Consolidation</u>. There shall be no substantive consolidation of any Debtor with any other entity.

**ARTICLE VII**
**<u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

161416634.5

7.1    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is one that Proponent elects to reject, in which case any Allowed Claim arising from such rejection shall be a Class 2 Claim.

7.2    <u>Assumption and Assignments of Executory Contracts and Unexpired Leases in Connection with Sale</u>.  In the event of a Sale, on the Sale Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party, if any, as designated by Purchaser by notice to be filed with the Court not less than seven (7) days prior to the Sale Closing Date, shall be deemed assumed and assigned to the successful purchaser in accordance with Section 365 of the Bankruptcy Code, (the "Assumed Contracts"), except for those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement, which shall be deemed rejected, in which case any Allowed Claim arising from such rejection shall be a Class 2 Claim.  .

7.3    <u>Assumption Cure Payments</u>.  In the event of a Sale, except as otherwise agreed to by the Secured Creditor and the successful purchaser, on the Sale Closing Date, the successful purchaser shall cure any and all undisputed defaults under any Assumed Contracts.  Unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Sale Closing Date. Proponent shall have no liability for any cure payment with respect to any Assumed Contract.

161416634.5

7.4    <u>Rejection Claims</u>.  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Class 2 Claims.

7.5    <u>Bar to Rejection Claims</u>.  A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor and Proponent no later than thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Sale Closing Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor's Estate, its successors or its properties.

## ARTICLE VIII
## INJUNCTION AND EXCULPATION

8.1    <u>Binding Effect</u>.  On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtor, whether or not such holders accept the Plan.

8.2    <u>No Discharge</u>.    Except as otherwise provided in this Plan or the Disclosure Statement and 11 U.S.C. § 1141, because this is a liquidating Plan, an order confirming this Plan shall not constitute a discharge, as of the Effective Date, of any debts, claims or liabilities, whether liquidated or unliquidated, known or unknown, fixed or contingent, of the Debtor that arose at any time prior to the entry of the Confirmation Order..

8.3    <u>*Injunction*</u>.  *Except (i) as otherwise provided under a Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan or the Class 1*

- 38 -

*Creditor Documents, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin, with respect to any Claim held against the Debtor's Estates as of the date of entry of the Confirmation Order, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan. Except as otherwise provided herein, in the Class 1 Creditor Documents or in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Assets, or from property of the Estate, any Claim, obligation or debt that was held against the Assets or from property of the Estate by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan. The entry of the Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims. For the avoidance of doubt, this Section 8.2 shall not apply to Proponent in any suit, action, or other proceeding to collect upon any Loan Document or any guaranty related to any of the Assets.*

8.4    *Exculpation. To the extent permitted under 11 U.S.C. § 1125(e), neither Proponent nor any of its members, partners, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Chapter*

- 39 -

11 Case or the Plan and any related agreement except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall (a) effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against any of the Released Parties referred to herein for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any Claim of Proponent or any of its affiliates, including, without limitation, any Claim arising out of or under any guarantees executed in connection with the Class 1 Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections 8.2 or 8.3 herein enjoin Proponent from bringing any Claim, suit or action or other proceeding under or arising out of the Guarantees or any environmental law.

### ARTICLE IX
### MISCELLANEOUS PROVISIONS

- 40 -

9.1    <u>Orders in Aid of Consummation</u>.  Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2    <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and Distributions under the Plan shall be subject to such withholding and reporting requirements; *provided*, *however*, that the transfer of any Cash, the Property or other Assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

9.3    <u>Due Authorization by Claim Holders</u>.  Each and every holder of a classified and/or unclassified Claim who accepts the Distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the Distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Claim holder under the Plan.

9.4    <u>Amendments</u>.  The Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, and (ii) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, prior to the Effective Date, the Proponent may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation

- 41 -

Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

9.5    <u>Reservation of Rights</u>.   Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Case.

9.6    <u>Revocation or Withdrawal of Plan</u>.   The Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date.   If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor; (ii) prejudice in any manner the rights of any party in interest in this chapter 11 proceeding; or (iii) constitute an admission of any sort by any party in interest in this chapter 11 proceeding.

9.7    <u>Request for Relief Under Section 1129(b)</u>.  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Proponent may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

161416634.5

9.8    <u>Additional Documents</u>.  Except as otherwise provided in the Plan, on or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, the Plan Supplement.  The Proponent and all holders of Claims receiving Distributions pursuant to the Plan, and all other parties in interest, shall, prepare, execute, and deliver an agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9.9    <u>Section Headings</u>.  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.10    <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12    <u>Notices</u>.  All notices, requests, demands and other communications to be given or made hereunder, to be effective, shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)    if to the Debtor, at Tarter Krinsky & Drogin LLP, 1350 Broadway, New York NY10018, Attention:  Scott Markowitz, Esq., email: Scott Markowitz <SMarkowitz@tarterkrinsky.com;

(b)    if to Proponent, at Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 10036-2711, Attention Gary Eisenberg, Esq., email:  geisenberg@perkinscoie.com

(c)    if to any Claim holder, at (i) the addresses set forth on the Proofs of

- 43 -

Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address;

(d)     if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

9.14    <u>Severability</u>.   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.15    <u>Disclosure Statement</u>.  Proponent is not soliciting acceptances and thus has not filed a Disclosure Statement.  Any reference to a Disclosure Statement is superfluous to the extent that the Court confirms the Plan notwithstanding the non-filing of a Disclosure Statement.

9.16    <u>Business Day</u>.  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE X**
**<u>RETENTION OF JURISDICTION</u>**

10.1    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Chapter 11 Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)     Ensure that the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor, the Interest holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

- 44 -

(b)      Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)      Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)      Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)      Ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

(g)      Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)      Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

- 45 -

(i)       Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan;

(j)       Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)       Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)       Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, including the Confirmation Order or any other order of the Bankruptcy Court;

(m)       Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)       Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(o)       Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

- 46 -

161416634.5

(p)     To adjudicate any disputes related to the Confirmation Order, the Sale or alternatively, any auction and sale process as well as disputes relating to the Bid Procedures; and

(q)     Enter a Final Order or decree concluding the Chapter 11 Case.

10.2     <u>Post-Effective Date Jurisdiction</u>.  Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtors.

**ARTICLE XI**
**<u>CONDITIONS TO THE EFFECTIVE DATE</u>**

11.1     <u>Conditions Precedent to Confirmation</u>.  It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

(a)     The Bankruptcy Court shall have determined that no Disclosure Statement is required;

(b)     The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to Proponent, and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud; and (iv) establish the Administrative Claim Bar Date.

11.2     <u>Conditions Precedent to Effectiveness</u>.  The Effective Date shall not occur and no obligations under the Plan shall come into existences unless each of the following conditions is

- 47 -

met or, alternatively, is waived by Proponent in accordance with the terms of the Plan, on or before the Effective Date:

(a)      The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan;

(b)      The Confirmation Order shall be in full force and effect and not subject to any stay, modification or injunction;

(c)      Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions;

(d)      All documents and agreements necessary to implement the Plan, will have (a) been tendered for delivery and (b) been effected or executed by all entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; and

(e)      All conditions to the effectiveness of any Sale Contract or Credit Bid Agreement, as applicable, shall have been satisfied.

## ARTICLE XII
## DUTIES AND RIGHTS OF THE DISBURSING AGENT

- 48 -

161416634.5

The Disbursing Agent shall make and effectuate all distributions required under the Plan. All reasonable and documented fees and expenses of the Disbursing Agent shall be paid within twenty (20) days of presentation of invoice.

## ARTICLE XIII
## POST-CONFIRMATION ACTIVITIES OF THE DEBTORS

13.1    <u>Final Tax Returns</u>.  In the event that a Property Transfer occurs, the Debtor shall cause final tax returns to be filed with New York State Department of Taxation and Finance as well as the Internal Revenue Service and shall file such additional documents as are necessary to cause the formal dissolution of the Debtors with the New York State, Secretary of State.

13.2    <u>Post-Confirmation Date Fees and Reserve</u>.  The Debtor shall pay all reasonable and documented post-Confirmation Date fees and expenses to the Debtor's professionals within twenty (20) days of presentment of invoice.  Proponent shall have no liability for such fees or expenses.

## ARTICLE XIV
## EVENTS OF DEFAULT

14.1    An Event of Default shall occur if (a) the Disbursing Agent shall fail to make any Distribution when due or (b) the Proponent shall fail to comply with any other material terms of this Plan, and written notice of same has been provided to the Proponent, Disbursing Agent and the Bankruptcy Court.

14.2    Following an Event of Default, if such Default has not been cured within ten (10) days thereafter, any holder of a Claim, payment of which is in default, shall have the right to commence an action in the Bankruptcy Court or United States District Court to compel payment.

Dated:  April 18, 2024

Respectfully submitted,

PERKINS COIE LLP

By: <u>*/s/ DRAFT*</u>

- 49 -

Gary F. Eisenberg
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
GEisenberg@perkinscoie.com

*Attorneys for Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Wells Fargo Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC*

- 50 -