**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

In re:

GOLDEN SEAHORSE, LLC,
  dba Holiday Inn Manhattan Financial District,[1]

                   Debtor.

-------------------------------------------------------------x

Chapter 11

Case No. 22-11582 (PB)

## ORDER CONFIRMING SECOND AMENDED PLAN OF REORGANIZATION OF WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2018-C6, COMMERCIAL MORTGAGE TRUST 2018-C47, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C47 AND CSAIL 2018-C14 COMMERCIAL MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-C14 AND AS AUTHORIZED REPRESENTATIVE FOR HI FIDI B NOTE OWNER LLC AS PROPONENTS AND SECURED CREDITORS

Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC (collectively, "Secured Creditor" or "Proponent"), having brought the following matters before the Court:

    (i)    Proponent filed on April 18, 2024, the *Plan of Reorganization of Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 and CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC* [Docket No. 381];

---

[1]  The Debtor's last four digits of its tax identification number is 4770. The Debtor's principal place of business is 99 Washington Street, New York, New York.

(ii)    Proponent filed on July 25, 2024, the *First Amended Plan of Reorganization of Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 and CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC* [Docket No. 433] (the "First Amended Plan");

(iii)    Proponent filed on July 25, 2024, *Secured Lenders' Motion for Entry of an Order Scheduling a Hearing Pursuant to 11 U.S.C. § 1128(a) to Consider Confirmation of Secured Lenders' First Amended Plan of Reorganization dated July 25, 2024, and at the Confirmation Hearing Determining that no Disclosure Statement is Required* [Docket No. 434] (the "Motion");

(iv)    Proponent filed on July 25, 2024, concurrently with the Motion the *Declaration of Gary F. Eisenberg* in support of the Motion [Docket No. 434-1] (the "Eisenberg Declaration");

(v)    Proponent filed on July 25, 2024, concurrently with the Motion *Secured Lenders' Memorandum of Law* in support of the Motion [Docket No. 434-2] (the "Memorandum of Law");

(vi)    Proponent filed on September 20, 2024, the *Declaration of Eric R. Holland for Proffer in Support of Confirmation of Lender's Second Amended Plan* [Docket No. 461] (the "Holland Declaration"); and

(vii)    Proponent filed on September 20, 2024, the *Second Amended Plan of Reorganization of Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 and CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC* [Docket No. 460] (the "Plan"). [2]

The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") having:

(i)    entered on July 30, 2024, that certain *Order Scheduling a Hearing to Consider Confirmation of Secured Lenders' First Amended Plan of Reorganization dated July 25, 2024* [Docket No. 435] (the "Scheduling Order");

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

(ii)     by the Scheduling Order, scheduled a hearing before the Bankruptcy Court via Zoom for Government on September 5, 2024, at 10:00 a.m. to consider confirmation of the First Amended Plan (the "Confirmation Hearing");

(iii)    by the Scheduling Order, fixed August 29, 2024, as the deadline to file any objections to confirmation of the First Amended Plan (the "Objection Deadline");

(iv)    granted the joint request of Proponent and the Debtor to adjourn the Confirmation Hearing (to be held via Zoom for Government) to September 26, 2024, at 11:00 a.m. to consider confirmation of the First Amended Plan, with the Debtor having filed a notice of the adjournment of the Confirmation Hearing [Docket No. 448], implicitly extending to September 19, 2024 the deadline for filing any objection to confirmation of the Plan;

(v)     *sua sponte* on September 24, 2024 adjourned to October 2, 2024 at 10:00 a.m. the Confirmation Hearing.  In so doing, the Court did not extend the deadline for filing any objection to confirmation of the Plan, particularly in light of the fact that the Court had been informed by counsel for the Proponent on September 20, 2024 that the only two objections filed on or before September 19, 2024 (the HI Wall Street Objection and the Oracle Objection, defined below) had been resolved consensually among those objectors, Proponent, the Debtor and Hysendal);

(vi)    reviewed the Plan, the Motion, the Eisenberg Declaration, the Memorandum of Law, the Holland Declaration, and all other pleadings, exhibits, statements, affidavits, declarations, and comments regarding the confirmation of the Plan, including all objections, statements, and reservations of rights made with respect thereto;

(vii)   heard the statements, arguments, and objections, if any, made by counsel and parties in interest in respect of confirmation of the Plan;

(viii)  considered all oral representations, testimony, documents, filings, and other evidence regarding confirmation of the Plan;

(ix)    overruled any and all objections to the Plan and confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated in this Confirmation Order or on the record at the Confirmation Hearing;

(x)     taken judicial notice of the papers and pleadings filed in this chapter 11 case (the "Chapter 11 Case"); and

(xi)    considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, cross examination, and other evidence presented at the Confirmation Hearing.

An objection (the "HI Wall Street Objection") to confirmation of the Plan was filed on August 23, 2024 [Docket No. 445] by H.I. Wall Street Hotel Investors, LLC ("HI Wall Street"). Pursuant to that certain *Stipulation and Order Resolving H.I. Wall Street Hotel Investors, LLC's Objection to Confirmation of Plan of Reorganization* dated as of September 19, 2024 (the "HI Wall Street Objection Stipulation") [Docket No. 465], as approved by the Court on October 9, 2024 [Docket No. 504], the HI Wall Street Objection is resolved on the terms and conditions therein and this Order.

An objection (the "Oracle Objection") to confirmation of the Plan was filed on August 29, 2024 [Docket No. 450] by Oracle America, Inc. ("Oracle"). Pursuant to that certain stipulation between Oracle and Plan Proponent memorialized in paragraph 30(c) of this Order (the "Oracle Objection Stipulation"), the Oracle Objection is resolved on the terms and conditions therein and this Order.

As noted above, (a) the HI Wall Street Objection and the Oracle Objection were the only objections filed on or before the September 19, 2024 deadline for filing objections to confirmation of the Plan and (b) by email dated September 20, 2024, counsel for Proponent informed the Court of the resolution of the HI Wall Street Objection and the Oracle Objection. Thus, when the Court *sua sponte* on September 24, 2024 adjourned to October 2, 2024 at 10:00 a.m. the Confirmation Hearing, no unresolved objections to confirmation of the Plan remained pending. However, commencing Saturday, September 28, 2024, a series of filings were made, as described below, which the Court has considered as detailed below. In connection with these filings, the Court has conducted the Confirmation Hearing on three separate days (October 2, 7 and 8, 2024).

These filings, which have been addressed by the Court, include:

(i)     The *Objection of Yanhong Wang to Confirmation of Chapter 11 Plan and Motion for Adjournment of Confirmation Hearing* [Docket No. 466] filed on September 28, 2024 (the "Wang Confirmation Objection").

(ii)    The *Motion for Adjournment of Confirmation Hearing* [Docket No. 469] filed by Yanhong Wang ("Ms. Wang") on September 28, 2024 (the "Adjournment Request").

(iii)   Proponent's and Debtor's *Joint Letter to Judge Bentley Opposing Adjournment Request* [Docket No. 470] filed on September 30, 2024.

(iv)    Holiday Hospitality Franchising, LLC's Letter Joining in Proponent and Debtor's Joint Letter [Document No. 473] filed on September 30, 2024.

(v)     The *Joint Reply of Secured Lenders and Debtor to Objection of Yanhong Wang to Confirmation of Secured Creditors' Second Amended Plan of Reorganization* [Docket No. 474] filed on September 30, 2024.

(vi)    The *Letter in Reply to Responses Submitted by Other Parties in Interest to Yanhong Wang's Motion to Adjourn Confirmation Hearing* [Docket No. 475] (the "Wang Reply") filed on September 30, 2024.

(vii)   The Court on October 1, 2024 entered the *Memorandum Endorsed Order re: Confirmation Hearing Proceeding as Scheduled* [Docket No. 476] (the "Confirmation Hearing Procedures Order").

(viii)  The *Letter Addressing Certain Issues Raised at October 2, 2024 Confirmation Hearing* [Docket No. 480] (the "October 2 Letter"), filed by Ms. Wang on October 2, 2024.

(ix)    The *Motion of Yanhong Wang to Compel to [Sic] the Debtor to Produce Business and Management Records; to Grant Access to Email Account, and to Bar Cutting Access to Email Accounts* [Docket No. 481] (the "Wang Motion to Compel") filed by Ms. Wang on October 2, 2024.

(x)     Proof of Claim No. 28 in the amount of $60,000,000 filed by Ms. Wang on October 2, 2024 (the "Wang Claim").

(xi)    The Limited Liability Company Agreement of Golden Seahorse LLC [Docket No. 483] filed by Debtor on October 3, 2024.

(xii)   The Amended and Supplemental Letter Filed by Ning Ye on Behalf of Golden Seahorse LLC [Docket No. 485] (the "Ye Supplemental Letter") filed on October 3, 2024, and subsequently withdrawn per Docket No. 487 on October 4, 2024.

(xiii)  The *"Genuine and Authentic Debtor's" Reply Brief to "Joint Opposition" to Yanhong Wang's "Objection" against the Fraudulent "Reorganization Plan"*

5

[Docket NO. 486] (the "Ye Reply Brief") filed on October 3, 2024, and subsequently withdrawn per Docket No. 488 on October 4, 2024.

(xiv) Objector's New Evidence Supplementing Letter (ECF #480) in Support of Objection to Plan Confirmation [Docket No. 489] (the "New Evidence Letter") filed on October 4, 2024.

(xv) The *Notice of Withdrawal or Amendment of Claim 28* [Docket No. 490] (the "Wang Claim Withdrawal") filed on October 4, 2024.

(xvi) Secured Lenders' and Debtor's *Joint Letter in Response to October 2, 2024 Letter Filed by Yanhong Wang* [Docket No. 492] filed on October 6, 2024.

(xvii) The *Motion to Dismiss* [Docket No. 493] (the "Wang Motion to Dismiss") filed on October 7, 2024.

(xviii) Secured Lenders' *Letter to Judge Bentley Submitting Incumbency Certificate and Resolution* [Docket No. 496] filed on October 7, 2024.

(xix) Debtor's *Letter to Judge Bentley Submitting Additional Documents* [Docket No. 497] filed on October 7, 2024.

(xx) The *Letter to Judge Bentley Commenting on Two Cases Referenced at October 7, 2024 Hearing* [Docket No. 498] (the "October 7 Letter") filed by Ms. Wang on October 8, 2024.

(xxi) The *Declaration of Ziyi Xie Regarding Signature on Incumbency Certificate of Hysendal USA LLC, dated April 29, 2020* [Docket No. 499] (the "Ziyi Xie Declaration") filed by Ms. Yang on October 8, 2024.

The Wang Confirmation Objection; the Adjournment Request; the Wang Reply; the October 2 Letter; the Wang Motion to Compel; the Wang Claim; the Ye Supplemental Letter; the Ye Reply Brief; the New Evidence Letter; the Wang Claim Withdrawal; the Wang Motion to Dismiss; the October 7 Letter; and the Ziyi Xie Declaration shall be collectively referred to herein as the "Wang Filings."

The Bankruptcy Court conducted a Confirmation Hearing on October 2, 2024, pursuant to the Confirmation Hearing Procedures Order, which Confirmation Hearing it continued to October 7, 2024, and which it then continued to October 8, 2024. On the October 2 and 7 Confirmation Hearing dates, the Court heard extensive argument from the parties in interest with respect to the

Wang Filings that had been filed as of those dates of the Confirmation Hearing, respectively (and at both of those dates the Court afforded the parties in interest certain particular opportunities to file additional materials germane to issues raised at those dates' Confirmation Hearings). The Court considered all of the Wang Filings and the responses of the Proponent and the Debtor thereto [Docket. Nos. 470, 474, 483, 492, 493, 496, 497] as well as the joinder of Holiday Hospitality Franchising, LLC [Docket No. 473], and the Court then conducted the continued Confirmation Hearing on the Plan on October 8, 2024, at which time the Court (a) read its bench ruling into the record overruling and denying the Wang Filings in their entirety, and (b) read its bench ruling into the record its determination that the Plan satisfies the requirements of 11 U.S.C. §§ 1122, 1123 and 1129 and thus stated that it would enter an order confirming the Plan.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan have been adequate and appropriate as to all entities affected or to be affected by the Plan, and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and presented at the Confirmation Hearing establish just cause for the relief granted herein, and the Court having considered the objection(s) filed to the Plan and replies to such objections, and that after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.    The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157(a) and 1334(a). Venue of these proceedings and the Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and thus this Bankruptcy Court has jurisdiction to enter a final order with respect thereto.

C.      Due, timely, sufficient, and adequate notice of the Plan, any modifications of the Plan, the Confirmation Hearing, and the deadline for filing objections to the Plan has been given to all known holders of Claims against and Interests in the Debtor in accordance with the procedures established by chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (as amended the "<u>Bankruptcy Code</u>"), the Bankruptcy Rules, the local rules of this Bankruptcy Court ("<u>Local Rules</u>"), and all other applicable laws, rules, and regulations.

D.      The Debtor qualifies as a "debtor" under section 109 of the Bankruptcy Code.

E.      Proponent filed the Plan after the Debtor, its sole member Hysendal USA LLC ("<u>Hysendal</u>"), and a Hysendal interest holder (and issuer of a guaranty of the Debtor's debts to Proponent) on the one hand and Proponent on the other hand (collectively, the "<u>Settling Parties</u>") negotiated a comprehensive settlement effectuating a resolution of their disputes as set forth in the Plan ("<u>Mediation Settlement</u>") following mediation with the Honorable Robert E. Grossman from the United States Bankruptcy Court for the Eastern District of New York.

F.      The Plan provides for treatment of all administrative and unsecured creditors as unimpaired, including unsecured creditors who may have claims arising out of rejection of

executory contracts.  The only parties in interest receiving any treatment that could be deemed impaired are the Settling Parties (*i.e.*, holders of claims and interests in Classes 3 and 4, respectively) who have embodied their acceptance of the Mediation Settlement as set forth in the Plan and the Secured Creditor, who by proposing the Plan has manifested its acceptance of the Plan.

G.      All creditors (other than the Settling Parties) are unimpaired and are conclusively deemed to have accepted the Plan pursuant to 11 U.S.C. § 1126(f).  As such, Proponent has not solicited, and is not obligated to solicit, acceptances of the Plan.  Nor was Plan Proponent obligated to prepare and distribute a disclosure statement in support of the Plan pursuant to 11 U.S.C. § 1125.

H.      For their part, the Settling Parties have consented to the Plan and embodied their Mediation Settlement in the Plan.

I.      Proponent's Plan was prepared, proposed, and filed in good faith and Proponent complied in all respects with sections 1125 (to the extent applicable) and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable laws, rules, and regulations.

J.      The classification scheme of Claims and Interests under the Plan is reasonable and complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code. Claims or Interests in each particular Class are substantially similar to other Claims contained in such Class.

K.      As required by and in compliance with sections 1123(a)(1), (a)(2), and (a)(3) of the Bankruptcy Code, the Plan (i) identifies the Classes of Claims against the Debtor, (ii) specifies the Classes of Claims that are unimpaired under the Plan as well as those that are impaired under the Plan (*i.e.*, the Settling Parties who have agreed to their respective treatment under the Plan in

connection with the Mediation Settlement), and (iii) specifies the treatment of each Class of Claims under the Plan.

L.      Consistent with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim in a particular Class, unless a holder of such Claim has agreed with the Proponent to a less favorable treatment.

M.      As required by section 1123(a)(5) of the Bankruptcy Code, the Plan contemplates adequate means for its execution and implementation, including but not limited to: (i) the potential Sale of the Property, Personalty, and other intangible assets of the Debtor, pursuant to procedures adopted by Proponent in its sole and absolute discretion, and pursuant to section 1123(a)(5) of the Bankruptcy Code free and clear of any and all Liens, Claims, and encumbrances (other than as provided in any Assumption) with all net proceeds of the Sale to be paid to Proponent; (ii) the funding of the Plan from Cash on hand and the net proceeds of a Sale of the Assets; and (iii) the payment of available funds to holders of Allowed Claims in the order set forth in the Plan, provided, however, that the License Agreement may not be transferred through the Sale, and will terminate at 12:01 a.m. on the Closing Date unless Proponent exercises its rights under and in accordance with the Comfort Letter or unless otherwise agreed by both Holiday Hospitality Franchising, LLC ("HHF") and Proponent. In order to operate as a Holiday Inn® after any Sale, any Purchaser will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion.

N.      Consistent with sections 365, 1123(b)(1) and (b)(2) of the Bankruptcy Code, the Plan provides for the assumption of each of the Debtor's Executory Contracts and Unexpired Leases which have not been previously assumed or rejected pursuant to section 365 of the

Bankruptcy Code by prior order of the Bankruptcy Court, unless such Executory Contract or Unexpired Lease is one that Proponent elects to reject.

O.      Consistent with section 1123(b)(3) of the Bankruptcy Code, the Plan provides that the Estate shall retain all causes of action against third parties, including without limitation claims arising under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code.

P.      As required by section 1129(a)(1) of the Bankruptcy Code, the Plan complies with all applicable provisions of the Bankruptcy Code.

Q.      As required by section 1129(a)(3) of the Bankruptcy Code, the Plan has been proposed in good faith and not by any means forbidden by law. The Proponent's objectives in proposing the Plan were for the valid business purpose of effectuating a commercially reasonable Sale to maximizing distributions on account of the debts of the Debtor and to effectuate the Mediation Settlement.

R.      As required by section 1129(a)(4) of the Bankruptcy Code, any payment made or to be made by the Debtor for services or for costs and expenses in connection with this Chapter 11 Case, or in connection with the Plan, other than those incurred in the ordinary course of business, has been approved by this Bankruptcy Court or is subject to the approval by this Bankruptcy Court as reasonable.

S.      Section 1129(a)(5) of the Bankruptcy Code is inapplicable because the Plan provides that the Wind Down Officer shall, subject to applicable non-bankruptcy law and consistent with the implementation of the Plan, merge, dissolve, liquidate, or take such other similar action with respect to the Debtor (including the cancellation of all Interests in a Wind Down Estate) and complete the winding up of such Wind Down Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Wind

Down Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit, provided, however, that the foregoing does not limit the Wind Down Officer's ability to otherwise abandon an Interest in a Wind Down Estate.

T.      Section 1129(a)(6) of the Bankruptcy Code is inapplicable because there is no governmental regulatory commission with jurisdiction over any rates charged by the Debtor.

U.      As required by section 1129(a)(7) of the Bankruptcy Code, with respect to each Impaired Class, if any, each holder of a Claim or Interest for the Debtor of such Class will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.

V.      Because the Plan has been consented to by the only potentially impaired Classes (*i.e.*, Class 1 Claims, Class 3 Claims, and Class 4 Interests) and all other Classes of Claims are unimpaired, the Proponent has complied with sections 1129(a)(8) and (a)(10) of the Bankruptcy Code.

W.      The Plan provides for the treatment of Allowed Administrative Claims pursuant to sections 503(b) and 507(a) of the Bankruptcy Code, in accordance with section 1129(a)(9) of the Bankruptcy Code, except to the extent the holder of a particular Claim has agreed in writing to a different treatment.

X.      The Plan is feasible. The Proponent has demonstrated that, on and after the Effective Date, the Debtor will have the ability to meet the financial obligations under the Plan and liquidate the Debtor's remaining assets as provided under the Plan. As required by section 1129(a)(11) of the Bankruptcy Code, confirmation of the Plan is not likely to be followed by the

liquidation or the need for further financial reorganization of the Debtor, except as contemplated by the Plan. The Plan expressly contemplates approval of the Sale liquidating the Debtor as set forth in the Plan but also expressly contemplates an alternative treatment of the Class 1 Claim by which transfer of the Single Unit (with the Single Unit and the organizational documents of the Debtor modified on terms and conditions acceptable to the Proponent in its sole and absolute discretion so long as otherwise not inconsistent with the Plan) is authorized (subject to the terms and conditions of the License Agreement), and all proceeds of any such transfer are treated as Sale Proceeds and all provisions of the Plan and this Order are to apply to such proceeds as if they were Sale Proceeds.  Pending any such transfer of the Single Unit, the Plan contemplates the Wind Down Officer managing and operating the Reorganized Debtor's business, with the benefit of the discharge of the Debtor's debts as provided in the Plan.

Y.    As required by section 1129(a)(12) of the Bankruptcy Code, all fees payable pursuant to 28 U.S.C. § 1930 as determined by the Bankruptcy Court at the Confirmation Hearing shall be paid by the Debtor on or after the Effective Date.

Z.    Sections 1129(a)(13), (14), (15), and (16) are not applicable to the Debtor's Chapter 11 Case.

AA.    Section 1129(b) of the Bankruptcy Code is not applicable to the Plan because all Classes of Claims are unimpaired and those that are arguably impaired (i.e., Classes 1 and 3 Claims and Class 4 Interests) have expressly agreed to their respective treatment under the Plan pursuant to the Mediation Settlement.

BB.    The primary purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, as amended (15 U.S.C. § 77e).

CC.     The HI Wallstreet Objection has been resolved on the terms and conditions contained in the HI Wallstreet Objection Stipulation.

DD.     The Oracle Objection has been resolved on the terms and conditions contained in this Confirmation Order, as confirmed by email exchanges between counsel for Oracle and counsel for Proponent.

EE.     The Wang Filings, to the extent not already voluntarily withdrawn, are hereby overruled and disallowed in their entirety.

FF.     There were no other timely filed objections to the Plan.

GG.     The modifications of the Plan, if any, proposed by the Proponent prior to, at, or in connection with the Confirmation Hearing as set forth in this Confirmation Order, have been reviewed by and are not objected to by any party in interest, or else any such objections have been withdrawn or overruled. Any plan modifications shall not adversely change the treatment of the holders of Claims against or Interests in the Debtor.

HH.     Finding that the Plan is confirmable based upon all of the foregoing Findings of Fact, the Bankruptcy Court HEREBY ORDERS AND DIRECTS that:

## <u>CONFIRMATION OF PLAN</u>

1.     <u>Confirmation of Plan</u>. The Plan, a copy of which is attached hereto as **<u>Exhibit A</u>**, and each of its provisions are hereby confirmed in accordance with section 1129(a) of the Bankruptcy Code.

2.     <u>Plan Approved</u>. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Plan and this Confirmation Order are deemed accepted by each holder of a Claim against or Interest in the Debtor because all Claims are unimpaired, other than Class 1 Claims, Class 3 Claims, and Class 4 Interests, the Holders of which have consented to the Plan

pursuant to the Mediation Settlement. As such, the Proponent was not required to solicit acceptances or rejections of the Plan from any Class of Claims or Interests.

## IMPLEMENTATION OF THE PLAN

3.      <u>Approval of the Sale Process</u>. The Sale of the Debtor's Property free and clear of any and all Liens, Claims, and encumbrances (except for Assumed Contracts), pursuant to the approved Sale Process and sections 363 and 1123(a)(5) of the Bankruptcy Code, to one or more Purchasers is approved, including where Proponent is the successful bidder at the Sale.  The Sale Process pertaining to the License Agreement is likewise approved. For example, and as more fully set forth in the Plan, the License Agreement cannot be transferred pursuant to the Sale, and it will terminate as of 12:01 a.m. on the Closing Date unless Proponent exercises its rights under and in accordance with the Comfort Letter or unless otherwise agreed by both HHF and Proponent.  In order to operate as a Holiday Inn® after any Sale, any Purchaser will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion. For the avoidance of doubt, at Proponent's election, in lieu of a Sale, a transfer of the Single Unit (with the Single Unit and the organizational documents of the Debtor modified on terms and conditions acceptable to the Proponent in its sole and absolute discretion so long as otherwise not inconsistent with the Plan) is authorized (subject to the terms and conditions of the License Agreement), and all proceeds of any such transfer shall be treated as Sale Proceeds and all provisions of the Plan and this Order shall apply to such proceeds as if they were Sale Proceeds.

4.      <u>Sale Proceeds</u>. Provided the Required Distributions shall have been made, the Sale Proceeds shall be paid to Secured Creditor.  No other Person shall have any claim or right to any of them.

5.      <u>Vesting of the Assets</u>. Except as otherwise provided in the Plan, on the Effective

Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Assets

(other than those distributed to Holders of Claims or Interests pursuant to this Plan or transferred

pursuant to a Sale) shall vest in the Reorganized Debtor, subject to (a) the Liens and security

interests of Secured Creditor to the extent of the Loan Documents and (b) the Wind Down

Provisions.  The Loan Documents shall remain in full force and effect (other than the Guaranty

upon its release as provided in this Plan).  On the Closing Date, to the fullest extent provided by

the Bankruptcy Code or other applicable law, the Property will be vested in the Successful

Purchaser free and clear of all Liens, Claims, and encumbrances (other than Assumed Contracts).

Upon a Sale to Proponent, Proponent may exercise its rights under and in accordance with the

Comfort Letter dated February 5, 2019, with HHF, and the Plan shall not assign, transfer, sell, or

otherwise convey the License Agreement or assign Proponent's rights under the Comfort Letter to

any Designee or Third-Party Purchaser.

6.      <u>HHF Matters</u>. In the event the Purchaser does not obtain a new license agreement

to become effective contemporaneously with the Closing Date, the Reorganized Debtor (which

shall include the Wind Down Officer) shall be responsible to comply with the deidentification

provisions of the License Agreement. Notwithstanding the foregoing, nothing in the Plan or in this

Confirmation Order shall prevent or limit HHF from enforcing all obligations of the Reorganized

Debtor (including but not limited to de-identification obligations) pursuant to the License

Agreement, nor shall it operate to modify, waive, or release the Reorganized Debtor from (i) any

de-identification or other obligations under the License Agreement, or (ii) any continuing or

surviving obligations and post-termination monetary obligations of the Reorganized Debtor or any

continuing or surviving rights of the HHF under the License Agreement, including but not limited

to any and all indemnification obligations and liquidated damages provisions. All liquidated damages, ad assist reimbursements, and any other fees due to HHF under the License Agreement shall be paid by no later than upon the Sale. Nothing in the Plan or this Confirmation Order shall limit, impair, or otherwise affect the HHF's rights to pursue damages against the Reorganized Debtor, Wind Down Officer, Purchaser, or any other third-party, arising from any unauthorized use of HHF's intellectual property related to the applicable Hotel or the termination of the License Agreement. Prospective buyers may obtain a new license application by contacting:

> Kevin Winkowski
>
> Director, Transactions & Asset Management at IHG
>
> 3 Ravinia Drive, Suite 100, Atlanta GA 30346
>
> Telephone 678-477-3508
>
> Email: kevin.winkowski@ihg.com.

Prospective buyers are encouraged to contact Mr. Winkowski for the application and to submit a complete application package as early as possible. The Reorganized Debtor, Proponent, and HHF do not guarantee a response to an application within any certain time period.

Notwithstanding anything in the Plan, a Sale Contract, or any order approving the foregoing, none of the System, Data, or Marks, as the terms are defined in the License Agreement, or other property or information, including intellectual property, subject to the License Agreement, shall be included in the Sale.

In the event the Purchaser does not enter into a new license agreement with HHF in connection with a Sale, then upon provision by the Proponent to HHF of the End Date (as defined below), which the Proponent or Reorganized Debtor, as applicable, shall provide to HHF no later than one business day after entering into the Sale Contract with the Purchaser or Third

Party Purchaser, HHF shall be permitted, but not required, to (a) immediately modify its reservations systems and booking channels so that they will not accept reservations for any stays at the Hotel that extend beyond the original estimated Closing Date (the "End Date") and (b) notify any guests booked at the Hotel for stays extending beyond the End Date that the Hotel will be leaving the System (as defined in the License Agreement) on the original estimated Closing Date and provide an opportunity for such guests to transfer their reservations to another IHG licensed hotel. HHF is also authorized to shut down its reservation system for the Hotel as of 3:00 p.m. ET on the last business day before the closing of the Sale. The Proponent or Reorganized Debtor, as applicable, shall notify HHF of the first anticipated Closing Date for the Hotel no later than one business day after entry into the Sale Contract, notify HHF of any revised Closing Date for the Hotel no later than one business day after reaching agreement with the Purchaser, and HHF may rely on such notifications with regard to the modification and shut down of the reservation system for the Hotel.  For avoidance of doubt, the provisions set forth in the Plan (including, without limitation, Section 4.2(a)(3) of the Plan) in the event the Purchaser does not enter into a new license agreement with HHF shall apply to the same extent and force for the circumstances of the Proponent or third party transferee of the Single Unit Transfer not entering into a new license agreement with HHF.

7.    Control of Debtor.  On the Effective Date, provided all Required Distributions are made, pending a Sale, the Control of Debtor provisions set forth in in Section 3.1 of the Plan shall take effect and shall constitute a sale for federal income tax purposes only. After the Effective Date, the appointment of the Wind Down Officer and the making of the Required Distributions, Hysendal shall have no further right to distributions or management rights from, in, to, or over the Debtor or the Reorganized Debtor. Upon the taking effect of the Control of Debtor provisions, title

to all assets of the Reorganized Debtor under the Plan shall continue to vest in the Reorganized Debtor, Free and Clear, including from all Liens, encumbrances, charges, Claims, Interests of creditors and equity security holders arising on or before the Effective Date (other than as provided in the Class 1 Creditor Documents), and the Reorganized Debtor may operate its business, from and after the Effective Date, free from any restrictions imposed by the Bankruptcy Code or by prior Orders of this Court, subject to the Sale Proceeds provisions set forth in Section 3.1. All Liens of any kind against any property of the estate of the Reorganized Debtor shall be discharged, extinguished, removed, expunged, or otherwise disallowed as against all property of the Estate of the Reorganized Debtor, other than Liens in favor of Proponent, pursuant to the Loan Documents, as may be amended with the consent of Proponent. Nothing in this Plan prohibits Hysendal from dissolving or winding up after the Effective Date and distributing the Class 4 Distribution to its members.

8.    Appointment of Wind Down Officer.  The Wind Down Officer's retention shall commence on the Effective Date and shall continue until: (i) the Proponent dismisses the Wind Down Officer (which may occur either before or after entry of the Case Closure Order); (ii) the Bankruptcy Court enters an order removing the Wind Down Officer for cause; or (iii) the Wind Down Officer voluntarily resigns (upon notice filed with the Bankruptcy Court if occurring prior to entry of the Case Closure Order) and a successor Wind Down Officer is appointed in accordance with the Plan.  The Wind Down Agreement filed as part of the Plan Supplement is approved.

9.    Wind Down Budget and Estate.  On the Effective Date, the Wind Down Estate shall be funded in accordance with the Wind Down Budget for the Wind Down process. An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time with the consent of the Proponent.

10.    <u>Causes of Action to Wind Down Estate</u>.  On the Effective Date, any remaining assets and any Causes of Action of the Debtor's Estate (including without limitation the Occupant Turnover Action) (but excluding any Causes of Action against Exculpated Parties) shall transfer to the Wind Down Estate automatically and without further action of the Bankruptcy Court.

11.    <u>Distributions Under the Plan</u>. The Wind Down Officer shall distribute all Cash, Sale Proceeds, or other property on account of any Allowed Claims in the manner and timeframe provided by Article VI of the Plan. No payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

12.    <u>Escrow of Cash Distributions</u>. On any date that Distributions are to be made under the terms of the Plan, the Wind Down Officer shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any Disputed cure amount, and (iv) any amount due but not payable on the Closing Date on account of Administrative Claims or Claims entitled to priority pursuant to sections 503 and 507 of the Bankruptcy Code. The Wind Down Officer shall also segregate any interest, dividends, or other proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

13. _Distribution After Disallowance_.  Subject to Article III hereof, within five (5) days after the entry of a Final Order resolving an objection to a Disputed Claim, the Wind Down Officer shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

14. _Class 4 Distributions Mechanics_.   On the Effective Date, the Wind Down Officer and/or the Reorganized Debtor shall make the Class 4 Distribution to Hysendal by paying $7,375,000.00 to Hysendal (less the Holdback) pursuant to such instructions as Hysendal shall provide and $4,725,000,000 to HI Wall Street pursuant to such instructions as HI Wall Street shall provide in accordance with the HI Wall Street Objection Stipulation (in each case subject to applicable verification regulations and procedures relating to wire transfers).

15. _Investment of Segregated Cash_. To the extent practicable, the Wind Down Officer may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; provided, however, the Wind Down Officer shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds. Segregated Cash shall be maintained in an authorized depository pursuant to the guidelines of the Office of the United States Trustee.

16. _Distribution After Allowance_. Except as provided in Sections 6.12, 6.13 and 6.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made (i) at the addresses set forth on the respective Proofs of Claim or proofs of Interests filed by such Holders; (ii) at the addresses set forth in any written notices of address changes delivered to the

Wind Down Officer after the date of any related Proof of Claim; or (iii) at the address reflected in the Schedules if no Proof of Claim or proof of Interest is filed and the Wind Down Officer has not received a written notice of a change of address.

17.    <u>Distribution After Disallowance</u>. The Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Estate for distribution pursuant to the terms of the Plan.

18.    <u>Undeliverable Distributions</u>. (a) If the Distribution to the holder of any Claim or Interest is returned to the Wind Down Officer as undeliverable, no further Distribution shall be made to such holder unless and until the Wind Down Officer is notified in writing of such holder's then current address. Undeliverable Distributions shall remain in the possession of the Wind Down Officer until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an unclaimed distribution pursuant to Section 6.13 of the Plan. (b) Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section 6.13 of the Plan, within 30 days after the end of each calendar quarter following the Confirmation Date, the Wind Down Officer shall make Distributions of all Cash that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable. (c) Nothing contained in the Plan shall require the Wind Down Officer to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

19.    <u>Unclaimed Distributions</u>. Any Cash or other assets to be distributed under the Plan shall revert to the Debtor and distributed in accordance with the terms of this Plan if it is not

claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article III hereof; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

20.    <u>Estimation of Claims</u>. Subject to the allowances provided in paragraph 6.6 above, the Proponent may at any time request the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

21.    <u>Preservation of Causes of Action</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity (other than as against any Exculpated

Parties) are preserved, including without limitation, any and all Causes of Action under sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 548, 549, 550, 551 and 553 of the Bankruptcy Code. The Proponent shall have sole power to bring (and to elect not to bring) any of the foregoing. Without derogating from the foregoing, if Proponent or the Designee is the Purchaser, Proponent or the Designee shall have the exclusive right to direct, manage and control the pursuit of such causes of action.

22.    <u>No Substantive Consolidation</u>.  There shall be no substantive consolidation of the Debtor with any other entity.

23.    <u>Transfer Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of Property or otherwise, pursuant to or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax, and this Confirmation Order shall be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers or conveyance of property without the payment of any such tax. This provision specifically applies, without limitation to the Sale of Property to a Purchaser; *further* the exemption under section 1146(a) shall also specifically apply, without limitation, to the Sale of Property (x) to the Proponent, (y) to any designees of the Proponent's right to receive execution of a Deed, or (z) to any Third Party Purchaser pursuant to a Third Party Contract.  For the avoidance of doubt, this paragraph shall be given the broadest interpretation possible to further the interests of the Lender.

24.    <u>Corporate Authority</u>. Upon the Effective Date, all corporate actions contemplated by the Plan, if any, shall be deemed authorized and approved in all respects, regardless of whether such actions occur before or after the Effective Date.

25.    <u>Post-Confirmation Date Management</u>. On the Confirmation Date, pending the Effective Date, the Debtor shall continue to manage its property in accordance with previous Cash Collateral Orders, subject to this Confirmation Order's authorization to make the Cash Transfers as provided in the Plan.

26.    <u>Post-Effective Date Operations</u>. The Wind Down Officer shall make Distributions to holders of Allowed Claims under the Plan, and to take any other steps in furtherance thereof or, if applicable, as may be reasonably necessary or appropriate to wind-down its affairs and its Estate, including filing and prosecuting objections to Claims, if any.

27.    <u>Statutory Fees and Post-Confirmation Reports</u>. The Wind Down Officer shall be responsible for filing the quarterly post-confirmation reports and any reports required by the Court pursuant to Local Bankruptcy Rule 3022-1, and the Wind Down Officer shall effectuate payment of all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. § 3717 on behalf of the Reorganized Debtor, who shall remain responsible therefore until the earlier of (i) conversion or dismissal of such Debtor's Chapter 11 Case; or (ii) entry of a Final Decree closing the jointly administered Chapter 11 Cases.

28.    <u>Filing of Documents</u>. Pursuant to sections 105, 1141(c), 1142(b), and 1146(c) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, is hereby directed to accept and record any and all documents and instruments necessary, useful, or appropriate to effectuate, implement, and consummate the transactions contemplated by the

Plan, and any and all notices of satisfaction, release, discharge, or assignment of any Lien, Claim, or encumbrance not expressly preserved by the Plan.

### <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

29.     <u>Assumption of Executory Contracts and Unexpired Leases</u>. On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is one that Proponent elects to reject, in which case any Allowed Claim arising from such rejection shall be a Class 2 Claim.

30.     <u>Assumption and Assignment of Executory Contracts and Unexpired Leases in Connection with Sale</u>.

(a) In the event of a Sale, on the Sale Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party, if any, as designated by Purchaser by notice to be filed with the Court not less than seven (7) days prior to the Sale Closing Date, shall be deemed assumed and assigned to the successful purchaser in accordance with section 365 of the Bankruptcy Code, (the "<u>Assumed Contracts</u>"), except for those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement, which shall be deemed rejected, in which case any Allowed Claim arising from such rejection shall be a Class 2 Claim.

(b) Notwithstanding the foregoing, the License Agreement, the TCA and any ancillary contracts to the License Agreement, including but not limited to the Master Technology Agreement with SCH (the "<u>Ancillary Agreements</u>"), shall be deemed

assumed upon the Effective Date. For assumption of the License Agreement, on the Effective Date the Reorganized Debtor shall pay a total cure of $915,773.30 to HHF consisting of $670,773.30 in outstanding unpaid prepetition amounts due under the License Agreement, and $245,000.00 in reimbursement of HHF's attorneys' fees and costs (the "HHF Cure"). On the Effective Date, the Reorganized Debtor and Wind Down Officer shall perform and satisfy on a going forward basis all obligations required by the License Agreement, and all rights of HHF under the License Agreement are expressly preserved.

(c) All of the Debtor's active contracts and agreements between and among the Debtor and Oracle, successor in interest to MICROS Systems, Inc. are deemed assumed by entry of this Order. In connection with the assumption of the Oracle agreements, upon the occurrence of the Effective Date, Debtor shall pay to Oracle a cure in the amount of $2,137.43 in satisfaction of the current monetary defaults under the agreements. In the event the Reorganized Debtor seeks to assume and assign any of the Oracle agreements, by way of a Sale or otherwise, Oracle reserves its right to object to the proposed assumption and assignment pursuant to applicable law and section 365 of the Bankruptcy Code. Notwithstanding the foregoing, no contract between the Debtor and Oracle shall be assumed and assigned without: (1) Oracle's prior written consent; (2) cure of any default under such contract, if any; (3) the provision to Oracle of satisfactory adequate assurance of future performance by the ultimate purchaser and/or its assignee; and (4) execution by the Debtor or its successor and the assignee of mutually agreeable assignment documentation in a final form which may be negotiated prior to closing of the Sale.

31.    <u>Approval of Assumption or Rejection</u>. Entry of this Confirmation Order shall constitute the approval, pursuant to sections 363(b), (f) and (m) and 365(a) and (f) of the Bankruptcy Code, of (i) the assumption or assumption and assignment of the Assumed Contracts; and (ii) the rejection of the remaining Executory Contracts or Unexpired Leases.

32.    <u>Assumption Cure Payments</u>. In the event of a Sale, except with respect to the License Agreement and the Ancillary Agreements and except as otherwise agreed to by the Proponent and the Successful Purchaser, on the Sale Closing Date, shall cure any and all undisputed defaults under any Assumed Contracts. Other than with respect to the specific treatment of the License Agreement and the Ancillary Agreements specifically treated as above, unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Effective Date. Other than with respect to the License Agreement and the Ancillary Agreements, Proponent shall have no liability for any cure payment with respect to any Assumed Contract. Unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Sale Closing Date. Proponent shall have no liability for any cure payment with respect to any Assumed Contract.

33.    <u>Rejection Claims</u>. A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor and Proponent no later than thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a

bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the later of (a) the Effective Date or (b) if, in the event of a Sale, those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement pursuant to Section 7.2 of the Plan.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor's Estate, its successors or its properties, subject to Bankruptcy Rule 3003. Any Proof of Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease of the Debtor shall be treated as a Class 2 Claim if such claim is timely filed.

## ADMINISTRATIVE CLAIMS

34.    A notice setting forth the Administrative Claim Bar Date will be filed on the Bankruptcy Court's docket and served (with the notice of the Effective Date) on any creditor against whom the Secured Creditor seeks to enforce the Administrative Claim Bar Date. No other notice of the Administrative Claim Bar Date will be provided. No Administrative Claim Bar Date notice shall be required with respect to Administrative Claims to be paid in the ordinary course, and ordinary course Administrative Claims shall be paid in the ordinary course, subject to any valid non-bankruptcy defenses to payment that may exist.

35.    All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Fee Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtor and counsel for the Secured Creditor by the Administrative Claim Bar Date. Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court., subject to Bankruptcy Rule 3003.

36.     Unless the Proponent or the Debtor objects to a timely filed and properly served Administrative Claim by the applicable objection deadline, or such Administrative Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Claim shall be deemed allowed in the amount requested. If the Proponent or the Debtor objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount.

37.     Each holder of an Allowed Administrative Claim (other than any Allowed Administrative Claim held by Proponent or any Fee Claims or Statutory Fees) shall be paid in full, in cash, by the Wind Down Officer, on or as soon as reasonably practicable after the later of the Effective Date or the Closing Date, as applicable, and the date on which such Claim becomes an Allowed Administrative Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Claim and the Wind Down Officer or ordered by the Bankruptcy Court. Holders of Administrative Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.  For the avoidance of doubt, the Allowed Claim of the New York State Department of Taxation and Finance in the amount of $40,693.82 shall be paid on the Effective Date.

38.     Notwithstanding the foregoing, the Debtor shall remain obligated to and shall continue to pay all post-petition franchise fees to HHF pursuant to the License Agreement, in the ordinary course as they become due, including but not limited to, any post-petition franchise fees that have accrued up to and through the Closing Date. Notwithstanding anything in the Plan or any order approving the Plan, HHF need not file an application for payment of any administrative claim, and any amounts due under the License Agreement shall be paid in the ordinary course.

39.    <u>Statutory Fees</u>. The Statutory Fees are Unimpaired, but Proponent reserves the right to challenge the amount and the basis for determination by the U.S. Trustee of any Claim for Statutory Fees owing to the U.S. Trustee. All Statutory Fees incurred by the Debtor prior to the Effective Date and not yet paid shall be paid by the Wind Down Officer on the Effective Date in accordance with the applicable schedule for payment of such fees including any interest thereon. Until the Chapter 11 Case is closed by entry of a final decree of the Bankruptcy Court, the Reorganized Debtor or Proponent shall pay all additional Statutory Fees incurred in accordance with the applicable schedule for the payment of such fees including any interest thereon. Commercially reasonable efforts shall be used to effectuate closing of this Case as soon as practicable after effectuation of the distributions provided hereunder.

40.    <u>Fee Claims</u>.    (a) All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on the Debtor and Proponent on or before the Fee Claims Bar Date.

(b)    Any Fee Claim that is not asserted in accordance with Section 2.5 of the Plan shall be deemed Disallowed and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Fee Claim against any of the Debtor, the Wind Down Officer, or any of their respective assets or property.

(c)    Each holder of an Allowed Fee Claim shall be paid in Cash in an amount equal to its Allowed Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

(d)    Commencing on the Effective Date, the Wind Down Officer shall hold in reserve the sum of $700,000.00 (the "<u>Fee Claims Reserve</u>") in connection with anticipated Fee Claims.

The Wind Down Officer shall hold the Fee Reserve until determination of all Fee Claims filed on

or before the Fee Claims Bar Date.  Allowed Fee Claims shall be paid as provided in paragraph

(c) above.  After determination of all Fee Claims that shall have been filed on or before the Fee

Claims Bar Date, and after payment of all Allowed Fee Claims, the Wind Down Officer shall

deliver to Secured Creditor any Fee Claims Reserve remaining after such payments of Allowed

Fee Claims.

## EFFECT OF CONFIRMATION

41.    <u>Satisfaction of Claims</u>. Except as otherwise provided in the Plan or this

Confirmation Order, the rights afforded in the Plan and the treatment of all Claims and Interests

under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all

Claims and Interests of any nature whatsoever, including any accrued post-petition interest, against

the Reorganized Debtor or the Estate, assets, properties or interests in property. Except as

otherwise provided in the Plan or this Confirmation Order, all Persons shall be precluded and

forever barred from asserting against the Reorganized Debtor or the Estate any event, occurrence,

condition, thing, or other or further Claims, Interests or causes of action based upon any act,

omission, transaction, or other activity of any kind or nature that occurred or came into existence

prior to the Effective Date, whether or not the facts of or legal bases therefore were known or

existed prior to the Effective Date.

42.    <u>Post-Effective Date Evidence of Claims or Interests</u>. Except as otherwise provided

for in the Plan, notes, bonds, stock certificates, and other evidence of Claims against or Interests

in the Debtor shall, upon the Effective Date, be of no further force or effect and shall represent

only the right to participate in distributions contemplated by the Plan.

43.     <u>Plan Binding on All</u>. Pursuant to section 1141(a) of the Bankruptcy Code, except as provided in section 1141(d)(3), from and after the Confirmation Date, the Plan shall be binding upon the Debtor, all holders of Claims against and Interests in the Debtor, and any other party-in-interest in this Chapter 11 Case and their respective successors and assigns, regardless of whether the Claims or Interests of such Holders or obligations of any party-in-interest (i) are in a Class that is impaired under the Plan; (ii) have accepted the Plan; or (iii) have filed a Proof of Claim in these Chapter 11 Cases.

44.     <u>Automatic Stay</u>. The automatic stay of section 362 of the Bankruptcy Code shall remain in effect until the Effective Date, other than as previously modified by order of the Bankruptcy Court.

45.     <u>Preservation of Causes of Action</u>. Except as otherwise provided in the Plan or this Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action the Debtor or the Estate may have against any person or entity is preserved, including without limitation any and all Causes of Action under sections 502, 510, 522, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code. The Proponent shall have the sole power to bring (and to elect not to bring) any of the foregoing; *nevertheless,* if Proponent or Designee is the Purchaser, Proponent or the Designee shall have the exclusive right to direct, manage, and control the pursuit of such causes of action.

46.     <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and/or any other amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

## INJUNCTION AND EXCULPATION

47.    <u>Injunction</u>. Except as otherwise provided in the Plan or this Confirmation Order, with respect to the Debtor's obligations under the Plan, the entry of this Confirmation Order shall forever stay, restrain, and permanently enjoin, with respect to any Claim held against the Debtor's Estate as of the date of entry of this Confirmation Order: (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover, or offset from the Reorganized Debtor, the Property, or from property of the Estate that has been or is to be distributed under the Plan; and (ii) the creation, perfection, or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be distributed under the Plan. Except as otherwise provided in this Confirmation Order, entry of this Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset from the Property, or from property of the Estate, any Claim, obligation or debt that was held against the Property or from property of the Estate by any person or entity as of the Confirmation Date. The entry of this Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims.  For the avoidance of doubt, other than as provided expressly in Section 8.3 of the Plan, nothing in this Order is intended to affect the liability of any other Person or entity on, or the property of any other Person or entity for, any Claim.

48.    <u>Exculpation</u>. To the extent permitted under 11 U.S.C. § 1125(e), neither Proponent, the Debtor, and to the extent the following parties served as estate fiduciaries during the case, their respective members, partners, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "<u>Exculpated Parties</u>") shall have or incur any liability to

any entity for any action taken or omitted to be taken which occurred from and on the Petition

Date up to and including the Effective Date in connection with or related to matters covered by 11

U.S.C. § 1125(e) except for bad faith, willful misconduct, gross negligence, breach of fiduciary

duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that

causes damages, and/or ultra vires acts.  Notwithstanding any other provision of the Plan or this

Order, nothing in Sections 8.2 or 8.3 of the Plan shall (a) effect a release of any Claim by the

United States Government or any of its agencies or any state and local authority whatsoever,

including, without limitation, any Claim arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local authority

against the Exculpated Parties, nor shall anything in Sections 8.2 or 8.3 of the Plan enjoin the

United States or any state or local authority from bringing any Claim, suit, action or other

proceedings against any of the Exculpated Parties referred to herein for any liability whatever,

including, without limitation, any Claim, suit or action arising under the Internal Revenue

Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state

and local authority, nor shall anything in this Plan exculpate any party from any liability to the

United States Government or any of its agencies or any state and local authority whatsoever,

including liabilities arising under the Internal Revenue Bankruptcy Code, the environmental laws

or any criminal laws of the United States or any state and local authority against the Parties referred

to herein, or (b) effect a release of any Claim of Proponent or any of its affiliates, including, without

limitation, any Claim arising out of or under any guarantees executed in connection with the Class

1 Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections

8.2 or 8.3 of the Plan enjoin Proponent from bringing any Claim, suit or action or other proceeding

under or arising out of the Guarantees or any environmental law, except that, on the Effective Date,

the Guaranty is released. For avoidance of doubt, nothing contained in the Plan or Confirmation

Order is intended to alter, change, or otherwise modify HHF's rights with respect to the License

Agreement, the Comfort Letter with Proponent or the personal guaranty of Jubao Xie dated as of

October 15, 2014 on the License Agreement.

## **RETENTION OF JURISDICTION**

49.     <u>As Provided in the Plan</u>. Notwithstanding the entry of the Confirmation Order and

the occurrence of the Effective Date, and without derogating from any retention of jurisdiction as

otherwise provided in this Confirmation Order, the Bankruptcy Court shall retain jurisdiction over

all matters arising in, arising under or related to the Chapter 11 Case to the full extent as provided

in Article 10 of the Plan.

50.     <u>Specific Jurisdiction Retained</u>. The retention of jurisdiction shall include, without

limitation, the following retention of jurisdiction:

(a)     Ensure the Plan is consummated, and to enter any Order pursuant to section

1142(b) of the Bankruptcy Code, to enter the Marshal Order, to compel the Debtor, the Interest

holders and any other necessary party, to take such action and execute such documents to effectuate

the Plan;

(b)     Consider any modification of the Plan proposed pursuant to section 1127 of

the Bankruptcy Code and Bankruptcy Rule 3019;

(c)     Allow, disallow, determine, liquidate, classify or establish the priority,

secured or unsecured status of any Claim or Interest, including without limitation, the resolution

of any request for payment of any Administrative Expense, the resolution of any and all objections

to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)    Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)    Ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of the Plan;

(g)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan;

(j)    Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or any contract, instrument, release or other agreement or document created in connection with the Plan;

(k)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, including the Confirmation Order, or any other order of the Bankruptcy Court;

(m)    Enter and implement such Orders as are necessary or appropriate if this Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or this Confirmation Order;

(o)    Determine any other matters that may arise in connection with or relate to the Plan, this Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan;

(p)    To adjudicate the Occupant Turnover Action (even if the Occupant Turnover Action remains pending as of date of the issuance of an order for a final decree closing the Chapter 11 Case);

(q)    To adjudicate any motion for sanctions or any other relief relating to the statements of the Court on the record at the conference on September 6, 2024 at which the Court issued a bench ruling in which it granted the motion of the Debtor to expunge the claims of W & D Consulting Corp.;

(r)     To adjudicate any disputes related to this Confirmation Order or the Sale; and

(s)     Enter a Final Order or decree concluding the Chapter 11 Case.

51.     <u>Post-Effective Date Jurisdiction</u>. Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order, and any final decree, including without limitation, the enforcement of any rights of the Debtor.

52.     <u>Failure of the Bankruptcy Court to Exercise Jurisdiction</u>. If the Bankruptcy Court abstains, exercises discretion, or is otherwise precluded from hearing any matter within the scope of its jurisdiction, nothing in the Plan or this Confirmation Order shall prohibit or limit the exercise of jurisdiction by any other tribunal of competent jurisdiction.

## GENERAL PROVISIONS

53.     <u>Incorporation of the Plan</u>. The Plan, attached hereto as **<u>Exhibit A</u>** is incorporated in full herein, together with all Plan Modifications approved by the Court. Failure specifically to include or refer to particular sections or provisions of the Plan or any related agreement in this Confirmation Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of the Bankruptcy Court that the Plan be confirmed, and such related agreements be approved in their entirety.

54.     <u>Non-Severability and Mutually Dependent</u>. The provisions of this Confirmation Order are non-severable and mutually dependent.

55.     <u>Effect of Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of the Bankruptcy Court or any other

court, in the absence of a stay of this Confirmation Order, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken in good faith under or in connection with the Plan prior to the Debtor's receipt of written notice of entry of any such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, in the absence of a stay of this Confirmation Order, any such act or obligation incurred or undertaken in good faith pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

56.     <u>Final Order; Authorization to Consummate Plan</u>. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof. ~~Notwithstanding Bankruptcy Rule 3020(e), this Confirmation Order shall take effect immediately upon its entry and~~ The Proponent is authorized to consummate the Plan immediately after **<u>the expiration of the 14-day stay imposed by Bankruptcy Rules 3020(e) and 6004(h)</u>** ~~entry of this Confirmation Order~~ and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan. [**PB 10.15.24**]. The Proponent is authorized to consummate the Plan ~~after entry of this Confirmation Order~~ subject to satisfaction of the conditions precedent to the occurrence of the Effective Date set forth in the Plan, or waiver of such conditions pursuant to the Plan. [**PB 10.15.24**]. The Proponent is authorized and directed to execute, acknowledge, and deliver any and all documents and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

57.     <u>Substantial Consummation</u>. The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, is deemed to occur on the first date, on or after

the Effective Date, on which distributions are made in accordance with the terms of the Plan to holders of any Allowed Claims.

58.    <u>Notice of Effective Date</u>. No later than five (5) business days following the occurrence of the Effective Date, the Proponent shall file notice of the Effective Date with the Bankruptcy Court. Notice of the Effective Date may be given simultaneously with notice of entry of this Confirmation Order so long as such notice is timely under the foregoing provisions.

59.    <u>Judicial Notice</u>. The Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the Clerk of the Court including all pleadings and other documents on file, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during the pendency of these Chapter 11 Cases.  For the avoidance of doubt, the Court takes judicial notice of the existence of documents filed with the Court and the occurrence of hearings held, but does not take judicial notice of the content of the documents included on the Court's docket or the substance of arguments made or evidence proffered or accepted at hearings held before the Court.

60.    <u>Confirmation Order Controls</u>. To the extent of any inconsistency between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall govern.

61.    <u>Effective Date</u>.  ~~Consistent with **Exhibit A** attached to this Confirmation Order,~~ The Effective Date shall mean the first business day which is after both (a) the date on which this Confirmation Order shall have become a Final Order and (b) **the expiration of the 14-day stay imposed by Bankruptcy Rules 3020(e) and 6004(h)**~~October 14, 2024~~. [**PB 10.15.24**].

62.    <u>Post Confirmation Status Conference.</u>  The Court shall conduct a Post Confirmation Status Conference on **November 7, 2024 at 2:00 pm**, by Zoom from Courtroom 601, U.S. Bankruptcy Court, Southern District of New York, One Bowling Green, New York, NY.

Dated:  New York, New York
        October 15, 2024

/s/ Philip Bentley
**Hon. Philip Bentley**
**United States Bankruptcy Judge**