# EXHIBIT A

**PERKINS COIE LLP**
1155 Avenue of the Americas, 22nd Floor
New York, NY 10036
Telephone: (212) 262-6900
Gary F. Eisenberg, Esq.
Email: geisenberg@perkinscoie.com

*Attorneys for Wilmington Trust, National Association, as Trustee*
*for the benefit of the Registered Holders of Commercial Mortgage*
*Pass-Through Certificates Series 2018-C6, Proponent Commercial*
*Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through*
*Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial*
*Mortgage Trust, Commercial Mortgage Pass-Through Certificates,*
*Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

GOLDEN SEAHORSE, LLC,
dba Holiday Inn Manhattan Financial District,[1]

                                    Debtor.

---------------------------------------------------------------x

Chapter 11

Case No. 22-11582 (PB)

**SECOND AMENDED PLAN OF REORGANIZATION OF WILMINGTON
TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF
THE REGISTERED HOLDERS OF COMMERCIAL MORTGAGE PASS-
THROUGH CERTIFICATES SERIES 2018-C6, COMMERCIAL MORTGAGE
TRUST 2018-C47, COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2018-C47 AND CSAIL 2018-C14 COMMERCIAL
MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2018-C14 AND AS AUTHORIZED
REPRESENTATIVE FOR HI FIDI B NOTE OWNER LLC AS PROPONENTS
AND SECURED CREDITORS**

---

[1] The Debtor's last four digits of its tax identification number is 4770. The Debtor's principal place of business is
    99 Washington Street, New York, New York.

Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC (collectively, "Secured Creditor" or "Proponent"), secured creditors of the above captioned debtor and debtor-in-possession hereby proposes the following Plan of Reorganization for debtor Golden Seahorse LLC ("Debtor" pursuant to the provisions of title 11 of Chapter 11 of the United States Code. Capitalized terms used herein shall have the meanings set forth in Article 1.A.

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

### A.     Definitions.

The following terms shall have the respective meanings specified below:

1.1     *"103 Washington"* means that portion of the Property located at 103 Washington Street, New York, including without limitation any portion of the Property occupied by any 103 Washington Occupant.

1.2     *"103 Washington Occupants"* means Yanhong Wang, former wife of the Guarantor, Zixin Xie, daughter of the Guarantor, any other Person or entity occupying any portion of the Property located at 103 Washington Street (other than pursuant to a written agreement with the Debtor that has been disclosed to Proponent since the Petition Date) and any transferee, assignee or successor of any of them or of any interest of any of them in any any portion of the Property located at 103 Washington Street.

1.3     *"Accepting Class"* means a Class that votes to accept the Plan in accordance with Section 1126 of the Bankruptcy Code.

1.4 "***Administrative Claim Bar Date***" means the first Business Day that is at least thirty (30) days after the earlier of the Closing Date or the Effective Date.

1.5 "***Administrative Claim***" means any right to payment constituting a cost or expense of administration incurred during the Chapter 11 Case of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; and (b) Fee Claims.

1.6 "***Allowed***" means, with reference to any Claim, a Claim (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor; (c) as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder; *provided*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Debtor shall retain all claims and defenses with respect to Allowed Claims that are Unimpaired pursuant to the Plan.

- 2 -

1.7     "***Assets***" means all of the rights, title and interest of the Debtor, whether tangible, intangible, intellectual, real, personal, or mixed that constitute property of the Estate within the purview of section 541 of the Bankruptcy Code, including without limitation the Property.

1.8     "***Assumed Contracts***" has the meaning assigned to such term in Section 7.2.

1.9     "***Assumption***" has the meaning as set forth in Section 3.1 of this Plan.

1.10     "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. § 101. *et seq.*, as amended from time to time, as applicable to this Chapter 11 Case.

1.11     "***Bankruptcy Court***" means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Case or any other court having jurisdiction over the Chapter 11 Case, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 to the United States District Court for the Southern District of New York.

1.12     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

1.13     "***Business Day***" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are authorized or required to close by law or executive order, or other legal holiday.

1.14     "***Case***" means the bankruptcy case commenced by the filing of the chapter 11 petition by the Debtor, with the docket number as captioned above.

1.15     "***Case Closure Order***" means an order entered closing the Case pursuant to 11 U.S.C. §350.

1.16     "***Cash***" means legal tender of the United States of America.

- 3 -

1.17    "*Cash Collateral*" means "cash collateral" as defined in 11 U.S.C. §363(a) together with Cash Collateral as defined in the Cash Collateral Order.

1.18    *"Cash Collateral Order"* means that certain Final Order (I) Authorizing the Debtor to Use Cash Collateral, (II) Granting Adequate Protection to the Pre-Petition Lenders, (III) Modifying the Automatic Stay and (IV) Granting Related Relief [ECF No. 38].

1.19    "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, right to make demand, right, Lien, indemnity, guaranty, suit, right to enforce an obligation or recover a liability or eliminate a loss or debt, damage, judgment, account, remedies, offset, power, privilege, license and franchise of any kind of character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law that entitles the Person in question to institute a judicial, administrative or alternative dispute resolution proceeding to obtain money or property, or to enforce a legal right against another Person.  Causes of Action also includes; (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.20    "*Chapter 11 Case*" means the above-captioned chapter 11 case commenced by the Debtor on the Petition Date in the Bankruptcy Court.

- 4 -

1.21    "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against the Debtor.

1.22    "***Class***" means any group of Claims or Interests classified as set forth in Article II of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.23    "***Class 1 Creditor Documents***" means all documents executed and delivered in connection with effectuation and implementation of the treatment under this Plan in favor of the Proponent amending, reaffirming or otherwise modifying any Loan Document (including without limitation in connection with any Assumption), it being understood that no Loan Document may be modified without Proponent's consent, to be granted, withheld or conditioned in its sole and absolute discretion.

1.24    "***Class 4 Distribution***" has the meaning as set forth in Section 3.4 of this Plan.

1.25    "***Closing Date***" means, in the event of a Sale, the closing date of such Sale.

1.26    "***Confirmation Date***" means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.27    "***Confirmation Hearing***" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.28    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.29    "***Creditor***" means the holder of a Claim.

1.30    "***Debtor***" has the meaning set forth in the preamble paragraph of the Plan.

1.31    "**Deficiency Claim**" means the Allowed Claims of any Creditor holding a Claim that is in part evidenced and/or secured by a Lien on the Property to the extent that such Claim is an Unsecured Claim as provided under Section 506(a) of the Bankruptcy Code.

1.32    "**Designee**" means the person or entity to whom Proponent elects to be the recipient of the Property Transfer upon the Sale (as defined in Article III of this Plan).

1.33    "**Disallowed**" means, with respect to any Claim, that such Claim has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.34    "**Disbursing Agent**" means the Wind Down Officer.

1.35    "**Disclosure Statement**" means the disclosure statement related to the Plan, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code; provided, however, that nothing in this Plan shall derogate from the right of Proponent to seek confirmation of the Plan without filing or obtaining approval of any Disclosure Statement.

1.36    "**Disputed**" means with respect to a Claim, that (a) is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under sections 502, 503 or 1111 of the Bankruptcy Code; or (b) any party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order; **provided**, *however*, that a Disputed Claim shall not include any portion of the Claim that is an Allowed Claim.

1.37    "**Disputed Claim Reserve**" means one or more reserve accounts to be funded with Cash in accordance with the terms of the Plan, for Disputed Claims.

1.38    "**Distribution**" means any initial or subsequent payment or transfer made under the Plan, including by the Disbursing Agent.

- 6 -

1.39    "***Effective Date***" means the first business day after both (a) the date on which the Confirmation Order shall have become a Final Order and (b) October 14, 2024.

1.40    "***Estate***" means the estate of the Debtor created under Section 541 of the Bankruptcy Code.

1.41    "***Executory Contract***" means a contract to which the Debtor is party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.42    "***Fee Claims***" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331 or 503(b) of the Bankruptcy Code in the Chapter 11 Case.

1.43    "***Fee Claims Bar Date***" means 4:00 p.m. (prevailing Eastern Time) on the date that is thirty (30) days after the Effective Date.

1.44    "***Final Order***" means an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended.  So long as such order has not been reversed, stayed, modified or amended, neither the filing or pendency of (i) a notice of appeal; motion for leave to appeal, motion for an extension of the time to file a notice of appeal or leave to appeal under Federal Rule of Bankruptcy Procedure 8002(d); (ii)  motion for reconsideration or rehearing or extension of the time in which to file a notice of appeal or motion for leave to appeal or motion for stay of such order; nor (iii) motion or other pleading seeking relief of any kind from the Bankruptcy Court or any other court with respect to such order, shall derogate from such order becoming a Final Order.

1.45    "***Free and Clear***" means, with respect to any property (including any Assets), free and clear of all Liens, security interests, Claims, encumbrances and interests (other than to a Holder

of a Claim as part of the treatment of such Claim under this Plan), including any Claim against the Debtor, Disbursing Agent, any Secured Creditor or their successors and assigns arising from, based upon, sounding in or relating to any theory of successor liability or claim or debt assumption.

1.46 "*General Unsecured Claim*" means any Claim against the Debtor, that is not (a) an Administrative Claim, (b) a Fee Claim, (c) a Priority Tax Claim, or (d) a Secured Claim, *provided*, *however*, that any Deficiency Claim on account of any under-Secured Claim shall be treated as a General Unsecured Claim. General Unsecured Claims do not include Statutory Fees.

1.47 "*Guarantor*" means Mr. Jubao Xie, the indirect holder of the majority of the equity interests in Hysendal.

1.48 "*Guaranty*" means that certain Guaranty of Recourse Obligations, dated September 18, 2018, executed by Guarantor and delivered to Ladder Capital Finance LLC, predecessor in interest of Secured Creditor.

1.49 "*HHF*" has the meaning as set forth in Section 2.3 of this Plan.

1.50 "*Holdback*" means the sum of $500,000.00, to be held by the Wind Down Officer and distributed in accordance with Section 3.4 of this Plan. Upon issuance of the Marshal Order, the Holdback shall be $0.00.

1.51 "*Holder*" means the Person that is the legal owner of a Claim or Interest.

1.52 "*Hotel*" has the meaning as provided in the License Agreement.

1.53 "*Hysendal*" means Hysendal USA LLC, the Debtor's sole member and sole holder of any Interest in the Debtor.

1.54 "*Impaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code. The Allowed Claim of Class 1 is deemed to be an Impaired Claim.

- 8 -

1.55 "***Interest***" means any equity security (as defined in section 101(16) of the Bankruptcy Code) of the Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtor, whether or not transferable, and any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Debtor, whether fully vested or vesting in the future, including, without limitation, equity or equity-based incentives, grants or other instruments issued, granted or promised to be granted to current or former employees, directors, officers, or contractors of the Debtor, to acquire any such interests in the Debtor that existed immediately before the Effective Date.

1.56 "***Lease***" means any lease to which the Debtor was a party as of the Petition Date.

1.57 "***License Agreement***" means that certain Holiday Inn® Hotel Change of Ownership License Agreement dated October 15, 2014 (as may have been amended) between HHF, as licensor, and the Debtor, as licensee.

1.58 "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.59 "***Loan Agreement***" shall mean that certain loan agreement dated as of September 18, 2018 between Proponent's predecessor in interest on the one hand and the Debtor on the other hand.

1.60 "***Loan Documents***" has the meaning as set forth in the Loan Agreement.

1.61 "***Marketing Agent***" shall mean any professional engaged by Proponent to assist in marketing and selling the Assets, to be selected by Proponent in its sole discretion.

1.62 "***Marketing Plan***" shall mean a marketing and sales process as approved by Proponent in its sole discretion, to be implemented by the Marketing Agent. The Marketing Plan may commence after the confirmation of this Plan but a Sale may only occur after the Effective Date.

- 9 -

1.63    ***"Marshal Order"*** shall mean an order from the Bankruptcy Court to the United States Marshal directing the removal of any 103 Washington Occupant from the Property, substantially in the form attached hereto as Schedule 1.63.

1.64    ***"Mediation Order"*** means that certain Stipulation and Order Authorizing and Directing Mediation Between (I) the Debtor and (II) Wilmington Trust, National Association, as TRUSTEE for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Wells Fargo Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 and CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as Authorized Representative for HI FIDI B Note Owner LLC [ECF No. 414].

1.65    ***"Mediation Settlement"*** means that certain settlement among the Secured Creditors, the Debtor and the Debtor's Insiders negotiated in that mediation conducted by the Hon. Robert Grossman, U.S.B.J. on June 25, 2024 pursuant to the Mediation Order (as supplemented by the terms agreed by the Debtor, Class 4 Interests and Secured Lenders as such terms are implemented through this Plan).

1.66    ***"Occupant Turnover Action"*** means the adversary proceeding filed in the Case entitled *Golden Seahorse LLC v. Yanhong Wang and Zixin Xie*, Adv. Proc. No. 24-04011, an action to recover turnover and possession of all or any portion of 103 Washington from any 103 Washington Occupant(s).

1.67    ***"Person"*** means an individual, corporation limited partnership, limited liability company or other entity.

1.68    ***"Personalty"*** has the meaning as set forth in Section 3.1 of this Plan.

- 10 -

1.69 "**Petition Date**" means November 29, 2022, the date the Debtor commenced this Chapter 11 Case.

1.70 "**Plan**" or "**Plan of Reorganization**" means this chapter 11 plan, including all appendices, exhibits, schedules and supplements hereto as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.71 "**Plan Obligations**" means the amounts required to be paid hereunder to the holders of Allowed Administrative, Priority, Class 1 and Class 2 Claims and Class 4 Interests.

1.72 "**Plan Supplement**" means a supplemental appendix to the Plan containing, among other things, form of applicable documents, schedules, and exhibits to the Plan to be filed with the Bankruptcy Court. The documents comprising the Plan Supplement may be filed on an iterative basis. The Proponent shall have the right to amend the documents contained in the Plan Supplement through and including the Effective Date, in accordance with Section 9.4 of the Plan, so long as the Plan Supplement does not alter the Plan Obligations or the timing of the satisfaction of the Plan Obligations or otherwise modify the Plan such that the Plan does not comply with 11 U.S.C. § 1127, thereby warranting additional action subject to Court approval.

1.73 "**Priority Claim**" means a Claim, other than an Administrative Claim, that is entitled to priority under Section 507 of the Bankruptcy Code.

1.74 "**Priority Tax Claim**" means any Secured Claim or General Unsecured Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.75 "**Proceeds**" means (a) all "proceeds" (as such term is defined in the UCC) and "products" (as such term is defined in the UCC) with respect to the Property, (b) all "proceeds,

- 11 -

products, offspring or profits" as any such terms are used in 11 U.S.C. §552; and (c) include, without limitation: whatever is receivable or received when Property is sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary; all rights to payment, including return premiums, with respect to any insurance relating thereto; all interest, dividends and other property receivable or received on account of the Property or proceeds thereof, (including all distributions or other income from the Property, all collections thereon or all distributions with respect thereto); and proceeds of any indemnity or guaranty payable to Debtor or Proponent from time to time with respect to any Property.

1.76   "**Professionals**" means those persons: (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code providing for compensation for services rendered prior to the Confirmation Date pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation has been Allowed by the Bankruptcy Court pursuant to Sections 503(b)(2), (4) or 506(c) of the Bankruptcy Code following proper application filed on notice and approved by the Court.

1.77   "**Proof of Claim**" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.78   "**Property**" means the real property owned by the Debtor as of the Petition Date.

1.79   "**Property Transfer**" has the meaning as set forth in Section 3.1 of this Plan.

1.80   "**Proponent**" has the meaning as set forth in the preamble paragraph of this Plan.

1.81   "**Purchaser**" means a Successful Purchaser or a Third Party Purchaser.

1.82   "**Released Parties**" has the meaning set forth in Section 8.3 herein.

1.83   "**Remaining Assets**" has the meaning as set forth in Section 3.1 of this Plan.

1.84   "**Reorganized Debtor**" means the Debtor on and after the Effective Date.

- 12 -

1.85   "***Required Distributions***" means payment of the Allowed Administrative Claims, Allowed Priority Claims and Allowed Class 2 Claims and the Class 4 Distribution on the terms and conditions set forth in this Plan.

1.86   "***Sale***" has the meaning as set forth in Section 3.1 of this Plan.

1.87   "***Sale Closing Date***" means the date of the closing of the sale of the Assets pursuant to a Sale conducted in accordance with this Plan.

1.88   "***Sale Contract***" means a written agreement between the Debtor or Proponent on the one hand and a Third Party Purchaser for the sale of the Property that provides for a Cash purchase price or as otherwise agreed between Proponent on the one hand and a Third Party Purchaser and is in any event subject to the terms of this Plan and the Confirmation Order.

1.89   "***Sale Proceeds***" means the net amount payable to the Reorganized Debtor from a sale of the Property.

1.90   "***Schedules***" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

1.91   "***Secured Claim***" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral as (i) agreed to by the holder of such Claim and the Debtor or (ii) determined by a Final order in accordance with section 506(a) of the Bankruptcy Code; or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code.

1.92   "***Secured Creditor***" means Proponent.

1.93   "***Single Unit***" has the meaning as set forth in Section 3.4 of this Plan.

- 13 -

1.94     ***"Single Unit Transfer"*** has the meaning as set forth in Section 3.1 of the Plan.

1.95     ***"Statutory Fees"*** means (a) all fees due and payable to the US Trustee pursuant to 28 U.S.C. § 1930, together with interest, if any, pursuant to 31 U.S.C. § 3717 and (b) any other fees of any kind payable to the Bankruptcy Court.

1.96     ***"Successful Purchaser"*** means the purchaser of the Assets who is either a Third Party Purchaser, Proponent or any other Person who pursuant to the Sale process closes on the acquisition of the Assets.

1.97     ***"TCA"*** means that certain Temporary Closure Agreement dated January 31, 2023 between HHF and Debtor, as may be amended.

1.98     ***"Tenant"*** means any tenant under any Lease.

1.99     ***"Third Party Contract"*** means a contract for the purchase of the Assets to a Person other than the Proponent or the Designee.

1.100     ***"Third Party Purchaser"*** means a party other than Proponent (or its nominee or the Designee) who is the purchaser of Assets pursuant to a Third Party Contract.

1.101     ***"UCC"*** means the Uniform Commercial Code in effect in the state in which the Bankruptcy Court is located.

1.102     ***"Unexpired Lease"*** means an unexpired lease to which the Debtor is party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

1.103     ***"Unimpaired"*** means, with respect to a Claim or Class of Claims, not "impaired" within the meaning of section 1124 of the Bankruptcy Code.

1.104     ***"U.S. Trustee"*** means the United States Trustee for Region 2, which includes the Southern District of New York.

- 14 -

1.105 **"Wind Down"** means, following the Effective Date, the process to sell, abandon, wind down, dissolve, liquidate or distribute any remaining assets of the Debtor's Estate in accordance with the Plan.

1.106 **"Wind Down Agreement"** means, (i) to the extent the Wind Down Estate does not take the form of a liquidating trust, the form of agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with the consent of the Secured Creditor) and pursuant to 11 U.S.C. § 1127, governing the person or entity charged with overseeing the tasks outlined in Section 4.2 of this Plan, or in the absence of any such agreement, the terms and conditions in Section 4.2 of this Plan or (ii) to the extent the Wind Down Estate takes the form of a liquidating trust, the form of liquidating trust agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time with the consent of the Secured Creditor), governing the Wind Down Estate, in each instance, in a form and substance reasonably acceptable to the Secured Creditor.

1.107 **"Wind Down Budget"** means, a budget for the Wind Down Estate which will reflect the amount necessary to effectuate the Wind Down, which budget may, after the Effective Date, be amended, modified, or supplemented from time to time by the Wind Down Officer in the Wind Down Officer's reasonable discretion; provided, that such budget and any amendment, modifications, or supplements thereto shall be subject to the consent of the Secured Creditor, to be granted in its sole discretion.

1.108 **"Wind Down Estate"** means the Estate commencing as of the date of the appointment of the Wind Down Officer under the Plan. The commencement of the Wind Down Estate shall not be deemed to be a transfer of any Assets.

- 15 -

1.109   ***"Wind Down Officer"*** means the Person appointed by the Secured Creditor as the Wind Down Officer as set forth under the "Control of Debtor" subpart of Section 3.1 of the Plan.

1.110   ***"Wind Down Provisions"*** means the provisions of this Plan creating the Wind Down Estate, appointing and empowering the Wind Down Officer, approving the Wind Down Agreement and otherwise enabling the Wind Down Officer, subject to the Proponent's power to change the Wind Down Officer, to control the Reorganized Debtor upon the Effective Date.

**B.**     **Interpretation: Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) unless otherwise specified, all references herein to "Sections" are references to Sections hereof or hereto; (d) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (e) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**C.**     **Controlling Document.**

- 16 -

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in any Disclosure Statement, any other instrument or document created or executed pursuant to the Plan, or any order (other than the Confirmation Order) referenced in the Plan, the Plan shall govern and control.

## ARTICLE II
## DESIGNATION OF CLAIMS AND INTERESTS

2.1 <u>Classification of Claims</u>. A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

2.2 <u>Summary of Classification</u>. The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan; (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or deemed to reject the Plan. In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims and Statutory Fees have not been classified.

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| Class 1 | Secured Claim of Proponent | Impaired | Yes (accepting) |
| Class 2 | General Unsecured Claims | Not Impaired | No |
| Class 3 | Claims of Insiders | Impaired | Deemed to accept pursuant to the Mediation Settlement |
| Class 4 | Interests | Impaired | Deemed to accept pursuant to the |

- 17 -

| | | | Mediation Settlement |
|---|---|---|---|

2.3    Administrative Claims.

(a)       A notice setting forth the Administrative Claim Bar Date will be filed on the Bankruptcy Court's docket and served (with the notice of the Effective Date) on any creditor against whom the Secured Creditor seeks to enforce the Administrative Claim Bar Date.  No other notice of the Administrative Claim Bar Date will be provided.  No Administrative Claim Bar Date notice shall be required with respect to Administrative Claims to be paid in the ordinary course, and ordinary course Administrative Claims shall be paid in the ordinary course, subject to any valid non-bankruptcy defenses to payment that may exist.  For the avoidance of doubt, only Holders of Administrative Claims (including those arising from the ordinary course costs and expenses incurred in operating the Debtor's business) who do not receive payment of their Administrative Claims ***and*** who are served with an Administrative Claim Bar Date notice must file Administrative Claims by the Administrative Claims Bar Date.

(b)       All requests for payment of Administrative Claims that accrued on or before the Effective Date (other than Fee Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtor and counsel for the Secured Creditor by the Administrative Claim Bar Date.  Any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court, subject to the provisions of FRBP 3003.

(c)       Unless the Proponent or the Debtor objects to a timely filed and properly served Administrative Claim by the applicable objection deadline, or such Administrative Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Claim shall be

- 18 -

deemed allowed in the amount requested. If the Proponent or the Debtor objects to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount.

(d)     Each holder of an Allowed Administrative Claim (other than any Allowed Administrative Claim held by Proponent or any Fee Claims) shall be paid in full, in cash, by the Disbursing Agent, on or as soon as reasonably practicable after the later of the Effective Date or the Closing Date, as applicable, and the date on which such Claim becomes an Allowed Administrative Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Claim and the Disbursing Agent or ordered by the Bankruptcy Court. Holders of Administrative Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

(e)     Notwithstanding the foregoing, the Debtor shall remain obligated to and shall continue to pay all post-petition franchise fees to Holiday Hospitality Franchising, LLC ("HHF") pursuant to the License Agreement, in the ordinary course as they become due, including but not limited to, any post-petition franchise fees that have accrued up to and through the Closing Date. Notwithstanding anything in the Plan or any order approving the Plan, HHF need not file an application for payment of any administrative claim, and any amounts due under the License Agreement shall be paid in the ordinary course.

2.4     <u>Statutory Fees - U.S. Trustee Fees</u>. The U.S. Trustee Fees are Unimpaired. All U.S. Trustee Fees incurred by the Debtor up to and including the Confirmation shall be paid prior to Confirmation, and fees incurred post-confirmation due and owing until the Final Decree is entered, the case is dismissed or converted to a case under Chapter 7 of the Code shall be paid by

the Wind Down Officer. The Wind Down Officer shall also be responsible for filing the quarterly post-confirmation reports and any reports required by the Court pursuant to Local Bankruptcy Rule 3022-1.

2.5 <u>Fee Claims</u>.

(a) All final applications for payment of Fee Claims shall be filed with the Bankruptcy Court and served on the Debtor and Proponent on or before the Fee Claims Bar Date.

(b) Any Fee Claim that is not asserted in accordance with this Section 2.5 shall be deemed Disallowed under this Plan and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, recoup, or recover such Fee Claim against any of the Debtor, the Disbursing Agent, or any of their respective assets or property.

(c) Each holder of an Allowed Fee Claim shall be paid in Cash in an amount equal to its Allowed Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

(d) Commencing on the Effective Date, the Wind Down Officer shall hold in reserve the sum of $700,000.00 (the "Fee Claims Reserve") in connection with anticipated Fee Claims. The Wind Down Officer shall hold the Fee Reserve until determination of all Fee Claims filed on or before the Fee Claims Bar Date. Allowed Fee Claims shall be paid as provided in paragraph (c) above. After determination of all Fee Claims that shall have been filed on or before the Fee Claims Bar Date, and after payment of all Allowed Fee Claims, the Wind Down Officer shall deliver to Secured Creditor any Fee Claims Reserve remaining after such payments of Allowed Fee Claims.

168772730.11

2.6    Priority Tax Claims.  Except as may be otherwise mutually agreed in writing between the Debtor or Proponent and any applicable Governmental Units, all Allowed Priority Tax Claims shall be paid by the Disbursing Agent on the latter of (a) the Effective Date or (b) pursuant to such terms and conditions as the holder of such Allowed Priority Tax Claim and Proponent shall have agreed.

## ARTICLE III
## TREATMENT OF CLAIMS UNDER THE PLAN

3.1    **Class 1**.  Class 1 consists of the Allowed Secured Claim of Proponent.

*Class 1 Treatment:*

The Allowed Secured Claim of Proponent shall be treated in Debtor's Case as follows.  After payment from the Cash Collateral of the Required Distributions, all of the Assets, including without limitation all of the Estate's: (i) Property, (ii) personal property used at, upon or in connection with the operation of the Property (the "*Personalty*") and (iii) other intangible assets of the Debtor, including without limitation all Leases (excluding (a) cash transferred pursuant to a Cash Transfer as defined below and (b) Avoidance Actions) as shall be designated by Proponent (the "*Remaining Assets*") shall be transferred (the "*Property Transfer*") through the occurrence of the Sale described below to be conducted on the terms and conditions contained herein.  Class 1 is Impaired, and each holder of an Allowed Class 1 Claim against Debtor is, by reason of being the Proponent, presumed to have voted to accept the Plan.  The Property Transfer may occur on such terms and conditions as Secured Creditor determines in its sole and absolute discretion. Notwithstanding the foregoing, upon payment of the Required Distributions, all Cash Collateral (including Cash Collateral received after the Confirmation Date) (less reserves the Disbursing Agent shall hold equal to the amount of Fee Claims timely filed in

- 21 -

accordance with Section 2.5 of this Plan, to be paid to Holders of Fee Claims to the extent such Fee Claims shall be Allowed by the Bankruptcy Court) shall be transferred to Secured Creditor.

*Marketing and Sale.*

The Secured Creditor may market the Assets pursuant to the Marketing Plan. The Secured Creditor may conduct one or more sales (each, a "*Sale*") of the Assets on such terms and conditions as Secured Creditor determines in its sole and absolute discretion. A Sale may occur at any time on or after the Effective Date as Secured Creditor shall determine. All net proceeds of any Sale shall be paid to Secured Creditor. At Secured Creditor's election, title to Assets may be transferred to Secured Creditor or its Designee that is an Affiliate of Secured Creditor. The vesting of the title to the Assets pursuant to the preceding paragraph shall be entitled to the benefits of Section 1146(a) as set forth in the section below entitled "Transfer Taxes." Upon such transfer, Secured Creditor may conduct a Sale of the Assets on such terms and conditions as Secured Creditor determines in its sole and absolute discretion. All net proceeds of any Sale shall be paid to Secured Creditor.

At Proponent's election, a Sale may be accompanied by Proponent's agreement, in lieu of the Sale being Free and Clear, to permit the purchaser at the Sale to assume the existing Loan Documents (subject to such modifications to which Proponent in its sole and absolute discretion shall agree) (any, an "*Assumption*"). Proponent need not offer Assumption to any purchaser and may determine to offer Assumption to certain purchasers and not others. Neither the Debtor nor Hysendal shall have any right to claim any Assumption.

- 22 -

At Proponent's election, in its sole and absolute discretion, as an alternative to a Sale, treatment of the Class 1 Claim may be satisfied by transfer of the Single Unit (with the Single Unit and the organizational documents of the Debtor modified on terms and conditions acceptable to the Proponent in its sole and absolute discretion so long as otherwise not inconsistent with the Plan) as set forth herein (the "Single Unit Transfer"). Any Single Unit Transfer is subject to the terms and conditions of the License Agreement. For avoidance of doubt and notwithstanding anything in the Disclosure Statement, Plan or Confirmation Order, the License Agreement may not be assigned or transferred through any Single Unit Transfer. In order to operate as a Holiday Inn® after any Single Unit Transfer, then (i) if the Single Unit Transfer is to the Proponent, then the Proponent will need to have exercised its rights under and in accordance with the Comfort Letter (as defined in Section 4.2(a)(2)) to obtain a new license agreement with HHF, which HHF shall process if Proponent is in compliance with the terms of the Comfort Letter or (ii) if the Single Unit Transfer is to a third party, then any third party transferee will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion. In the event the Proponent or third party transferee of the Single Unit Transfer does not enter into a new license agreement with HHF upon Proponent's election to make a Single Unit Transfer, the License Agreement will be terminated as of 12:01 a.m. on the date that the Single Unit Transfer is made, and the provisions set forth in this Plan (including, without limitation, Section 4.2(a)(3) herein) in the event the Purchaser does not enter into a new license with HHF shall apply to the same extent and force for the circumstances of the Proponent or third party transferee of the Single Unit Transfer not entering into a new license agreement with HHF. All proceeds of any Single Unit Transfer

- 23 -

("Single Unit Transfer Proceeds") shall be treated as Sale Proceeds and all provisions of the Plan and this Order that apply to Sale Proceeds shall apply to Single Unit Proceeds. An Assumption is permitted in connection with any Single Unit Transfer.

*Control of Debtor.*

Pending the occurrence of a Sale, commencing as of the Effective Date, Secured Creditor shall have the absolute and unconditional right to name a Wind Down Officer for the Reorganized Debtor. Notwithstanding any provision of any certificate of formation, operating agreement or other instrument with respect to the Debtor, the Wind Down Officer shall have the sole and exclusive power to manage and operate the Reorganized Debtor in accordance with this Plan. Secured Creditor may record an amendment to the Debtor's certificate of formation to reflect this. The Wind Down Officer may hire such professionals and management companies as the Wind Down Officer in its business judgment determines. Secured Creditor may replace any Wind Down Officer at any time. The Wind Down Officer may be an affiliate of Secured Creditor or of any affiliate of Secured Creditor. The Wind Down Officer shall not owe any fiduciary or other duty of any kind to any member of Debtor but shall owe such duties to Secured Creditor as provided in the Wind Down Agreement. Upon the Effective Date, the Wind Down Officer shall have control and management of the Reorganized Debtor including the right to make Distributions as set forth in the Plan. All rights of distribution, control or management or otherwise arising out of or relating to being a member of Debtor shall be suspended upon the Effective Date. However, after the Effective Date, the Reorganized Debtor shall continue to exist until the occurrence of a Sale.

- 24 -

Upon entry of the Confirmation Order but prior to the Effective Date, the Debtor and its representatives shall coordinate and cooperate with the Wind Down Officer to effectuate an orderly and efficient transition from the Debtor's current management to the Wind Down Officer. This transition shall, without limitation, include execution and delivery of financial account authorizations for the Wind Down Officer to take effect on and after the Effective Date, coordination with current vendors and NYCHH and implementation of any provisions of this Plan which by their terms are to be implemented prior to the Effective Date. Upon the Effective Date, any acts performed by the Wind Down Officer in connection with this transition shall be deemed ratified *nunc pro tunc* to the extent not already authorized by this Plan or Confirmation Order.

### Vesting of Assets

Except as otherwise provided in the Plan, on the Effective Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Assets (other than those distributed to Holders of Claims or Interests pursuant to this Plan or transferred pursuant to a Sale) shall vest in the Reorganized Debtor, subject to (a) the Liens and security interests of Secured Creditor to the extent of the Loan Documents and (b) the Wind Down Provisions. The Loan Documents shall remain in full force and effect (other than the Guaranty upon its release as provided in this Plan).

### Sale Proceeds

Provided the Required Distributions shall have been made, the Sale Proceeds shall be paid to Secured Creditor. No other Person shall have any claim or right to any of them. The vesting of the title to the Assets pursuant to any Sale shall be entitled to the benefits of Section 1146(a) as set forth in the section below entitled "Transfer Taxes."

- 25 -

Any Property Transfer shall vest Proponent, the Designee or the Purchaser (as applicable) with good and marketable title to the Assets Free and Clear other than as provided above (and in particular other than as provided with respect to an Assumption and the assumption of the License Agreement). The Property Transfer will be on such terms and conditions as Secured Creditor determines in its sole and absolute discretion. The transferee of any Property Transfer shall be found and determined to be a good faith purchaser, as defined in 11 U.S.C. §363(m).

*Transfer Taxes*

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Plan or the Sale shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax. Such exemption specifically applies, without limitation, to any transfer of any Assets to Secured Creditor pursuant to the section above headed "Marketing and Sale" and to any immediate subsequent transferee.

*Document Execution and Delivery*

Upon the Effective Date, the Wind Down Officer shall be authorized to sign in the name of the Reorganized Debtor all documents that Proponent determines in its sole discretion will further the management and operation of the Reorganized Debtor pending

- 26 -

any Sale or further any Property Transfer (including such documents in aid of issuing, preserving or transferring any license to operate the Property and including pursuant to any Third Party Contract) or are otherwise reasonably necessary or useful for the carrying out of the transactions contemplated under this Plan.

3.2     **Class 2**.  Class 2 shall consist of Holders of General Unsecured Claims against the Debtor.  Holders of Allowed General Unsecured Claims in Class 2 shall receive on the Effective Date one hundred percent (100%) of such Allowed General Unsecured Claim plus such other amounts (including interest) to which Holders may be entitled so as to render them not Impaired, in full and final satisfaction of such Allowed General Unsecured Claim.  Class 2 is not Impaired, and each holder of an Allowed Class 2 Claim against the Debtor is conclusively presumed to have accepted the Plan.

3.3     **Class 3**:  Class 3 consists of Insiders who are the Holders of Claims against the Debtor.  Unless otherwise determined by the Bankruptcy Court by Final Order, the only Holder of a Class 3 Claim against the Debtor is Hysendal.  Each Insider who is the Holder of a Claim against the Debtor shall receive the following treatment.  Pursuant to the Mediation Settlement, each Insider is presumed to accept the Plan and, pursuant to the Mediation Settlement, has agreed the only Required Distributions to Class 3 and to Class 4 shall be the Class 4 Distribution to Class 4 as set forth below in Section 3.4.  Class 3 is Impaired but is presumed to have accepted the Plan on account of the Mediation Settlement.

3.4     **Class 4**:  Class 4 consists of Hysendal's Interests in the Debtor.  As set forth in the Debtor's Schedules, Hysendal is the only Holder of an Interest in the Debtor and hence the only Holder in Class 4 of the Plan.  On the Effective Date, the Holder of the Class 4 Interest in the Debtor shall receive on account of its Class 4 Interest the aggregate sum of $12,000,000.00, less

- 27 -

the Holdback (if applicable), which Holdback (subject to adjustment as provided in this Section 3.4) shall be paid to the Holder of the Class 4 Interest upon the earlier of (1) the date of entry of the Marshal Order or (2) vacancy by all 103 Washington Occupants (the treatment of Class 4 provided in this sentence, the "Class 4 Distribution"). The Wind Down Officer and Proponent shall have a lien on the Holdback to secure reasonable legal expenses and disbursements (not to exceed $100,000.00, conditioned on the cooperation of Hysendal and Guarantor as provided in the next sentence) (the "Legal Expense Cap") of the Reorganized Debtor in procuring the vacancy by all 103 Washington Occupants. Hysendal and Guarantor shall cooperate fully with the Wind Down Officer's efforts to procure the vacancy by all 103 Washington Occupants. Further, on the Effective Date, and subject to the provisions of Section 4.2(b) below, (i) all Interests shall be cancelled and one unit of membership interest in the Debtor (the "Single Unit") shall be issued to the Wind Down Officer to hold in trust as custodian for the benefit of the Secured Creditor and the Single Unit shall be recorded on the books and records maintained by the Wind Down Officer; (ii) each former holder of any Interests shall neither receive nor retain any property of the Estate or direct interest in property of the Estate on account of such Interests; provided that, for the avoidance of doubt, no former holder of any Interests on account of the Single Unit shall retain any voting rights in the Wind Down Estate. Unless otherwise determined by the Wind Down Officer with the approval of the Proponent, which Proponent may grant, withhold or condition in its sole and absolute discretion, on the date the Case Closure Order is entered in accordance with the Plan, the Single Unit issued on the Effective Date shall be deemed cancelled and of no further force and effect; provided that (i) such cancellation does not adversely impact the Estate; and (ii) the continuing rights of former holders of Interests (including through their interest in Single Unit or otherwise) shall be nontransferable except (A) by operation of law or (B) for administrative

transfers where the ultimate beneficiary has not changed, subject to the Wind Down Officer's consent. Class 4 is Impaired but is presumed to have accepted the Plan on account of the Mediation Settlement.

3.5    **No Voting**.  As the proponent of the Plan, Proponent is deemed to have accepted the Plan.  No voting on the Plan is to take place.

**ARTICLE IV**
**IMPLEMENTATION OF THE PLAN**

4.1    <u>Plan Funding</u>.  As a condition to effectiveness of this Plan, there must occur the following: (a) the Confirmation Order shall have become a Final Order, unless Secured Creditor in its sole and absolute discretion waives this condition; and (b) the payment of the Required Distributions shall have been made.  Upon the making of the Required Distributions and resolution of all Administrative, Priority and Unsecured Claims, the Wind Down Officer may request entry of the Case Closure Order.   The Sale may occur after entry of the Case Closure Order. Notwithstanding entry of the Case Closure Order, the provisions of this Plan and the Confirmation Order shall remain in full force and effect, enforceable in any forum before any tribunal, agency or other governmental entity.  The Sale of the Property, and execution and delivery of a deed for the Property to either Secured Creditor, the Designee or any Third Party Purchaser each is intended to be exempt from otherwise applicable transfer taxes in accordance with Section 1146(a) of the Bankruptcy Code (whether occurring before or after the Case Closure Order).  The Plan shall be funded with (a) Cash on hand and (b) the net proceeds of a Sale of the Assets.

4.2    <u>Implementation</u>.

(a)    <u>Sale of Property</u>.

(1)    *The Sale Process*.  Through the assistance of the Marketing Agent, there shall be conducted a Sale process in accordance with such procedures as Proponent shall, in

- 29 -

its sole and absolute discretion, determine to deploy. Any Sale shall be, pursuant to Bankruptcy Code Section 1123(a)(5), free and clear of any and all Liens, Claims, and encumbrances (except for Assumed Contracts) to the fullest extent provided by the Bankruptcy Code or other applicable law. Notwithstanding the foregoing, the License Agreement cannot be transferred through the Sale, and will be terminated as of 12:01 a.m. on the Closing Date, unless Proponent asserts its rights under the Comfort Letter as further described in the "Vesting of Assets" subsection below or unless otherwise agreed by both HHF and Proponent. For avoidance of doubt and notwithstanding anything in the Disclosure Statement, Plan or Confirmation Order, the License Agreement may not be assigned or transferred through any Sale. In order to operate as a Holiday Inn® after any Sale, any Purchaser will need to apply for a new license agreement with HHF, which may or may not be approved in HHF's sole and absolute discretion.

(2)     *Vesting of Assets*. Except as otherwise provided in the Plan, on the Closing Date, to the fullest extent provided by the Bankruptcy Code or other applicable law, the Property shall vest in the Successful Purchaser Free and Clear (other than as provided in any Assumption) and all net proceeds of the Sale shall be paid to Secured Creditor. Upon a Sale to Proponent, Proponent may exercise its rights under and in accordance with the Comfort Letter dated February 5, 2019 with HHF ("Comfort Letter"), and the Plan shall not assign, transfer, sell, or otherwise convey the License Agreement or assign Proponent's rights under the Comfort Letter to any Designee or Third Party Purchaser.

(3)     *HHF Matters*. In the event the Purchaser does not obtain a new license agreement to become effective contemporaneously with the Closing Date, the Reorganized Debtor (which shall include the Wind Down Officer) shall be responsible to comply with the de-identification provisions of the License Agreement. Notwithstanding the foregoing, nothing in the

- 30 -

Plan or in any order confirming the Plan shall prevent or limit HHF from enforcing all obligations of the Reorganized Debtor (including but not limited to de-identification obligations) pursuant to the License Agreement, nor shall it operate to modify, waive, or release the Reorganized Debtor from (i) any de-identification or other obligations under the License Agreement, or (ii) any continuing or surviving obligations and post-termination monetary obligations of the Reorganized Debtor or any continuing or surviving rights of the HHF under the License Agreement, including but not limited to any and all indemnification obligations and liquidated damages provisions. All liquidated damages, ad assist reimbursements, and any other fees due to HHF under the License Agreement shall be paid by no later than upon the Sale. Nothing in the Plan or any order confirming the Plan shall limit, impair or otherwise affect the HHF's rights to pursue damages against the Reorganized Debtor, Wind Down Officer, Purchaser, or any other third-party, arising from any unauthorized use of HHF's intellectual property related to the applicable Hotel or the termination of the License Agreement. Prospective buyers may obtain a new license application by contacting:

> Kevin Winkowski
>
> Director, Transactions & Asset Management at IHG
>
> 3 Ravinia Drive, Suite 100, Atlanta, GA 30346
>
> Telephone: 678-477-3508
>
> Email: kevin.winkowski@ihg.com.

Prospective buyers are encouraged to contact Mr. Winkowski for the application and to submit a complete application package as early as possible. The Reorganized Debtor, Proponent, and HHF do not guarantee a response to an application within any certain time period.

168772730.11

Notwithstanding anything in the Plan, Sale Contract, or any order approving the foregoing, none of the System, Data, or Marks, as the terms are defined in the License Agreement, or other property or information, including intellectual property, subject to the License Agreement, shall be included in the Sale.

In the event the Purchaser does not enter into a new license agreement with HHF in connection with a Sale, then upon provision by the Proponent to HHF of the End Date (as defined below), which the Proponent or Reorganized Debtor, as applicable, shall provide to HHF no later than one business day after entering into the Sale Contract with the Purchaser or Third Party Purchaser, HHF shall be permitted, but not required, to (a) immediately modify its reservations systems and booking channels so that they will not accept reservations for any stays at the Hotel that extend beyond the original estimated Closing Date (the "End Date") and (b) notify any guests booked at the Hotel for stays extending beyond the End Date that the Hotel will be leaving the System (as defined in the License Agreement) on the original estimated Closing Date and provide an opportunity for such guests to transfer their reservations to another IHG licensed hotel. HHF is also authorized to shut down its reservation system for the Hotel as of 3:00 p.m. ET on the last business day before the closing of the Sale. The Proponent or Reorganized Debtor, as applicable, shall notify HHF of the first anticipated Closing Date for the Hotel no later than one business day after entry into the Sale Contract, notify HHF of any revised Closing Date for the Hotel no later than one business day after reaching agreement with the Purchaser, and HHF may rely on such notifications with regard to the modification and shut down of the reservation system for the Hotel. For avoidance of doubt, the provisions set forth in this Plan (including, without limitation, this Section 4.2(a)(3)) in the event the Purchaser does not enter into a new license with

- 32 -

HHF shall apply to the same extent and force for the circumstances of the Proponent or third party transferee of the Single Unit Transfer not entering into a new license agreement with HHF.

(b)    <u>Control of Debtor</u>.   On the Effective Date, provided the Required Distributions are made, pending a Sale, the Control of Debtor provisions set forth in in Section 3.1 above shall take effect and shall constitute a sale for federal income tax purposes only.   After the Effective Date, the appointment of the Wind Down Officer and the making of the Required Distributions, Hysendal shall have no further right to distributions or management rights from, in to or over the Debtor or the Reorganized Debtor.   Upon the taking effect of the Control of Debtor provisions, title to all assets of the Reorganized Debtor under the Plan shall continue to vest in the Reorganized Debtor, Free and Clear, including from all Liens, encumbrances, charges, Claims, Interests of creditors and equity security holders arising on or before the Effective Date (other than as provided in the Class 1 Creditor Documents), and the Reorganized Debtor may operate its business, from and after the Effective Date, free from any restrictions imposed by the Bankruptcy Code or by prior Orders of this Court, subject to the Sale Proceeds provisions set forth in Section 3.1.   All Liens of any kind against any property of the estate of the Reorganized Debtor shall be discharged, extinguished, removed, expunged, or otherwise disallowed as against all property of the Estate of the Reorganized Debtor, other than Liens in favor of Proponent , pursuant to the Loan Documents, as may be amended with the consent of Proponent.   Nothing in this Plan prohibits Hysdendal from dissolving or winding up after the Effective Date.

(c)    <u>Appointment of Wind Down Officer</u>. The Wind Down Officer's retention shall commence on the Effective Date and shall continue until: (i) the Proponent dismisses the Wind Down Officer (which may occur either before or after entry of the Case Closure Order); (ii) the Bankruptcy Court enters an order removing the Wind Down Officer for cause; or (iii) the Wind

- 33 -

Down Officer voluntarily resigns (upon notice filed with the Bankruptcy Court if occurring prior to entry of the Case Closure Order) and a successor Wind Down Officer is appointed in accordance with the Plan.

(d)   <u>Wind Down Estate and Budget</u>.  On the Effective Date, the Wind Down Estate shall be funded in accordance with the Wind Down Budget for the Wind Down process.  An initial Wind Down Budget shall be filed with the Plan Supplement and may be amended, modified, or supplemented from time to time with the consent of the Secured Creditor.

(e)   <u>Causes of Action to Wind Down Estate</u>. On the Effective Date, any remaining assets and any Causes of Action of the Debtor's Estate (including without limitation the Occupant Turnover Action) (but excluding any Causes of Action against Released Parties) shall transfer to the Wind Down Estate automatically and without further action of the Bankruptcy Court.

(f)   <u>Wind Down Officer Authority</u>.  Subject to the provisions of this Plan, and in accordance with the Wind Down Agreement, the Wind Down Officer shall have the authority and right on behalf of the Reorganized Debtor, without the need for Bankruptcy Court approval (unless otherwise indicated), in furtherance of the Wind Down Officer's fiduciary duties to the creditor beneficiaries of the Wind Down Estate (until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan), and subject to consent of the Secured Creditor, to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)   make Distributions to holders of Allowed Claims in accordance with the Plan;

(ii)   exercise its reasonable business judgment to direct and control the Wind Down under the Plan and in accordance with applicable law as necessary to maximize Distributions to holders of Allowed Claims;

(iii)   prepare, file, and prosecute any necessary filings or

- 34 -

pleadings with the Bankruptcy Court to carry out the duties of the Wind Down Officer as described herein;

(iv)    other than any Causes of Action released by the Debtor pursuant to the Plan or otherwise, prosecute all Causes of Action on behalf of the Reorganized Debtor, elect not to pursue any Causes of Action, and determine whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Causes of Action, as the Wind Down Officer may determine is in the best interests of the Reorganized Debtor and its Estate;

(v)    retain professionals to assist in performing its duties under the Plan;

(vi)    maintain the books and records and accounts of the Reorganized Debtor;

(vii)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Wind Down Officer;

(viii)    pay statutory fees in accordance with Section 4.3 of the Plan;

(ix)    execute any documents requested by Secured Creditor to effectuate a Sale;

(x)    perform other duties and functions that are consistent with the implementation of the Plan; and

(xi)    close the Chapter 11 Case.

For the avoidance of doubt, until all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, the Wind Down Officer shall owe no fiduciary duties to any Holder of Interests on account of the Single Unit maintained by the Wind Down Officer, and shall instead owe fiduciary duties to creditor beneficiaries of the Wind Down Estate.

(g)    _Officers, Boards and Managers_.  Upon the Effective Date, (i) the officers,

boards and managers of the Debtor existing prior to the Effective Date shall be relieved of any and

all duties with the respect to the Debtor and shall be deemed to have resigned without the

requirement of having to take any further action and (ii) the Wind Down Officer shall be the sole

- 35 -

officer, director or manager, as applicable, of the Reorganized Debtor without the requirement of having to take any further action.

(h)        Wind Down.  After the Effective Date, pursuant to the Plan, the Wind Down Officer shall effectuate the Wind Down according to the Wind Down Budget without any further approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, provided, that, the Wind Down Officer shall not effectuate the Wind Down in a manner inconsistent with any express requirements of the Wind Down Agreement or this Plan, including with respect to any consent or consultation rights of the Secured Creditor..  The Wind Down (as determined for federal income tax purposes) shall occur in an expeditious but orderly manner after the Effective Date.

(i)        Indemnification.  The Wind Down Estate shall indemnify and hold harmless the Wind Down Officer from and after the Effective Date solely in the Wind Down Officer's capacity as such for any losses incurred in such capacity, except to the extent such losses were the result of the Wind Down Officer's bad faith, gross negligence, willful misconduct or criminal conduct.

(j)        Dissolution.  After the Effective Date, the Wind Down Officer shall, subject to applicable non-bankruptcy law and consistent with the implementation of the Plan, merge, dissolve, liquidate, or take such other similar action with respect to the Debtor (including the cancellation of all Interests in a Wind Down Estate) and complete the winding up of such Wind Down Estate as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Wind Down Estate or its shareholders or members, as applicable, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate Governmental Unit; provided, however, that the foregoing does

- 36 -

not limit the Wind Down Officer's ability to otherwise abandon an Interest in a Wind Down Estate. The Wind Down Officer may, to the extent required by applicable non-bankruptcy law, maintain a Wind Down Estate as a limited liability entity in good standing until such time as such Wind Down Estate is dissolved or merged out of existence in accordance with the Plan.

4.3     <u>U.S. Trustee Fees and Post Confirmation Reports</u>.   The Wind Down Officer shall be responsible for filing quarterly post-confirmation reports with the Bankruptcy Court and the final report required by Local Bankruptcy Rule 3022-1.  The Wind Down Officer shall effectuate payment of all quarterly fees required under 28 U.S.C. § 1930 and applicable interest under 31 U.S.C. Section 3717, on behalf of the Reorganized Debtor, who shall remain responsible therefore, until the earlier of (a) conversion or dismissal of the Chapter 11 Case or (b) entry of a final decree closing the Chapter 11 Case.

4.4     <u>Filing of Documents</u>.   Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

4.5     <u>Execution of Documents</u>.   Without derogating from any authority granted to Proponent or the Purchaser, notwithstanding the appointment the Wind Down Officer, Proponent is authorized to execute and deliver (in the Debtor's name) all documents to which the Estate shall be a party pursuant to this Plan.  Without detracting from this Plan and in particular Section 3.1, the Court may appoint an agent to execute and deliver on behalf of any party any document that is an exhibit to the Plan with full force and effect as if such party had executed and delivered such

- 37 -

document, in the event such party does not execute and deliver such exhibit after request by either the Disbursing Agent or Proponent.

## ARTICLE V
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

5.1    Objections.  The Proponent alone may file an objection to the allowance of a Claim or Interest with the Bankruptcy Court, in writing, no later than the time provided under Section 6.4 of this Plan.   For the avoidance of doubt, paragraph 6.6 of this Plan applies in lieu of any contemplated objection to any Class 1 Claim.

5.2    Amendment of Claims.  A Claim may not be amended after the Effective Date unless agreed upon in writing by the Proponent and the holder of such Claim, and, in the case of an Allowed Class 1 Claim, Proponent and the Holder of such Allowed Class 1 Claim, respectively, and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.

5.3    Reserve for Disputed Claims.  Notwithstanding anything contained in this Plan to the contrary, the Disbursing Agent shall reserve, on account of each holder of a Disputed Claim, in Cash, the amount that would otherwise be distributable to such holder were such Disputed Claim an Allowed Claim on the date of Distribution.   The Cash so reserved for the holder of such Disputed Claim shall be distributed only after such Disputed Claim becomes a subsequently Allowed Claim.  The holder of a subsequently Allowed Claim shall not be entitled to any additional interest on the Allowed Claim, regardless of when Distribution thereon is made to or received by such holder.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

6.1    Wind Down Officer as Disbursing Agent.  The Wind Down Officer shall act as Disbursing Agent for the purpose of making all distributions provided for under the Plan.  As such,

the Wind Down Officer shall distribute all Cash or other property to be distributed under the Plan. Pending the final distribution of all sums distributable under the terms of the Plan, the Wind Down Officer have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

6.2     <u>Timing of Distributions Under the Plan</u>.  Subject to Sections 6.6 and 6.8 hereof, any payments, Distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim shall be deemed to be timely made if made as provided for under this Plan on the later of the Closing Date or the Effective Date, on or within five days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times as may otherwise be provided in the Plan.

6.3     <u>Method of Payment</u>.  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank, or wire transfer, if requested.

6.4     <u>Claims Objection Deadline</u>.  Subject to further extension by the Proponent, objections to the allowance of any Claim may be filed only by the Proponent and in any event no later than the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

6.5     <u>Prosecution of Objections</u>.  After the Confirmation Date, only the Proponent shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.  The Proponent may comprise any objections to Disputed Claims without further order of the Court.

6.6     <u>No Distribution Pending Allowance; Allowance of Secured Creditor's Claim</u>. Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be

made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Plan. Notwithstanding any other provision of this paragraph, the Secured Creditor's Claim shall be Allowed in the amounts set forth in the proof of claim filed by the Secured Creditor in this Case, as adjusted by any Final Order of the Court regarding such Claim subsequent to the filing of the Secured Creditor's Claim and prior to the date of this Plan. For the avoidance of doubt, the allowance provided in the previous sentence includes allowance of all amounts (other than late charges) accruing on and after the Petition Date, including interest at the Default Rate and legal fees of Proponent's counsel, which are deemed allowed without the need to submit any fee application or document in lieu of a fee application. If the Effective Date does not occur or the Plan is revoked or withdrawn, nothing set forth in this Plan, including this sentence, shall be used against any party as an admission against interest with all parties in interest reserving their rights relating to either the non-occurrence of the Effective Date or revocation or withdrawal of the Plan.

6.7    Escrow of Cash Distributions. On any date that Distributions are to be made under the terms of the Plan, the Wind Down Officer shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims, plus any and all interest that would accrue on the Disputed Claims during the pendency of any such dispute, as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any Disputed cure amount, and (iv) any amount due but not payable on the Closing Date on account of Administrative Claims

- 40 -

or Claims entitled to priority pursuant to Sections 503 and 507 of the Bankruptcy Code.  The Wind

Down Officer shall also segregate any interest, dividends or other proceeds of such Cash.  Such

Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit

of the holders of all such Disputed Claims pending determination of their entitlement thereto.

6.8    <u>Distribution After Allowance</u>.  Subject to Article III hereof, within five (5) days

after the entry of a Final Order resolving an objection to a Disputed Claim, the Wind Down Officer

shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to

which a holder is then entitled with respect to any formerly Disputed Claim that has become an

Allowed Claim.

6.9    <u>Investment of Segregated Cash</u>.  To the extent practicable, the Wind Down Officer

may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable

distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking

into account the safety of the investment or (ii) in any manner permitted by Section 345 of the

Bankruptcy Code; *provided*, *however*, the Wind Down Officer shall be under no obligation to so

invest such Cash or proceeds and shall have no liability to any party for any investment made or

any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an

authorized depository pursuant to the guidelines of the Office of the United States Trustee.

6.10    <u>Distribution After Disallowance</u>.  Subject to Section 6.7 of the Plan, the Cash

segregated on account of Disputed Claims, including the allocable portion of the net return yielded

from any investment thereof, if any, remaining after all Disputed Claims have been resolved by

Final Order shall revert to the Estate for distribution pursuant to the terms of this Plan.

6.11    <u>Delivery of Distributions</u>.  Except as provided in Sections 6.12, 6.13 and 6.14 of

the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made (1) at the

addresses set forth on the respective Proofs of Claim or proofs of Interests filed by such Holders; at the addresses set forth in any written notices of address changes delivered to the Wind Down Officer after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or proof of Interest is filed and the Wind Down Officer has not received a written notice of a change of address.

      6.12   <u>Undeliverable Distributions</u>.

      (a)   If the Distribution to the holder of any Claim or Interest is returned to the Wind Down Officer as undeliverable, no further Distribution shall be made to such holder unless and until the Wind Down Officer is notified in writing of such holder's then current address. Undeliverable Distributions shall remain in the possession of the Wind Down Officer until the earlier of (i) such time as a Distribution becomes deliverable or (ii) such undeliverable Distribution becomes an unclaimed distribution pursuant to Section 6.13 of the Plan.

      (b)   Until such time as an undeliverable Distribution becomes an unclaimed Distribution pursuant to Section 6.13 of the Plan, within 30 days after the end of each calendar quarter following the Confirmation Date, the Wind Down Officer shall make Distributions of all Cash that has become deliverable during the preceding quarter. Each such Distribution shall include the net return yielded from the investment of any undeliverable Cash from the date such Distribution would have been due had it then been deliverable to the date that such Distribution becomes deliverable.

      (c)   Nothing contained in the Plan shall require the Wind Down Officer to attempt to locate any holder of an Allowed Claim or an Allowed Interest.

      6.13   <u>Unclaimed Distributions</u>. Any Cash or other assets to be distributed under the Plan shall revert to the Debtor and distributed in accordance with the terms of this Plan if it is not

- 42 -

claimed by the entity entitled thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled payment to such entity under Article III hereof; or (iii) one year after an Order allowing the Claim of that entity becomes a Final Order, and such entity's Claim shall be reduced to zero.

6.14    <u>Estimation of Claims</u>.  Subject to the allowances provided in paragraph 6.6 above, the Proponent may at any time request the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

6.15    <u>Preservation of Causes of Action</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, all Claims or Causes of Action that the Debtor or the Estate may have against any person or entity (other than as against any Released

Parties) are preserved, including without limitation, any and all Causes of Action under Sections 502, 510, 522(f), 522(h), 542, 543, 544, 545, 548, 549, 550, 551 and 553 of the Bankruptcy Code. The Proponent shall have sole power to bring (and to elect not to bring) any of the foregoing. Without derogating from the foregoing, if Proponent or the Designee is the Purchaser, Proponent or the Designee shall have the exclusive right to direct, manage and control the pursuit of such causes of action.

6.16    No Substantive Consolidation.  There shall be no substantive consolidation of the Debtor with any other entity.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    Assumption of Executory Contracts and Unexpired Leases.  On the Effective Date, except as otherwise provided in the Plan or Plan Supplement, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned shall be deemed automatically assumed pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is one that Proponent elects to reject, in which case any Allowed Claim arising from such rejection shall be a Class 2 Claim.

7.2    Assumption and Assignments of Executory Contracts and Unexpired Leases in Connection with Sale.  In the event of a Sale, on the Sale Closing Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party, if any, as designated by Purchaser by notice to be filed with the Court not less than seven (7) days prior to the Sale Closing Date, shall be deemed assumed and assigned to the successful purchaser in accordance with Section 365 of the Bankruptcy Code, (the "Assumed Contracts"), except for those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement, which shall be deemed rejected, in which case any Allowed Claim arising from such rejection shall

- 44 -

be a Class 2 Claim. Notwithstanding the foregoing, the License Agreement, the TCA and any ancillary contracts to the License Agreement, including but not limited to the Master Technology Agreement with SCH (the "Ancillary Agreements"), shall be deemed assumed upon the Effective Date. For assumption of the License Agreement, on the Effective Date the Reorganized Debtor shall pay a total cure of $915,773.30 to HHF consisting of $670,773.30 in outstanding unpaid prepetition amounts due under the License Agreement, and $245,000.00 in reimbursement of HHF's attorneys' fees and costs (the "HHF Cure"). On the Effective Date, the Reorganized Debtor and Wind Down Officer shall perform and satisfy on a going forward basis all obligations required by the License Agreement, and all rights of HHF under the License Agreement are expressly preserved.

7.3 <u>Assumption Cure Payments</u>. In the event of a Sale, except with respect to the License Agreement and the Ancillary Agreements and except as otherwise agreed to by the Secured Creditor and the Successful Purchaser, on the Sale Closing Date, shall cure any and all undisputed defaults under any Assumed Contracts. Other than with respect to the specific treatment of the License Agreement and the Ancillary Agreements specifically treated as above, unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto and (ii) the Effective Date. Other than with respect to the License Agreement and the Ancillary Agreements, Proponent shall have no liability for any cure payment with respect to any Assumed Contract. Unless the parties to an Assumed Contract agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining

- 45 -

the amount, if any, of the Debtor's liability with respect thereto and (ii) the Sale Closing Date. Proponent shall have no liability for any cure payment with respect to any Assumed Contract.

7.4    Rejection Claims.  Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Class 2 Claims.

7.5    Special Provision for 103 Washington Occupants.  The 103 Washington Occupants are asserted by the Debtor to be holdover occupants with no Leases.  The Occupant Turnover Action will continue post-Confirmation to the extent it has not been resolved by a Final Order prior to the Confirmation Date.  Upon the Effective Date, the Wind Down Officer shall have full control of the Occupant Turnover Action and be authorized to continue it in the Debtor's name.  If the 103 Washington Occupants elect prior to the Effective Date, the Occupant Turnover Action shall be resolved on the following terms and conditions:  (a) each Occupant shall pay the Secured Creditor each month on the first day of the month following the Effective Date the sum of $5,000.00 per unit while occupying such units and shall vacate the units not later than 90 days after entry of the Confirmation Order (the "Occupation Deadline"); (b) the Bankruptcy Court retains jurisdiction to enforce turnover of the units and to order a United States Marshal to evict each 103 Washington Occupant at any point after the Occupation Deadline; (c) an order shall be entered in the Occupant Turnover Action providing that such order shall be collateral estoppel in favor of the right of the Reorganized Debtor and the Secured Creditor to obtain immediate eviction of each 103 Washington Occupant after the Occupation Deadline and enforceable immediately in any court notwithstanding any non-bankruptcy law to the contrary; (d) each 103 Washington Occupant is determined not to be a party to any Lease and no Rejection Claims shall arise from enforcement of this provision and (e) each 103 Washington Occupant consents to issuance of a

- 46 -

Marshal Order (in the Occupant Turnover Action) to enforce these terms and conditions, including removal of each 103 Washington Occupant who shall not timely have vacated the Property .

7.6     <u>Bar to Rejection Claims</u>.  A Proof of Claim with respect to any General Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor and Proponent no later than thirty (30) days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a bar date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the later of (a) the Effective Date or (b) if, in the event of a Sale, those Executory Contracts and Unexpired Leases which are identified for rejection in the Sale Contract or Credit Bid Agreement pursuant to Section 7.2 above.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor's Estate, its successors or its properties, subject to FRBP 3003.

### ARTICLE VIII
### DISCHARGE, INJUNCTION AND EXCULPATION

8.1     <u>Binding Effect</u>.  On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtor, whether or not such holders accept the Plan, and shall bind each of the 103 Washington Occupants.

8.2     <u>Discharge</u>.  Except as otherwise provided in this Plan and 11 U.S.C. § 1141, the Confirmation Order shall constitute a discharge, as of the Effective Date, of any debts, claims or liabilities, whether liquidated or unliquidated, known or unknown, fixed or contingent, of the Debtor that arose at any time prior to the entry of the Confirmation Order, other than Claims of

- 47 -

the Secured Creditor; provided, however, that this section shall be inapplicable in the case of a sale of the Assets (as distinguished from a Single Unit Transfer).

8.3     *Injunction*.  *Except (a) as otherwise provided under a Final Order entered by the Bankruptcy Court or (b) with respect to the Debtor's obligations under the Plan or the Class 1 Creditor Documents, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin, with respect to any Claim held against the Debtor's Estate as of the date of entry of the Confirmation Order, (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property, or from property of the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any Lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided herein, in the Class 1 Creditor Documents or in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Assets, or from property of the Estate, any Claim, obligation or debt that was held against the Assets or from property of the Estate by any person or entity as of the Confirmation Date except pursuant to the terms of the Plan.  The entry of the Confirmation Order shall permanently enjoin all creditors, their successors and assigns, from enforcing or seeking to enforce any such Claims against the Reorganized Debtor, the Debtor's Estate or any of the Assets.  For the avoidance of doubt, this Section 8.3 shall not apply to Proponent in any suit, action, or other proceeding to collect upon any Loan Document or any guaranty related to any of the Assets;* provided, however*, as of the Effective Date, Proponent has released the Guarantor from his Guaranty or otherwise terminated the Guaranty.  For the avoidance of doubt, other than as provided in the previous sentence, nothing*

- 48 -

*in this paragraph is intended to affect the liability of any other Person or entity on, or the property of any other Person or entity for, any Claim.*

8.4 *Exculpation.* *To the extent permitted under 11 U.S.C. § 1125(e), neither Proponent, the Debtor, and to the extent the following parties served as estate fiduciaries during the case, their respective members, partners, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Exculpated Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken which occurred from and on the Petition Date up to and including the Effective Date in connection with or related to matters covered by 11 U.S.C. § 1125(e) except for bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in Sections 8.2 or 8.3 hereof shall (a) effect a release of any Claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any Claim arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Exculpated Parties, nor shall anything in Sections 8.2 or 8.3 hereof enjoin the United States or any state or local authority from bringing any Claim, suit, action or other proceedings against any of the Exculpated Parties referred to herein for any liability whatever, including, without limitation, any Claim, suit or action arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws of the United States or any state and local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Bankruptcy Code, the environmental laws or any criminal laws*

- 49 -

of the United States or any state and local authority against the Parties referred to herein, or (b) effect a release of any Claim of Proponent or any of its affiliates, including, without limitation, any Claim arising out of or under any guarantees executed in connection with the Class 1 Claim (collectively, the "Guarantees"), or any environmental law, nor shall anything in Sections 8.2 or 8.3 herein enjoin Proponent from bringing any Claim, suit or action or other proceeding under or arising out of the Guarantees or any environmental law, except that, on the Effective Date, the Guaranty is released. For avoidance of doubt, nothing contained in the Plan or Confirmation Order is intended to alter, change, or otherwise modify HHF's rights with respect to the License Agreement, the Comfort Letter with Proponent or the personal guaranty of Jubao Xie dated as of October 15, 2014 on the License Agreement.

### ARTICLE IX
### MISCELLANEOUS PROVISIONS

9.1    <u>Orders in Aid of Consummation</u>.  Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan, including without limitation issuance of the Marshal Order.

9.2    <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Debtor and the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and Distributions under the Plan shall be subject to such withholding and reporting requirements; *provided*, *however*, that the transfer of any Cash, the Property or other Assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

9.3    <u>Due Authorization by Claim Holders</u>.  Each and every holder of a classified and/or unclassified Claim who accepts the Distributions provided for under the Plan warrants that it is the

- 50 -

lawful owner of such Claim and is authorized to accept the Distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Claim holder under the Plan.

9.4     Amendments.  The Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, modify, or supplement the Plan (i) prior to the entry of the Confirmation Order, and (ii) after entry of the Confirmation Order, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, prior to the Effective Date, the Proponent may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

9.5     Reservation of Rights.  Neither the filing of this Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest.  In the event that the Effective Date does not occur, neither this Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of this Case.

9.6     Revocation or Withdrawal of Plan.  The Proponent reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date, upon the occurrence of a material adverse event or circumstance, on notice to all parties in interest, who shall have an opportunity to be heard

- 51 -

on such revocation.  If the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, the Debtor; (ii) prejudice in any manner the rights of any party in interest in this chapter 11 proceeding; or (iii) constitute an admission of any sort by any party in interest in this chapter 11 proceeding. Notwithstanding any Plan revocation or withdrawal, Class 4 Holder shall be entitled, at its option, to enforce the Mediation Settlement.

9.7     Request for Relief Under Section 1129(b).  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Proponent may request confirmation under Section 1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.8     Additional Documents.  Except as otherwise provided in the Plan, on or before the Effective Date, the Proponent may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including, but not limited to, the Plan Supplement.  The Proponent and all holders of Claims receiving Distributions pursuant to the Plan, and all other parties in interest, shall, prepare, execute, and deliver an agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

9.9     Section Headings.  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

- 52 -

9.10    Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.11    Successors and Assigns.  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12    Notices.  All notices, requests, demands and other communications to be given or made hereunder, to be effective, shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> (a)    if to the Debtor, at Tarter Krinsky & Drogin LLP, 1350 Broadway, New York NY10018, Attention:  Scott Markowitz, Esq., email: SMarkowitz@tarterkrinsky.com;
>
> (b)    if to Proponent, at Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 10036-2711, Attention Gary Eisenberg, Esq., email:  geisenberg@perkinscoie.com
>
> (c)    if to any Claim holder, at (i) the addresses set forth on the Proofs of Claim filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Wind Down Officer after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Wind Down Officer has not received a written notice of a change of address;
>
> (d)    if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance.

9.13    Governing Law.  Except to the extent the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

- 53 -

9.14    Severability.   In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.15    Disclosure Statement.  Proponent is not soliciting acceptances and thus has not filed a Disclosure Statement.  Any reference to a Disclosure Statement is superfluous to the extent that the Court confirms the Plan notwithstanding the non-filing of a Disclosure Statement.

9.16    Business Day.  In the event the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

### ARTICLE X
### RETENTION OF JURISDICTION

10.1    Retention of Jurisdiction.  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Chapter 11 Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)    Ensure the Plan is consummated, and to enter any Order pursuant to Section 1142(b) of the Bankruptcy Code, to enter the Marshal Order, to compel the Debtor, the Interest holders and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)    Consider any modification of the Plan proposed pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

- 54 -

(d)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)      Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)      Ensure that Distributions to holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

(g)      Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)      Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

(i)      Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan;

(j)      Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, or any contract, instrument, release or other agreement or document created in connection with the Plan;

- 55 -

(k)        Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)        Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, including the Confirmation Order or any other order of the Bankruptcy Court;

(m)        Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)        Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(o)        Determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan;

(p)        To adjudicate the Occupant Turnover Action (even if the Occupant Turnover Action remains pending as of date of the issuance of an order for a final decree closing the Chapter 11 Case);

(q)        To adjudicate any motion for sanctions or any other relief relating to the statements of the Court on the record at the conference on September 6, 2024 at which the Court issued a bench ruling in which it granted the motion of the Debtor to expunge the claims of W & D Consulting Corp.;

- 56 -

(r)        To adjudicate any disputes related to the Confirmation Order or the Sale; and

(s)        Enter a Final Order or decree concluding the Chapter 11 Case.

10.2    Post-Effective Date Jurisdiction.  Notwithstanding the entry of a final decree or an order closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction to reopen the Chapter 11 Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE XI
## CONDITIONS TO THE EFFECTIVE DATE

11.1    Conditions Precedent to Confirmation.  It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

(a)        The Bankruptcy Court shall have determined that no Disclosure Statement is required;

(b)        Debtor and Proponent shall have agreed upon the amount of the Holdback, unless the Marshal Order shall have been entered (or the Court has ruled that it will be entered together with the Confirmation Order);

(c)        The entry of the Confirmation Order shall be in form and substance reasonably satisfactory to Proponent and Debtor, and shall contain provisions that, among other things: (i) authorize the implementation of the Plan in accordance with its terms; (ii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan; (iii) find the Plan complies with all applicable provisions of the Bankruptcy Code, including the

- 57 -

Plan was proposed in good faith and the Confirmation Order was not procured by fraud; and (iv) establish the Administrative Claim Bar Date.

11.2    <u>Conditions Precedent to Effectiveness</u>.  The Effective Date shall not occur and no Plan Obligations shall come into existence unless each of the following conditions is met or, alternatively, is waived by Proponent in accordance with the terms of the Plan, on or before the Effective Date:

(a)        The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan;

(b)        The Confirmation Order shall have become a Final Order;

(c)        Each Claim (whether Administrative or otherwise) of W&D Consultants Corp. shall have been disallowed by an order of the Bankruptcy Court;

(d)        Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions;

(e)        The Marshal Order shall have been issued, or, if not issued, the Holdback amount shall have been agreed upon by the Proponent, the Debtor and Hysendal.

(f)        All documents and agreements necessary to implement the Plan, will have (a) been tendered for delivery and (b) been effected or executed by all entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly

- 58 -

set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

## ARTICLE XII
## DUTIES AND RIGHTS OF WIND DOWN OFFICER AS DISBURSING AGENT

The Wind Down Officer shall, as Disbursing Agent, make and effectuate all Distributions required under the Plan. Fees for the Wind Down Officer acting as Disbursing Agent shall be as provided in the Wind Down Agreement.

## ARTICLE XIII
## POST-CONFIRMATION ACTIVITIES OF THE DEBTOR

13.1     Final Tax Returns.  In the event that a Property Transfer occurs, the Wind Down Officer shall cause final tax returns to be filed with New York State Department of Taxation and Finance as well as the Internal Revenue Service and the Wind Down Officer shall file such additional documents as are necessary to cause the formal dissolution of the Reorganized Debtor with the Delaware State, Secretary of State.

13.2     Post-Confirmation Date Fees.  The Wind Down Estate shall pay all reasonable and documented post-Confirmation Date fees and expenses to the Wind Down Estate's professionals within twenty (20) days of presentment of invoice.  Proponent shall have no liability for such fees or expenses.

## ARTICLE XIV
## EVENTS OF DEFAULT

14.1     An Event of Default shall occur if (a) the Disbursing Agent shall fail to make any Distribution when due or (b) the Proponent shall fail to comply with any other material terms of

- 59 -

this Plan, and written notice of same has been provided to the Proponent, Disbursing Agent and the Bankruptcy Court.

    14.2    Following an Event of Default, if such Default has not been cured within ten (10) days thereafter, the Debtor or any holder of a Claim or Interest in Classes 2 to 4, or holders of Administrative Claims shall have the right to file a motion or commence an action in the Bankruptcy Court or United States District Court to compel compliance with the Plan or otherwise compel payment of any amounts owed.

Dated: September 20, 2024

Respectfully submitted,

PERKINS COIE LLP

By: */s/ Gary F. Eisenberg*

Gary F. Eisenberg
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Telephone: 212.262.6900
Facsimile: 212.977.1649
GEisenberg@perkinscoie.com

*Attorneys for Wilmington Trust, National Association, as Trustee for the benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Wells Fargo Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 And CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as authorized representative for HI FIDI B Note Owner LLC*

- 60 -

Schedule 1.63

**Marshal Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                       Chapter 11

GOLDEN SEAHORSE, LLC,
dba Holiday Inn Manhattan Financial District,[2]            Case No. 22-11582 (PB)

                          Debtor.

-------------------------------------------------------------x

**WHEREAS**, on November 29, 2022 (the "Petition Date"), the above-captioned debtor (the "Debtor") filed a voluntary Chapter 11 petition with the Clerk of this Court; and

**WHEREAS**, by order dated September ___, 2024 [ECF Dkt. No. ___] (the "Confirmation Order"), this Court confirmed that certain Second Amended Plan of Reorganization of Wilmington Trust, National Association, as Trustee for the Benefit of the Registered Holders of Commercial Mortgage Pass-Through Certificates Series 2018-C6, Proponent Commercial Mortgage Trust 2018-C47, Commercial Mortgage Pass-Through Certificates, Series 2018-C47 and CSAIL 2018-C14 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-C14 and as Authorized Representative for HI FIDI B NOTE OWNER LLC as Proponents and Secured Creditors (the "Plan"); and

**WHEREAS**, the following individuals are 103 Washington Occupants as defined in the Plan; and

---

[2] The Debtor's last four digits of its tax identification number is 4770. The Debtor's principal place of business is 99 Washington Street, New York, New York.

- 61 -

**WHEREAS**, the Plan requires the 103 Washington Occupants to vacate the Property (as defined in the Plan) not later than 90 days after entry of the Confirmation Order, and

**WHEREAS**, each of the 103 Washington Occupants has failed to vacate the Property as required under the Plan, and

**WHEREAS**, the Court notified each 103 Washington Occupant that failure to vacate the Property timely would trigger issuance of this Order,

**NOW, THEREFORE**, it is hereby:

**ORDERED** that [the Wind Down Officer], the Wind Down Officer authorized to act on behalf of the Debtor under the Plan with respect to the Property located at 103 Washington Street and with respect to enforcing the rights of the Debtor and the Secured Creditor (as defined in the Plan) with respect to the 103 Washington Occupants, is authorized under the supervision and with the assistance of the U.S. Marshal, to take all necessary steps to take possession of premises located at 103 Washington Street, New York, New York 10006, including breaking open and entering said premises and evicting all persons located within said premises; and it is further

**ORDERED** that anyone interfering with the execution of this Order is subject to arrest by the United States Marshal and/or his or her representative; and it is further

**ORDERED** that [the Wind Down Officer], on whose behalf the Court issues this Order, will account completely for all property seized pursuant to this order and shall compile a written inventory of all such property and shall provide a copy to the U.S. Marshal, who shall include such a copy with his return to the Court; and it is further

**ORDERED** that [the Wind Down Officer], on whose behalf the court issues this Order, will act as substitute custodian of any and all property seized pursuant to this order and shall hold harmless the U.S. Marshals Service and its employees from any and all claims, asserted in any

- 62 -

court or tribunal, arising from any acts, incidents, or occurrences in connection with the seizure and possession of the defendant property, including any third-party claims.

**SO ORDERED:**

New York, New York
_____ ____, 2024

<br>

|                                                      |
| ---------------------------------------------------- |
| **HONORABLE PHILIP BENTLEY**<br>**UNITED STATES BANKRUPTCY JUDGE** |